ALLEN J. RUBY (SBN 47109)
Allen.Ruby@skadden,com
JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
TIMOTHY A. MILLER (SBN 154744)
Timothy.Miller@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone: 650-470-4500
Facsimile: 650-470-4570

DANIEL L. NASH (*pro hac vice*)
dnash@akingump.com
STACEY R. EISENSTEIN (*pro hac vice*)
seisenstein@akingump.com
MARLA S. AXELROD (*pro hac vice*)
maxelrod@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Ave., NW
Suite 1000
Washington, DC 20036
Telephone: 202-887-4000
Facsimile: 202-887-4288

Attorneys for Defendant
NATIONAL FOOTBALL LEAGUE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD DENT, et al., | CASE NO.: 3:14-CV-02324-WHA |
| Plaintiffs, | **DEFENDANT NATIONAL FOOTBALL LEAGUE'S NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT (SECTION 301 PREEMPTION)** |
| v. | |
| NATIONAL FOOTBALL LEAGUE, | |
| Defendant. | |
| | Date:        October 30, 2014 |
| | Time:        8:00 a.m. |
| | Courtroom:  8, 19th Floor |
| | Judge:       Honorable William Alsup |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2014, at 8:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, Courtroom 8, 19th Floor, San Francisco, California 94102, Defendant National Football League will and hereby does move for an order dismissing Plaintiffs' Second Amended Complaint (Dkt. No. 65) (the "SAC"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6) because all of Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and were required to have been resolved under the grievance procedures set forth in the governing collectively-bargained agreements.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Dennis L. Curran, the pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

DATED:  September 25, 2014

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  /s/ *Allen J. Ruby*
     Allen J. Ruby

Attorneys for Defendant
*National Football League*

1

## TABLE OF CONTENTS

2 PRELIMINARY STATEMENT ....................................................................................1

3 BACKGROUND & RELEVANT CBA PROVISIONS ...........................................2

4       A.    The CBAs' Medical Care Provisions.......................................................3

5       B.    The CBAs' Mandatory Grievance and Arbitration Procedures.............6

6 ARGUMENT ...........................................................................................................7

7 I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS PREEMPTED ........8

8       A.    Plaintiffs' Negligence Counts Require Interpretation of the CBAs.......8

9       B.    Plaintiffs' Fraud Counts Require Interpretation of the CBAs .............13

10       C.    Plaintiffs' Derivative Claims Require Interpretation of the CBAs ......16

11 II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO
12      EXHAUST MANDATORY ARBITRATION PROCEDURES.......................17

13 CONCLUSION.........................................................................................................20

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)     Case No.: 3:14-cv-02324-WHA

## TABLE OF AUTHORITIES

Page(s)

CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ...................................................................8, 14

*Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202 (1985)....................................................................................7

*AT&T Technologies, Inc. v. Communications Workers of America*,
475 U.S. 643 (1986)........................................................................2, 18, 19

*Atwater v. National Football League Players Ass'n*,
626 F.3d 1170 (11th Cir. 2010) .............................................................9, 16

*Bale v. General Telephone Co. of California*,
795 F.2d 775 (9th Cir. 1986) ..................................................................14

*Barnes & Noble, Inc. v. LSI Corp.*,
849 F. Supp. 2d 925 (N.D. Cal. 2012) .....................................................14

*Bernardi v. Amtech/San Francisco Elevator Co.*,
No. C 08-01922 WHA, 2008 WL 2345153 (N.D. Cal. June 5, 2008)..................17

*Bock v. Hansen*,
225 Cal. App. 4th 215 (2014) ..............................................................8, 14

*Brown v. Brotman Medical Center, Inc.*,
--- F. App'x ---, 2014 WL 1647382 (9th Cir. Apr. 25, 2014)....................9

*Bunch v. New York Giants* (1997) (Creo, Arb.)..........................................19

*Burnette v. Godshall*,
828 F. Supp. 1439 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir. 1995) .....................................................9

*Calsen v. Stanford University*,
No. 5:13-cv-04738-PSG, 2014 WL 899362 (N.D. Cal. Mar. 4, 2014)..................17

*Carr v. Pacific Maritime Ass'n*,
904 F.2d 1313 (9th Cir. 1990) ..................................................................18

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) .................................................................................7

*Cramer v. Consolidated Freightways, Inc.*,
255 F.3d 683 (9th Cir. 2001) (en banc) ..................................................1, 7

*Dennis L. Christensen General Building Contractor, Inc. v.*
    *General Building Contractor, Inc.*,
    952 F.2d 1073 (9th Cir. 1991) ...................................................................18

*Duerson v. National Football League, Inc.*,
    No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) ........................ passim

*Eidson v. Medtronic, Inc.*,
    --- F. Supp. 2d ---, 2014 WL 1996024 (N.D. Cal. May 13, 2014)...........................17

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) ...................................................17

*Givens v. Tennessee Football, Inc.*,
    684 F. Supp. 2d 985 (M.D. Tenn. 2010)..............................................8, 11, 15, 16

*Hahn v. Mirda*,
    147 Cal. App. 4th 740 (2007) ...................................................................17

*Holmes v. National Football League*,
    939 F. Supp. 517 (N.D. Tex. 1996) .........................................................11

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ...................................................................8

*In re Kirsh*,
    973 F.2d 1454 (9th Cir. 1992) .................................................................15

*International Brotherhood of Electrical Workers v. Hechler*,
    481 U.S. 851 (1987)...................................................................................8

*Jeffers v. Carolina Panthers* (2008) (Das, Arb.) ...........................................6, 19

*Jeffers v. D'Allessandro*,
    681 S.E.2d 405 (2009) ...................................................................11, 13, 18

*Jones v. United Steelworkers*,
    No. 1:12-cv-01463-JLT, 2013 WL 5423687 (E.D. Cal. Sept. 26, 2013) ................7

*Klahn v. Quizmark, LLC*,
    No. C 13-1977 MMC, 2013 WL 4605873 (N.D. Cal. Aug. 28, 2013)....................7

*Lingle v. Norge Division of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ...................................................................................7

*Matthews v. National Football League Management Council*,
    688 F.3d 1107 (9th Cir. 2012) .............................................................7, 18

*Maxwell v. National Football League*,
    No. CV 11-08394 (C.D. Cal. Dec. 8, 2011)..............................................9, 10, 13

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)     Case No.: 3:14-cv-02324-WHA

*Nelson ex. rel. Boogaard v. National Hockey League*,
    --- F. Supp. 2d ---, 2014 WL 656793 (N.D. Ill. Feb. 20, 2014)................11

*O'Rourke v. Carmen M. Pariso, Inc.*,
    501 F. Supp. 2d 445 (W.D.N.Y. 2007) ...............................................19

*Painting & Decorators Ass'n of Sacramento, Inc. v. Painters & Decorators Joint
    Committee of East Bay Counties, Inc.*,
    707 F.2d 1067 (9th Cir. 1983) ...............................................9

*Phillips v. TLC Plumbing, Inc.*,
    172 Cal. App. 4th 1133 (2009) ...............................................8

*Potter v. Firestone Tire & Rubber Co.*,
    6 Cal. 4th 965 (1993) ...............................................17

*Rice v. Center Point, Inc.*,
    154 Cal. App. 4th 949 (2007) ...............................................9

*Santa Clara Valley Water District v. Olin Corp.*,
    655 F. Supp. 2d 1066 (N.D. Cal. 2009) ...............................................17

*Sherwin v. Indianapolis Colts, Inc.*,
    752 F. Supp. 1172 (N.D.N.Y. 1990) ................................... passim

*Stringer v. National Football League*,
    474 F. Supp. 2d 894 (S.D. Oh. 2007) .......................................9, 10, 13

*Tucker v. CBS Radio Stations, Inc.*,
    194 Cal. App. 4th 1246 (2011) ...............................................17

*United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of
    ASARCO, Inc.*,
    512 F.3d 555 (9th Cir. 2008) ...............................................18

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...............................................15

*Williams v. National Football League*,
    582 F.3d 863 (8th Cir. 2009) ................................... passim

*Wilson v. Denver Broncos* (2008)
    (Townley, Arb.) ...............................................7, 19

*Winery, Distillery & Allied Workers Union, Local 186* v. *E&J Gallo Winery, Inc.*,
    857 F.2d 1353 (9th Cir. 1988) ...............................................19

*Young v. Anthony's Fish Grottos, Inc.*,
    830 F.2d 993 (9th Cir. 1987) ...............................................3

STATUTES

29 U.S.C. § 185(a) (2012) .................................................................................................. passim

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)      Case No.: 3:14-cv-02324-WHA

**PRELIMINARY STATEMENT**

Plaintiffs, ten former professional football players, sue for personal injuries allegedly incurred while employed by Member Clubs ("Clubs") of the National Football League ("NFL"). They assert state law negligence and fraud claims against the NFL, but not their employer Clubs or the doctors or trainers who treated them, on the theory that the NFL breached a "duty of reasonable care" with respect to player medical care by allowing Club doctors to administer drugs without proper warning or supervision.

Resolving these claims would depend on interpretation of the collectively-bargained agreements ("CBAs") negotiated by the NFL and Plaintiffs' union, which, since 1968, have created myriad rights and duties concerning player medical care. The CBAs specify, for example, the qualifications and retention of Club physicians and other medical staff; the care owed by the medical staff to the players; the treatment available for players who use medications and other controlled substances; and the monetary benefits available to injured players, including those with disabilities arising from the use of controlled substances. All of these provisions create specific rights and duties – for the NFL, the Clubs and their medical staffs, the players' union, and the players themselves – concerning the medical care of Plaintiffs and other retired players.

Plaintiffs' claims that the NFL assumed and breached a duty concerning the players' welfare simply cannot be decided without interpreting these CBA provisions. Thus, neither the scope of the NFL's purported "duty" to ensure proper medical care for the players, nor the question whether the NFL breached any such duty, could be determined without interpreting the many CBA provisions that bear on these subjects. Nor could this Court determine whether any alleged reliance by Plaintiffs on the action or omission of the NFL was reasonable or justified without interpreting these CBA provisions. Because they "cannot be resolved without interpreting" the CBA, Plaintiffs' state law claims must be dismissed as preempted by the Labor Management Relations Act ("LMRA"). *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc).

Application of LMRA preemption to state-law claims of the kind asserted here is well established. Courts throughout the country have held that similar claims by NFL players and other

1  professional athletes are preempted by the LMRA because their resolution would require

2  interpretation of a CBA.

3        This lawsuit also must be dismissed because Plaintiffs failed to exhaust the CBAs'

4  grievance procedures, which require arbitration of "any dispute" involving "any provision of" the

5  CBA.  Federal law imposes a strong presumption in favor of arbitration and requires compliance

6  with the agreed-upon dispute resolution process unless it can be said "with positive assurance" that

7  the arbitration provision is "not susceptible of an interpretation that covers the asserted dispute."

8  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotations omitted).

9  Plaintiffs' claims challenging their medical care, at the very least, involve compliance with the

10 numerous CBA terms addressing exactly that.  Therefore, they may be resolved only through the

11 process required by the CBAs, and not in court under common law.

12       This court should dismiss the Second Amended Complaint (Dkt. No. 65) (the "SAC").

13                    <u>**BACKGROUND & RELEVANT CBA PROVISIONS**</u>

14       The NFL is an unincorporated association of thirty-two Clubs that promotes, organizes, and

15 regulates the sport of professional football in the United States.  SAC ¶ 55.  Plaintiffs are former

16 football players who were employed by and played for various Clubs between 1969 and 2012.

17 SAC ¶¶ 23-49.  Each was represented by the National Football League Players Association

18 ("NFLPA" or "Union"), the exclusive collective bargaining representative of all current and future

19 NFL football players.  Declaration of Dennis L. Curran ("Curran Decl."), dated September 24,

20 2014, *e.g.*, Ex. 6 (1993 CBA) (preamble); Ex. 11 (2011 CBA) (preamble).

21       The terms and conditions of Plaintiffs' employment, including terms and conditions relating

22 to medical care, are governed by CBAs entered into in 1968, 1970, 1977, 1982, 1993, 2006, and/or

23 2011 (including amendments and extensions).[1]  The CBAs expressly incorporate the NFL Player

24

25       [1] Since 1968, the NFL has operated under a CBA with only two exceptions: (1) from
   August 31, 1987 to March 29, 1993, following the expiration of the 1982 CBA and prior to the
   execution of the 1993 CBA; and (2) from March 11, 2011 to August 4, 2011.  *See* Curran Decl.
26 Exs. 1-11.  Therefore, a CBA was in effect during at least a portion of the time during which all ten
   Plaintiffs played.  *See id.*  Specifically, Richard Dent played during the 1982 and 1993 CBAs;
27 Jeremy Newberry played during the 1993 and 2006 CBAs; Roy Green played during the 1977 and
   1982 CBAs; J.D. Hill played during the 1970 and 1977 CBAs; Keith Van Horne played during the
   1982 and 1993 CBAs; Ron Stone played during the 1993 and 2002 CBAs; Ron Pritchard played
28 during the 1968, 1970, and 1977 CBAs; James McMahon played during the 1982 and 1993 CBAs;
   Marcellus Wiley played during the 1997, 2002, and 2006 CBAs; and Jonathan Hadnot played

1  Contract, as well as the NFL Constitution and Bylaws and the NFL Drug Policy, each of which

2  further prescribes rules, duties, and responsibilities regarding player employment and medical care.

3  *See, e.g.*, Curran Decl. Ex. 5 (1982 CBA) Art. I § 1 & Art. XII 2; Ex. 6 (1993 CBA) Art. III § 1,

4  Art. IV § 2, Art. XIV §§ 1-4 & App. C, & Art. XLIV § 6; Ex. 10 (2006 CBA) Art. III § 1, Art. IV §

5  2, Art. XIV §§ 1-4 & App. C, & Art. XLIV § 6; Ex. 11 (2011 CBA) Art. 2 § 4, Art. 3 § 2, Art. 4 §§

6  1-5 & App. A, & Art. 39 § 7.  Each of the Plaintiffs, along with the "Clubs, the NFLPA, the NFL,

7  and the Management Council" is bound by the CBAs.  *E.g.*, Curran Decl. Ex. 4 (1977 CBA), Art. I

8  § 1; Ex. 10 (2006 CBA) Art. II, § 1.

9  **A.    The CBAs' Medical Care Provisions**

10         Although the precise terms have varied over time, every CBA expressly addresses player

11  health, safety, and medical care in numerous provisions.

12         The CBA-prescribed Player Contract has always provided that if a player "is injured in the

13  performance of his services under this contract and promptly reports such injury to the Club

14  physician or trainer, then Player will receive such medical and hospital care during the term of this

15  contract as the *Club physician* may deem necessary . . . ."  Curran Decl., Exs. 6-11 (Player

16  Contract, ¶ 9).  Under the CBAs, the Clubs' medical staff, not the League, have primary

17  responsibility for the diagnosis and treatment of players.  *See* Curran Decl. Ex. 12 (1971

18  Constitution and Bylaws Art. XIX) (requiring the home team to provide a physician for medical

19  care of visiting players); Ex. 13 (1980 Suppl. to NFL Constitution Art. XVII) (mandating that

20  ""[a]ll determinations of recovery time for major and minor injuries must be by *the Club's medical*

21

22

_____

*(cont'd from previous page)*

23  during the 1993, 2006, and 2011 CBAs.  Because Plaintiffs' claims allege duties and breaches for
the entirety of their careers, the fact that "the CBAs were in effect during at least some of the

24  events alleged in the complaint" is sufficient to require preemption.  *See Duerson v. Nat'l Football
League, Inc.*, No. 12 C 2513, 2012 WL 1658353, at *3 (N.D. Ill. May 11, 2012); *see also Sherwin*

25  *v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172, 1174 n.2 (N.D.N.Y. 1990) (finding claim related to
player medical care in 1988 preempted because parties continued to operate under terms and

26  conditions of expired CBA).

27         The Court may consider the CBAs in deciding this motion because Plaintiffs' claims
depend on their contents, and their authenticity is not subject to dispute.  *See, e.g.*, *Young v.*

28  *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997-99 (9th Cir. 1987) (district court properly
considered CBA in determining whether state law claims were preempted, even though complaint
did not reference CBA).

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)    Case No.: 3:14-cv-02324-WHA

1  *staff* and in accordance with *the Club's* medical standards," and that "[t]he prognosis of the player's

2  recovery time should be as precise as possible.") (emphasis added).

3        The CBAs also have provided that "[e]ach Club will have a board-certified orthopedic

4  surgeon as one of its Club physicians" and will bear "[t]he cost of medical services rendered by

5  Club physicians." *E.g.*, Curran Decl. Ex. 5 (1982 CBA) Art. XXXI § 1; Ex. 6 (1993 CBA) Art.

6  XLIV § 1; Ex. 10 (2006 CBA) Art. XLIV § 1; Ex. 11 (2011 CBA) Art. 39 § 1.  Additionally, "[a]ll

7  full-time head trainers and assistant trainers . . . will be certified by the National Athletic Trainers'

8  Association," and "[a]ll part-time trainers must work under the direct supervision of a certified

9  trainer." *E.g.*, Curran Decl. Ex. 5 (1982 CBA) Art. XXXI § 2; Ex. 6 (1993 CBA) Art. XLIV § 2;

10 Ex. 10 (2006 CBA) Art. XLIV § 2; Curran Decl. Ex. 11 (2011 CBA) Art. 39 § 2.  "[A]ll Club

11 physicians and medical personnel shall comply with all federal, state, and local requirements,

12 including all ethical rules and standards established by any applicable government and/or other

13 authority that regulates or governs the medical profession in the Club's city."  Curran Decl. Ex. 11

14 (2011 CBA) Art. 39.

15       The CBAs further prescribe duties, rights, and responsibilities related to diagnosis,

16 prognosis, and medical records.  Under the CBAs, "[i]f a *Club* physician advises a coach or other

17 Club representative of a player's physical condition which adversely affects the player's

18 performance or health, *the physician* will also advise the player.  If such condition could be

19 significantly aggravated by continued performance, *the physician* will advise the player of such

20 fact in writing before the player is again allowed to perform on-field activity."  Curran Decl. Ex. 6

21 (1993 CBA) Art. XLIV § 1; *see also* Ex. 5 (1982 CBA) Art. XXXI § 1; Ex. 10 (2006 CBA) Art.

22 XLIV § 1; Ex. 11 (2011 CBA) Art. 39 § 1(c) (emphasis added).

23       The CBAs also have provided that "[a] player will have the opportunity to obtain a second

24 medical opinion" and that the Club shall bear the "the costs of [these] medical services." *E.g.*,

25 Curran Decl. Ex. 5 (1982 CBA) Art. XXXI § 3; Ex. 6 (1993 CBA) Art. XLIV § 3; Ex. 10 (2006

26 CBA) Art. XLIV § 3; Ex. 11 (2011 CBA) Art. 39 § 4.  A player also has the right to "examine his

27 medical and trainers' records in the possession of the club or club physician two times each year"

28 and may enable his personal physician to "inspect" these records "in consultation with the club

physician or have copies of such medical and trainers' records forwarded to him for his exclusive and confidential use in rendering a medical opinion . . . ." *E.g.*, Curran Decl. Ex. 5 (1982 CBA) Art. XXXII.  Additionally, the CBAs have provided that "[e]ach player will undergo a standardized minimum pre-season physical examination . . . which will be conducted by the Club physician" and may request a "post-season physical examination" as well.  *E.g.*, Curran Decl. Ex. 5 (1982 CBA) Art. XXXI § 5; *see also* Ex. 6 (1993 CBA) Art. XLIV § 5; Ex. 10 (2006 CBA) Art. XLIV § 5; Ex. 11 (2011 CBA) Art. 39 § 6.[2]

The collectively-bargained Drug Policy includes additional provisions specifically addressing treatment of players who use and abuse prescription drugs and other controlled substances, providing that "it is the responsibility of the parties to deter and detect substance abuse . . . and to offer programs of intervention, rehabilitation, and support to players who have substance abuse problems . . . ."  Curran Decl. Ex. 6 (1993 CBA) Art. XLIV § 6; Curran Decl. Ex. 10 (2006 CBA) Art. XLIV § 6.  The Policy also requires each Club to designate a "Team Physician for Substance Abuse" to monitor players' involvement and treatment in the Program.  *See, e.g.*, Curran Decl. Ex. 14 (1997 Policy and Program for Substances of Abuse) at I.A.4.  The Policy sets forth multiple provisions delegating responsibility for detecting and treating substance abuse among the Union, the NFL, the Clubs, and various medical professionals appointed under the terms of the Policy.  *See, e.g*, *id.*at I.A.6, I.C.2, I.A.2, I.A.3, I.A.4.

Even before negotiation of a formal policy, the CBAs required the parties "to jointly designate" a treatment facility to "assure the highest degree of care and treatment" for players with "chemical dependency" and to "conduct[] an ongoing educational program for all players and Club personnel regarding the detection, treatment and after-care of chemically dependent persons."

---

[2] The CBAs also include numerous provisions regarding the rights of current and former players to compensation and benefits in the event of injuries.  For example, all Clubs must obtain workers' compensation coverage or otherwise guarantee equivalent benefits to their players. Curran Decl. Ex. 2 (1968 CBA) Art. XI § 4; Ex. 3 (1970 CBA) Art. XV § 7; Ex. 4 (1977 CBA) Art. XXXIII; Ex. 5 (1982 CBA) Art. XXXVI; Ex. 6 (1993 CBA) Art. LIV.  And, since 2011, the CBA has contained a specific benefit for eligible players determined to be disabled based on the "the use of, addiction to, or dependence upon any controlled substance . . . ."  Curran Decl. Ex. 11 (2011 CBA) Art. 61.  The parties also have negotiated other long-term benefits for players, including a retirement plan (Curran Decl. Ex. 10 (2006 CBA) Art. XLVII), a benefit for players with dementia and certain other disorders (Ex. 10 (2006 CBA) Art. XLVIII-D), and various disability plans (Ex. 6 (1993 CBA) Art. LI; Ex. 9 (2002 Am. to 1993 CBA) Art. LI; Ex. 11 (2011 CBA) Art. 65).

1  Curran Decl. Ex. 5 (1982 CBA) Art. XXXI, § 6.  The CBA further provided that "[t]he club

2  physician may, upon reasonable cause, direct a player to [the treatment facility] for testing for

3  chemical abuse or dependency problems."  *Id.*, § 7.

4        The CBAs also established a Joint Committee on Player Safety and Welfare, which includes

5  representatives from the Union, that meets regularly to discuss "the player safety and welfare

6  aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach

7  relationships, and any other relevant subjects."  Curran Decl. Ex. 5 (1982 CBA) Art. XI; Ex. 6

8  (1993 CBA) Art. XIII § 1(a); Ex. 10 (2006 CBA) Art. XIII § 1(a); Ex. 11 (2011 CBA) Art. 50 §

9  1(a); *see also* Ex. 3 (1970 CBA) Art. V; Ex. 4 (1977 CBA) Art. XI.  If the "NFLPA believes that the

10  medical care of a team is not adequately taking care of player safety," it has the "right to commence

11  an investigation before the Joint Committee [on Player Safety and Welfare]."  Curran Decl. Ex. 9

12  (2002 Am. to 1993 CBA) Art. XIII § 1(d); Ex. 10 (2006 CBA) Art. XIII § 1(d); Ex. 11 (2011 CBA)

13  Art. 50 § 1(d).

14        **B.      The CBAs' Mandatory Grievance and Arbitration Procedures**

15        The CBAs also have required that all disputes involving "the interpretation of, application

16  of, or compliance with, any provision of" the CBAs, player contracts, or any applicable provision

17  of the Constitution "pertaining to terms and conditions of employment of NFL players" be resolved

18  exclusively in accordance with agreed-to arbitration procedures.  *See, e.g.*, Curran Decl. Ex. 2

19  (1968 CBA) Art. IX; Ex. 3 (1970 CBA) Art. X; Ex. 4 (1977 CBA) Art. VII; Ex. 5 (1982 CBA) Art.

20  VII; Ex. 6 (1993 CBA) Art. IX; Curran Decl. Ex. 9 (2002 Am. to 1993 CBA) Art. IX; Ex. 10 (2006

21  CBA) Art. IX; Ex. 11 (2011 CBA) Art. 43.

22        NFL players and their union have a longstanding history of grieving and arbitrating disputes

23  by and against the NFL Clubs and the NFL in health and safety matters.  For example, players have

24  grieved or arbitrated claims of medical malpractice by Club physicians, Curran Decl. Ex. 15

25  (*Jeffers v. Carolina Panthers* (2008) (Das, Arb.) at 11, 15-16), claims that NFL executives and

26  doctors involved in the Steroid Policy failed to warn players of the medical risks of certain dietary

27  supplements (*Williams v. National Football League*, 582 F.3d 863, 871-72 (8th Cir. 2009)), claims

28  concerning the workers' compensation benefits that  Clubs must provide (*Matthews v. Nat'l*

1   *Football League Mgmt. Council*, 688 F.3d 1107, 1111 (9th Cir. 2012)), and claims that Club

2   physicians did not provide proper warnings before allowing players to return to play, Curran Decl.

3   Ex. 16 (*Wilson v. Denver Broncos* (2008) (Townley, Arb.) at 3).  Most recently, the Union has

4   commenced an arbitration proceeding against the NFL and the Clubs asserting that "the NFL"

5   failed to use its best efforts to ensure compliance by Club physicians with CBA requirements

6   regarding the players' medical care related to the use of Toradol.  Curran Decl. Ex. 18 (*NFLPA v.*

7   *NFL Clubs and NFLMC (Toradol Waivers)* (2012)).[3]

8   <u>**ARGUMENT**</u>

9         Section 301 of the LMRA governs "[s]uits for violation of contracts between an employer

10  and a labor organization[.]"  29 U.S.C. § 185(a) (2012).  The Supreme Court has interpreted this

11  statute to "mandate[] resort to federal rules of law in order to ensure uniform interpretation of

12  collective-bargaining agreements, and thus to promote the peaceable consistent resolution of

13  labor-management disputes."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 & n.3

14  (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. at 210-11 (allowing CBA terms to be given

15  "different meanings under state and federal law would inevitably exert a disruptive influence upon

16  both the negotiation and administration of collective agreements" (internal quotations omitted)).

17        Accordingly, Section 301 preempts any state law claim that is "substantially dependent" on

18  or "inextricably intertwined" with the terms of a collective bargaining agreement.  *Allis-Chalmers*,

19  471 U.S. at 213, 220; *see also Caterpillar Inc. v. Williams*, 482 U.S. at 394; *Cramer v. Consol.*

20  *Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (Section 301 preempts any claim that

21  "necessarily requires the court to interpret an existing provision of a CBA that can reasonably be

22  said to be relevant to the resolution of the dispute").  It makes no difference that a plaintiff pleads

23  his claim as a tort because Section 301 "has been broadly construed to cover most state-law actions

24  that require interpretation of labor agreements."  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d

25  1010, 1016 (9th Cir. 2000) (quoting 29 U.S.C. § 185(a)); *see also Int'l Bhd. of Elec. Workers v.*

26
27
28

---

        [3] The Court may take judicial notice of the arbitration precedent discussed above.  *See, e.g.*, *Jones v. United Steelworkers*, No. 1:12-cv-01463-JLT, 2013 WL 5423687, at *1 (E.D. Cal. Sept. 26, 2013); *Klahn v. Quizmark, LLC*, No. C 13-1977 MMC, 2013 WL 4605873, at *1 n.4 (N.D. Cal. Aug. 28, 2013) (taking judicial notice of franchise agreement mentioned in complaint, arbitration award, and order issued by other court for purposes of deciding motion to dismiss).  The Court may consider the Toradol grievance also because it is referenced in the SAC.  *See* SAC ¶ 145.

7

1   *Hechler*, 481 U.S. 851, 862 (1987) (a plaintiff is "precluded from evading the pre-emptive force of

2   § 301 by casting her claim as a state-law tort action").

3          Moreover, because "a central tenet of federal labor-contract law under § 301 [is] that it is

4   the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first

5   instance," once a claim is deemed preempted, it should be dismissed to "preserve[] the central role

6   of arbitration in our 'system of industrial self-government.'"  *Allis-Chalmers*, 471 U.S. at 219-20

7   (internal citation omitted); *see also Givens v. Tenn. Football, Inc.*, 684 F. Supp. 2d 985, 991-92

8   (M.D. Tenn. 2010) (dismissing NFL player's claims "because preempted claims must first be

9   presented through the arbitration procedure established in a collective bargaining agreement").

10  **I.      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED AS PREEMPTED**

11         Each of the claims in the SAC is a state-law claim.  Each relates to allegedly deficient

12  medical care provided to Plaintiffs by Club doctors and trainers.  As explained more fully below,

13  resolution of each would require interpretation of the CBAs.  Accordingly, this Court should

14  dismiss the SAC.

15         **A.      Plaintiffs' Negligence Counts Require Interpretation of the CBAs**

16         Plaintiffs assert four negligence-based claims (counts V, VI, VIII, and IX), each of which

17  would require Plaintiffs to establish that the NFL assumed, and then breached, a duty of care.  *See*

18  *Ileto v. Glock Inc.*, 349 F.3d 1191, 1206 (9th Cir. 2003) (it is "a fundamental principle of tort law"

19  that a plaintiff may recover in negligence only if it first establishes that the defendant owed it a

20  defined legal duty); *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1141-45 (2009)

21  (negligent hiring and retention claims require showing of duty of care); *Bock v. Hansen*, 225 Cal.

22  App. 4th 215, 228 (2014) (negligent misrepresentation requires showing of legal duty to injured

23  person); *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007) (negligence per se requires

24  establishment of duty of care).[4]

25          Section 301 preempts negligence claims when the court would have to interpret the CBA

26  "to determine the standard of care that [the defendant] agreed to assume and, in turn, whether [the

27  defendant's] actions violated that duty."  *Brown v. Brotman Med. Ctr., Inc.*, --- F. App'x ---, 2014

28  ──────────────
        [4] The SAC does not identify the law of any specific state upon which the claims are based.
The NFL cites primarily the substantive law of California for illustrative purposes.

8

1   WL 1647382, at *2 (9th Cir. Apr. 25, 2014) (unpublished) (citing *Burnette v. Godshall*, 828 F.

2   Supp. 1439, 1447 (N.D. Cal. 1993)).  In other words, any claim that would require interpretation of

3   a document, such as the Constitution and Bylaws or Drug Policy, authorized by and incorporated

4   by reference into the CBA is preempted.  *See Burnette*, 828 F. Supp. at 1447 (citing *Olguin v.*

5   *Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984)), *aff'd sub nom. Burnette v.*

6   *Lockheed Missiles & Space Co.*, 72 F.3d 766 (9th Cir. 1995).  Negligence claims also are

7   preempted where a CBA imposes related duties on a third party, raising a question of interpretation

8   about whether the defendant "could reasonably rely" on those contractual obligations and "could

9   then reasonably exercise a lower standard of care in that area itself."  *Duerson*, 2012 WL 1658353,

10  at *4; *see also* Curran Decl. Ex. 20 (*Maxwell v. Nat'l Football League*, No. CV 11-08394 (C.D.

11  Cal. Dec. 8, 2011)) ("*Maxwell* Order") at 1-2 (negligence claims preempted because CBA terms

12  requiring Club physicians to care for players "must be taken into account in determining the degree

13  of care owed by the NFL and how it relates to the NFL's alleged failure" to satisfy that duty).

14  Here, to determine whether and to what extent the NFL assumed duties related to player medical

15  care and whether it then breached any such duty, the Court would have to interpret the host of CBA

16  provisions related to player medical care identified above.[5]

17          Indeed, courts have routinely held preempted state-law negligence claims brought by NFL

18  players and other professional athletes related to the provision of medical care.  For example, in

19  *Duerson v. National Football League*, the court found preempted a former player's negligence

20  claim alleging that the NFL was liable for concussion-related injuries.  2012 WL 1658353, at *6.

21  The court did so because resolution of the claim would require interpretation of multiple CBA

22  provisions concerning player health and safety that were "directly relevant to the particular duty at

23  issue."  *Id.* at *5.  Among other reasons, the court explained that it could "plausibly interpret those

24  [health and safety] provisions to impose a duty on the NFL's *clubs* to monitor a player's health and

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
         [5] The law is clear that the NFL may assert LMRA preemption even if it were deemed a
27  "nonsignatory" to the CBAs.  *See, e.g., Painting & Decorators Ass'n of Sacramento, Inc. v.*
    *Painters & Decorators Joint Comm. of E. Bay Cntys., Inc.*, 707 F.2d 1067, 1070-71 (9th Cir. 1983);
28  *Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1178-79 (11th Cir. 2010) (holding
    that NFL could assert LMRA preemption); *Stringer v. Nat'l Football League*, 474 F. Supp. 2d 894,
    898-902 (S.D. Oh. 2007) (same).

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)        Case No.: 3:14-cv-02324-WHA

1  fitness to continue to play football," which "would tend to show that the NFL could reasonably rely

2  on the clubs to notice and diagnose player health problems," and the "NFL could then reasonably

3  exercise a lower standard of care in that area itself." *Id.* (emphasis added). "Determining the

4  meaning of the CBA provisions is thus necessary to resolve [the] negligence claim." *Id.*

5      Similarly, in *Maxwell v. National Football League*, the court held that resolution of a former

6  player's negligence claim based on game-related injuries was "inextricably intertwined with and

7  substantially dependent upon an analysis of certain CBA provisions imposing duties on the clubs

8  with respect to the medical care and treatment of NFL players."  Curran Decl. Ex. 20 ("*Maxwell*

9  Order") at 1.  Recognizing that "[t]he CBA places primary responsibility for identifying [] physical

10  conditions on the team physicians," the court held that the claim was preempted:  those "physician

11  provisions of the CBA," along with "provisions relating to the teams' athletic trainers," "must be

12  taken into account in determining the degree of care owed by the NFL and how it relates to the

13  NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its

14  players." *Id.* at 1-2.

15      In *Stringer v. National Football League*, the plaintiff brought a wrongful death action

16  sounding in negligence, asserting that the NFL had failed "to minimize the risk of heat-related

17  illness" and to "establish regulations" regarding the same.  474 F. Supp. 2d at 903.  The Court

18  dismissed that claim as preempted, holding that its resolution was "'inextricably intertwined and

19  substantially dependent' upon an analysis of certain CBA provisions imposing duties on the clubs

20  with respect to medical care and treatment of NFL players." *Id.* at 909.

21      In *Sherwin v. Indianapolis Colts*, the plaintiff contended that he had received deficient

22  medical care from the club physician, and that the club was negligent in allowing, or failing to

23  prevent, that deficient care.  752 F. Supp. at 1178.  The court held that this claim was preempted

24  because the club "did not owe a duty to provide medical care to the plaintiff independent of the

25  relationship established in the agreements.  The court cannot resolve plaintiff's claims based on

26  inadequate medical care without interpreting the clauses establishing those duties in the

27  agreements." *Id.*

28

1   In *Williams v. National Football League*, the Eighth Circuit held preempted negligence

2   claims asserted against the NFL for the alleged failure to warn players about the harmful effects of

3   a dietary supplement.  582 F.3d at 881.  As the court explained, "whether the NFL . . . owed the

4   Players a duty to provide [] a warning [about a particular drug] cannot be determined without

5   examining the parties' legal relationship and expectations as established by the CBA and the

6   [Steroid] Policy."  *Id.*

7   And in *Nelson ex. rel. Boogaard v. NHL*, the estate of a deceased National Hockey League

8   player brought an action against the NHL alleging that the League was liable in negligence for the

9   drug addiction (and subsequent drug overdose death) of the player, alleging, *inter alia*, that "NHL

10  team physicians, dentists, trainers, and staff provided him 'copious amounts of prescription pain

11  medications, sleeping pills, and painkiller injections.'"  --- F. Supp. 2d ---, 2014 WL 656793, at *1.

12  The court found preemption because it would need to interpret CBA provisions related to substance

13  abuse prevention and treatment to determine the scope and extent of any NHL voluntary

14  undertaking with respect to the care and treatment of the player.  *See id.* at *4-5.

15  This case is indistinguishable from these and many other cases that make clear that the

16  common-law causes of action Plaintiffs allege cannot be decided without interpreting the parties'

17  detailed relationship under the CBAs, including the allocation of responsibility for player medical

18  care and safety among the NFL, the Union, the Clubs, the physicians, and the players themselves.[6]

19  Plaintiffs contend that the NFL is liable for negligent misrepresentation (Count V) because

20  it "undertook the duty" to "inform the Class Members of all known and potential dangers of the

21  Medications," as well as to warn them of "the dangers of playing while the pain of injuries was

22

23  [6] *See also Holmes v. Nat'l Football League*, 939 F. Supp. 517, 527 (N.D. Tex. 1996)
    (player's tort claims based on alleged mistreatment stemming from NFL drug policy preempted
    because "[t]o resolve [his] claims the court must perforce analyze the CBA and the collectively-
    bargained Drug Program"); *Givens*, 684 F. Supp. 2d at 990-91 ("The questions raised by the
    Complaint, such as whether a physician's failure to advise a player of his medical condition should
    be imputed to the club or whether the club has a duty independent of the physician to advise a
    player of his medical condition, are 'inextricably intertwined' with the provisions of the CBA.");
    *Jeffers v. D'Allessandro*, 681 S.E.2d 405, 412, 414 (2009) (player's claim that his team negligently
    hired and retained Club physician who allegedly provided inadequate care was preempted "the
    touchstone of Jeffers' claims – no matter how couched or labeled – is that the [Club] acted
    improperly in providing him medical care through the team physician," so "[t]hese claims
    necessarily derive from the obligations in the CBA and will require analysis of the CBA in order to
    be resolved").

1  masked by the Medications."  SAC ¶¶ 355, 364.  But whether the NFL assumed such duties or

2  breached them if it did cannot be evaluated without analyzing and interpreting the related duties

3  that the CBA imposes on the Clubs and their doctors (described above).  This Court would have to

4  interpret, *inter alia*, CBA provisions obligating the Club physician to determine and treat a player's

5  injuries, to warn players "in writing" of injuries that may be "significantly aggravated by continued

6  performance," "to disclose to a player any and all information about the player's physical

7  condition," and to "determine[e] appropriate recovery time for injuries."  *E.g.*, Curran Decl. Ex. 6

8  (1993 CBA) Art. XLIV § 1.  This Court also would be required to interpret the CBA provisions

9  requiring the players themselves to "promptly report" injuries and to avoid the abuse of

10  prescription drugs and other medications.  Curran Decl., Exs. 6-11 (Player Contract ¶ 9).  Each of

11  these provisions would have "to be taken into account in determining the degree of care owed by

12  the NFL" to the players (Curran Decl. Ex. 20 (*Maxwell* Order) at 1-2) and whether the NFL

13  breached any such duty or, instead, "reasonably rel[ied] on the clubs to notice and diagnose player

14  health problems."  *Duerson*, 2012 WL 1658353, at *4.

15         Plaintiffs' negligence per se claim (Count VI) would require interpretation of the same CBA

16  provisions.  Plaintiffs contend that the NFL was required to abide by federal and state law, as well

17  as the American Medical Association's Code of Ethics, in providing medical care to players

18  employed by the member Clubs.  SAC ¶¶ 371-80.  But the CBAs require the Clubs, not the NFL, to

19  retain qualified doctors and trainers, *see supra*, Background at 3, and this Court could not

20  determine whether the NFL assumed or breached any duty without specifically analyzing the

21  related obligations imposed by the CBAs.  Because "[t]he CBA places primary responsibility for

22  identifying [] physical conditions on the team physicians," the relevant CBA provisions "must be

23  taken into account in determining the degree of care owed by the NFL and how it relates to the

24  NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its

25  players."  Curran Decl. Ex. 20 (*Maxwell* Order) at 1-2; *see also Stringer*, 474 F. Supp. 2d at 910

26  ("The degree of care owed cannot be considered in a vacuum.  The degree of care owed by the

27  NFL . . . and what was reasonable under the circumstances, must be considered in light of pre-

28

1   existing contractual duties imposed by the CBA on the individual NFL clubs concerning the

2   general health and safety of the NFL player.").[7]

3         Plaintiffs' negligent hiring and retention claims (Counts VIII and IX) also would require

4   interpretation of the CBA.  Plaintiffs allege that the NFL assumed – and then breached – a duty to

5   provide "well-qualified" and "medically-competent" physicians and trainers.  SAC ¶ 387.  But the

6   CBA requires *the Clubs* to do exactly that, mandating that they provide "board-certified orthopedic

7   surgeon[s]" and full-time trainers who are "certified by the National Athletic Trainers Association."

8   (Background at 4).  This Court could not determine whether a *Club* was negligent in its hiring of a

9   team physician without interpreting the CBA.  *See, e.g.*, *Jeffers v. D'Alessandro*, 681 S.E.2d 405,

10  412-13 (N.C. Ct. App. 2009) (holding claim against Club for alleged negligent retention of Club

11  physician was preempted:  "Without the CBA, the [club] would have no obligation to have a team

12  physician at all.").  Whether the League assumed a duty that the CBAs specifically delegate to the

13  Clubs, and whether the NFL breached any such duty – or, instead, "reasonably rel[ied] on the

14  clubs" to carry out their contractual obligations – are questions that cannot be resolved

15  independently of the CBAs.  *Duerson*, 2012 WL 1658353, at *4; see also *Stringer*, 474 F. Supp. 2d

16  at 910 (tort claims preempted because CBAs needed to be interpreted to determine if any

17  provisions "diminished" the "degree of care" that the NFL might otherwise owe).

18        **B.**     **Plaintiffs' Fraud Counts Require Interpretation of the CBAs**

19        In Counts III-V (Fraud, Fraudulent Concealment, and Negligent Misrepresentation),

20  Plaintiffs allege that the NFL acted fraudulently by, *inter alia*, hid[ing] the dangers" of certain

21  medications from the players (SAC ¶¶ 315-18, 321-22; 336, 366); forcing injured players to return

22  to the field too quickly (*id.*¶ 307); failing to implement rules to reduce the risks of addiction

23  (*id.*¶ 317); denying players the opportunity for "independent and objective medical diagnoses"

24  (*id.*¶ 307); and failing to provide sufficient roster sizes or time between practices and games (*id.*).

25

26

27      [7] The most recent CBA also provides that "all Club physicians and medical personnel shall

28  comply with all federal, state, and local requirements, including all ethical rules and standards
established by any applicable government and/or other authority that regulates or governs the
medical profession in the Club's city."  Curran Decl. Ex. 11 (2011 CBA) Art. 39.

13

1    "[S]ection 301's preemptive force extends to fraud claims when resolution of the claims is

2    inextricably intertwined with terms in a labor contract." *Aguilera*, 223 F.3d at 1016; *Bale v. Gen.*

3    *Tel. Co. of Cal.*, 795 F.2d 775, 780 (9th Cir. 1986) (finding negligent misrepresentation and fraud

4    claims preempted).  Resolution of Plaintiffs' fraud claims would require CBA interpretation for

5    multiple reasons.

6        First, the CBA addresses season length, roster sizes, conduct of practices, and use of

7    controlled substances by players.  *E.g.*, Curran Decl. Ex. 10 (2006 CBA) Art. XXXVII, Art.

8    XXXV, Art. XXXVI, Art. XXXVII (providing specific rules about game schedules, numbers of

9    contact practices, and players' right to "off-days"); Art. XXXIII (setting forth the rules on roster

10   sizes); Ex. 14 (Drug Policies) (providing rules about players' use of controlled substances).  This

11   Court could not resolve whether, for example, the NFL "fail[ed] to provide sufficient roster sizes"

12   or "forc[ed] injured players to return to the field too quickly" without interpreting the CBA

13   provisions that address these subjects.

14       Second, this Court would have to interpret the CBA to resolve whether the NFL had a duty

15   to disclose "the dangers" of the medications.  *See Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp.

16   2d 925, 936 (N.D. Cal. 2012) ("[w]here, [as here], a fraud claim is based on the omission of

17   information, a party must generally demonstrate that there was a duty to disclose such

18   information"); *see also Bock*, 225 Cal. App. 4th at 228 ("'responsibility for negligent

19   misrepresentation rests upon the existence of a legal duty'") (quoting *Eddy v. Sharp*, 199 Cal. App.

20   3d 858, 864 (1988)).  As the Eighth Circuit explained in *Williams*, "whether the NFL or the

21   individual defendants owed the Players a duty to provide [] a warning [about a particular drug]

22   cannot be determined without examining the parties' legal relationship and expectations as

23   established by the CBA" and related policies.  582 F.3d at 881; *see also Sherwin*, 752 F. Supp. at

24   1177-79 (dismissing fraud claim as preempted because "the court cannot resolve plaintiff's fraud

25   and negligent misrepresentation claims without reference to Article XXXI, section 1 of the CBA,

26   which establishes the duty of a club physician, and arguably the club, to inform a player of physical

27   conditions "which could adversely affect the player's performance or health"); *Givens*, 684 F.

28   Supp. 2d at 990-91 ("The questions raised by the Complaint, such as whether a physician's failure

14

1    to advise a player of his medical condition should be imputed to the club or whether the club has a

2    duty independent of the physician to advise a player of his medical condition, are 'inextricably

3    intertwined' with the provisions of the CBA.").

4           Third, the Court could not determine whether the NFL was obligated to disclose particular

5    information about prescription drugs without evaluating the numerous provisions imposing

6    notification requirements on Clubs' medical staff (Curran Decl. Ex. 6 (1993 CBA) Art. XLIV § 1;

7    Ex. 10 (2006 CBA) Art. XLIV § 1; Ex. 11 (2011 CBA) Art. 39 § 1(c); Ex. 5 (1982 CBA) Art.

8    XXXI § 1)); the provisions establishing the NFL's and Union's roles on the Joint Player Safety and

9    Welfare Committee (Ex. 5 (1982 CBA) Art. XI; Ex. 6 (1993 CBA) Art. XIII § 1(a); Ex. 10 (2006

10   CBA) Art. XIII § 1(a); Ex. 11 (2011 CBA) Art. 50 § 1(a); *see also* Ex. 3 (1970 CBA) Art. V; Ex. 4

11   (1977 CBA) Art. XI)); and the NFLPA's corresponding right to initiate an investigation when it

12   "believes that the medical care of a team is not adequately taking care of player safety" (Ex. 9

13   (2002 Am. to 1993 CBA) Art. XIII § 1(d); Ex. 10 (2006 CBA) Art. XIII § 1(d); Ex. 11 (2011 CBA)

14   Art. 50 § 1(d)).

15          Finally, Plaintiffs' fraud claims, as well as the negligent misrepresentation claim, require

16   proof of "justifiable reliance."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

17   To determine whether reliance was justifiable, the Court must take "into account the knowledge

18   and relationship of the parties themselves."  *In re Kirsh*, 973 F.2d 1454, 1458 (9th Cir. 1992).  This,

19   too, would require interpretation of the CBAs, which establish that it is "the responsibility of the

20   parties to deter and detect substance abuse . . . and to offer programs of intervention, rehabilitation,

21   and support to players who have substance abuse problems" (*e.g.*, Curran Decl. Ex. 10 (2006 CBA)

22   Art. XLIV § 6); entitle the players "to obtain a second medical opinion" and to "examine . . .

23   medical and trainers' records in the possession of the Club or Club physician" (*e.g.*, Ex. 9 (2002

24   Am. to 1993 CBA) Art. XLIV § 3, XLV § 2); warn players that abuse of prescription drugs is

25   prohibited (*e.g.*, Ex. 14 (2010 Policy) at 1, App. E); require the Clubs to provide certified

26   physicians (*e.g.*, Ex. 5 (1982 CBA) Art. XXXI § 1) and to designate a "Team Substance Abuse

27   Physician" (*e.g.*, Ex. 14 (2010 Policy) at I.A.4); and mandate that the physicians provide

28

1   disclosures about players' medical conditions (*e.g.*, Ex. 6 (1993 CBA) Art. XLIV § 1; Ex. 11 (2011

2   CBA) Art. 39, §1(c)).

3          All of these collectively bargained rights and duties must be interpreted to determine

4   whether the players "justifiably" relied on alleged misstatements or omissions by the NFL about

5   the dangers of particular drugs.  Courts routinely dismiss claims that require such analysis.  For

6   example, a court dismissed as preempted a fraud claim based on the NFL's alleged failure to warn

7   players about the health risks of a particular dietary supplement because "the question of whether

8   the Players can show that they reasonably relied on the lack of a warning that [the supplement]

9   contained [a prohibited substance under the Steroid Policy] cannot be ascertained apart from the

10  terms of the Policy."  *Williams*, 582 F.3d at 880-82.  Another court dismissed as preempted a fraud

11  claim based on alleged inadequate medical care and withholding of information about a medical

12  condition because the claim could not be resolved absent analysis of pertinent CBA provisions.

13  *See Sherwin*, 752 F. Supp. at 1177-79; *see also Atwater*, 626 F.3d at 1183 (dismissing negligent

14  misrepresentation claims as preempted because "the determination of whether Plaintiffs reasonably

15  relied on Defendants' alleged misrepresentations is substantially dependent on" an interpretation of

16  CBA provisions); *Givens*, 684 F. Supp. 2d at 990-91 ("The questions raised by the Complaint, such

17  as whether a physician's failure to advise a player of his medical condition should be imputed to

18  the club or whether the club has a duty independent of the physician to advise a player of his

19  medical condition, are 'inextricably intertwined' with the provisions of the CBA.").

20         Thus, this Court could not resolve Plaintiffs' fraud claims without interpreting the CBA,

21  requiring preemption and dismissal.

22              **C.       Plaintiffs' Derivative Claims Require Interpretation of the CBAs**

23         Plaintiffs' remaining claims – for a declaratory judgment (Count I), medical monitoring

24  (Count II), and loss of consortium (Count VII) – are preempted because they are derivative of the

25  preempted negligence and fraud claims.  SAC ¶ 279 (seeking declaratory relief because "[t]he NFL

26  voluntarily undertook a duty to act with reasonable care toward" Plaintiffs) and ¶¶ 287-89 (alleging

27  that medical monitoring is due because NFL breached "duty of care" owed to Plaintiffs).

28         Claims for declaratory relief "rise and fall with the [plaintiff's] other substantive claims."

1  *Santa Clara Valley Water Dist. v. Olin Corp.*, 655 F. Supp. 2d 1066, 1080 (N.D. Cal. 2009).

2  Because Plaintiffs' substantive claims here are preempted, so is their declaratory judgment claim.

3  *See Bernardi v. Amtech/San Francisco Elevator Co.*, No. C 08-01922 WHA, 2008 WL 2345153, at

4  *4-5 (N.D. Cal. June 5, 2008) (dismissing as preempted under  Section 301 both substantive claim

5  and claim for related declaratory relief); *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115,

6  1131-32 (N.D. Cal. 2001) (same).

7       Similarly, medical monitoring is not an independent cause of action, but is instead a

8  remedy available only "when liability is established under traditional tort theories of recovery."

9  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1007 (1993).  Thus, it too is preempted.

10       Finally, a loss of consortium claim requires a tortious injury to the plaintiff's spouse and

11  also "stands or falls" with the underlying tort.  *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 (2007);

12  *Tucker v. CBS Radio Stations, Inc.*, 194 Cal. App. 4th 1246, 1249, 1256 (2011).  The loss of

13  consortium claims are thus preempted for the same reason as the underlying claims.  *See Eidson v.*

14  *Medtronic, Inc.*, --- F. Supp. 2d ---, 2014 WL 1996024, at *23 (N.D. Cal. May 13, 2014) (holding

15  that loss of consortium claims derived from claims preempted by Federal Food, Drug, and

16  Cosmetic Act were also preempted); *Calsen v. Stanford Univ.*, No. 5:13-cv-04738-PSG, 2014 WL

17  899362, at *1, *3 (N.D. Cal. Mar. 4, 2014) (holding that loss of consortium claim based on

18  husband's claim preempted by Section 301 of the LMRA also was preempted).

19  **II.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO EXHAUST**
20  **MANDATORY ARBITRATION PROCEDURES**

21       Federal policy "strongly favors the resolution of labor disputes through arbitration."

22  *Matthews*, 688 F.3d at 1111 (internal quotations omitted).  Where parties have agreed to dispute

23  resolution in accordance with procedures in a CBA – as here – the LMRA precludes parties from

24  suing before exhausting those procedures.  *See Allis-Chalmers*, 471 U.S. at 219-21; *Carr v. Pac.*

25  *Mar. Ass'n*, 904 F.2d 1313, 1317 (9th Cir. 1990); *Sherwin*, 752 F. Supp. at 1177 ("It is settled in the

26  field of federal labor law that an employee must at least attempt to exhaust the grievance and

27  arbitration procedures established by the collective bargaining agreement before bringing suit.").

28       A court must dismiss claims where, as here, a party fails to exhaust mandatory grievance

1     procedures unless it can be said "with positive assurance" that the arbitration provisions are "not

2     susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc.*, 475 U.S. at

3     650 (quotations omitted); *see also United Steelworkers of Am. v. Retirement Income Plan for*

4     *Hourly-Rated Emps. of ASARCO, Inc.*, 512 F.3d 555, 559-61 (9th Cir. 2008) (discussing federal

5     policy in favor of labor arbitration and applying presumption of arbitrability).  When an agreement

6     includes a broad arbitration clause, only an "express exclusion" of a particular grievance or "'the

7     most forceful evidence of a purpose to exclude the claim from arbitration'" will overcome the

8     presumption of arbitrability.  *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg.*

9     *Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991) (internal citation omitted).

10        As shown above, the CBAs all have required arbitration of any dispute involving the

11     interpretation of, application of, or compliance with any provision of the CBA or other collectively-

12     bargained rules.  Plaintiffs' claims here unquestionably qualify.

13        Even if the Court could resolve Plaintiffs' claims without *interpreting* the myriad CBA

14     provisions addressing player health and safety, their claims at a minimum *involve the application of*

15     *or compliance with* those provisions.  *See Jeffers v. D'Allessandro*, 681 S.E.2d at 415 (holding that

16     player's tort claims alleging inadequate medical care were subject to arbitration, even if not

17     preempted, because "[e]ven if we were to agree with Jeffers that his claims do not involve an

18     interpretation of the CBA, which we do not, 'application' cannot be read out of the contract").  For

19     example, Plaintiffs' claim that the NFL failed to hire and retain "well-qualified, medically-

20     competent, professionally-objective and specifically-trained professionals" (SAC ¶ 387)

21     necessarily involves compliance with the CBA provisions mandating that the Clubs have "board-

22     certified" physicians and trainers "certified by the National Athletic Trainers Association."  *See,*

23     *e.g.*, Curran Decl. Ex. 10 (2006 CBA) Art. XLIV §§ 1, 2.  Likewise, Plaintiffs' claim that the NFL

24     acted fraudulently by depriving players of the opportunity for "independent and objective medical

25     diagnoses" (SAC ¶ 307) clearly involves compliance with the CBA term expressly providing

26     players with an opportunity to receive a "second medical opinion."  *See, e.g.*, Ex. 9 (2002 Am. to

27     1993 CBA) Art. XLIV § 3, XLV § 2.

28        In fact, prior grievances filed by NFL players and their Union confirm that the parties

---

18

1   committed disputes relating to health and safety to arbitration, not to court. *See, e.g.*, *Jeffers v.*

2   *Carolina Panthers*, at 15 (2008) (Das, Arb.) (resolving dispute whether Club was negligent in

3   hiring and retaining Club physician); *Wilson v. Denver Broncos*, at 3 (2008) (Townley, Arb.) (case

4   involving player's claim that Club and medical staff did not fully disclose medical condition);

5   *Bunch v. N.Y. Giants*, at 14 (1997) (Creo, Arb.) (same).  Curran Decl. Exs. 15, 16, 19.  Most

6   recently, as noted above, the Union has asserted a grievance against the NFL relating to the

7   administration of Toradol by Club physicians.  Curran Decl. Ex 18.

8          This past practice is compelling evidence of the parties' intent to require arbitration of

9   disputes regarding the health and safety of the players. *O'Rourke v. Carmen M. Pariso, Inc.*, 501

10  F. Supp. 2d 445, 450 (W.D.N.Y. 2007) (dismissing claims in part because "at least two of

11  Plaintiffs' claims . . . were subject to a prior grievance processed to conclusion under the CBAs,

12  thus demonstrating that both the Union, as agent of Plaintiffs for purposes of enforcing the CBAs,

13  and Defendant treated such claims as within the exclusive grievance procedure defined in the

14  CBAs").

15         Because Plaintiffs' claims plainly "involve the interpretation of, application of, or

16  compliance with" the CBAs, they fall squarely within the parties' broad arbitration provisions.  In

17  the absence of any "positive assurance" to the contrary (*AT&T Techs., Inc.*, 475 U.S. at 650), and

18  especially given the presumption in favor of arbitrability (*Winery, Distillery & Allied Workers*

19  *Union, Local 186* v. *E&J Gallo Winery, Inc.*, 857 F.2d 1353, 1356 (9th Cir. 1988)), the claims must

20  be dismissed because Plaintiffs have failed to present them under the CBA's mandatory grievance

21  procedures.

22

23

24

25

26

27

28

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)          Case No.: 3:14-cv-02324-WHA

1

**<u>CONCLUSION</u>**

2      Plaintiffs assert state-law claims based on allegedly deficient medical care provided by

3  team doctors and trainers.  None of their claims could be resolved without interpretation of a CBA.

4  Consistent with a long line of precedent holding similar claims preempted, this Court should

5  dismiss the SAC with prejudice.

6  Date:  September 25, 2014

                                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
7

8                                   By:  /s/ *Allen J. Ruby*_____
                                         Allen J. Ruby
9
                                         Attorneys for Defendant
10                                       *National Football League*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT NFL'S MOTION TO DISMISS (SECTION 301 PREEMPTION)      Case No.: 3:14-cv-02324-WHA