1  William N. Sinclair (SBN 222502)
   (bsinclair@mdattorney.com)
2  Steven D. Silverman (Admitted *Pro Hac Vice*)
   (ssilverman@mdattorney.com)
3  Andrew G. Slutkin (Admitted *Pro Hac Vice*)
   (aslutkin@mdattorney.com)
4  Stephen G. Grygiel (Admitted *Pro Hac Vice*)
   (sgrygiel@mdattorney.com)
5  Joseph F. Murphy, Jr. (Admitted *Pro Hac Vice*)
   (jmurphy@mdattorney.com)
6  Phillip J. Closius (Admitted *Pro Hac Vice*)
   (pclosius@mdattorney.com)
7  **SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC**
   201 N. Charles St., Suite 2600
8  Baltimore, MD 21201
   Telephone: (410) 385-2225
9  Facsimile: (410) 547-2432

10 Thomas J. Byrne (SBN 179984)          Stuart A. Davidson (Admitted *Pro Hac Vice*)
   (tbyrne@nbolaw.com)                   SDavidson@rgrdlaw.com
11 Mel T. Owens (SBN 226146)             Mark J. Dearman (Admitted *Pro Hac Vice*)
   (mowens@nbolaw.com)                   MDearman@rgrdlaw.com
12 **NAMANNY BYRNE & OWENS, P.C.**      **ROBBINS GELLER RUDMAN & DOWD LLP**
   2 South Pointe Drive, Suite 245       120 E. Palmetto Park Road, Suite 500
13 Lake Forest, CA 92630                 Boca Raton, Florida 33432
   Telephone: (949) 452-0700            Tel:   (561) 750-3000
14 Facsimile: (949) 452-0707            Fax:   (561) 750-3364

15 *Attorneys for Plaintiffs Richard Dent, et al.*

                   **UNITED STATES DISTRICT COURT**
16                **NORTHERN DISTRICT OF CALIFORNIA**
                     **SAN FRANCISCO DIVISION**
17

18 RICHARD DENT, *et al.*                ) **CASE NO. C-14-2324 WHA**
                                          )
19            Plaintiffs,                 ) **PLAINTIFFS' OPPOSITION TO**
                                          ) **DEFENDANT'S MOTION TO DISMISS**
20     v.                                 ) **SECOND AMENDED COMPLAINT**
                                          ) **(SECTION 301 PREEMPTION)**
21 NATIONAL FOOTBALL LEAGUE, a New        )
   York unincorporated association,       ) **Date:       October 30, 2014**
                                          ) **Time:       8:00 a.m.**
22            Defendant.                   ) **Courtroom:  8, 19th Floor**
                                          ) **Judge:      Hon. William Alsup**
23

24

25 **Plaintiffs' Opposition to Section 301 Preemption Motion**                    1
   **Case No. C 14-02324 WHA**

## TABLE OF CONTENTS

INTRODUCTION .......................................................................................................2

ARGUMENT

I.   CLAIM BASED ON THE NFL'S ILLEGAL ACTIVITIES ARE NOT PREEMPTED...........................................................................................4

II.   NFL MISSTATES CORE PREEMPTION PRINCIPLES.......................4

   A. NFL Has Heavy Burden To Show Necessary "Interpretation" of a CBA .....4

   B. NFL Ignores the Narrow Definition Of "Interpret" for Section 301 Preemption.........................................................................................5

   C. NFL Fails to Explain Why "Interpretation" of Any CBA is Required .........7

III.   THE CBAS DO NOT APPLY TO PLAINTIFFS OR THEIR CLAIMS ......8

   A. Plaintiffs Are Non-Bargaining Unit Retirees ...............................................8

   B. Cited CBA Provisions How Inapplicability to Plaintiffs and Their Claims ...9

      1. Health, Safety and Medical Provisions Deal With Clubs .................9

      2. CBA Drug Policy is Irrelevant to Plaintiffs' Claims ......................10

      3. Committee on Player Safety Does Not Apply to Plaintiffs' Claims ...11

      4. CBA Provisions Do Not Compel Preemption ...............................12

IV.   PLAINTIFFS'   NEGLIGENCE   COUNTS   NEED   NO "INTERPRETATION"..................................................................................13

V.   PLAINTIFFS' FRAUD COUNTS NEED NO CBA INTERPRETATION...20

VI.   THE PRESUMPTION OF ARBITRABILITY IS INAPPLICABLE .........23

# TABLE OF AUTHORITIES

**CASES** Pages

*Adams v. U.S. Forest Serv.*,
  671 F. 3d 1138 (9th Cir. 2012) ...................................................................4

*Aguilera v. Pirelli Armstrong Tire Corp.*,
  223 F.3d 1010 (9th Cir. 2000) ...................................................................20

*Allis-Chalmers Corp. v. Lueck*,
  471 U.S. 202 (1985).................................................2,4,7,12,14,19,24

*Assoc. Builders & Contractors, Inc. v. Local 302 Intern. Broth. of Elec. Workers*,
  109 F. 3d 1353 (9th Cir. 1997) .................................................................5

*Atwater v. Nat'l Football League Players' Ass'n.*,
  626 F. 3d 1170 (11th Cir. 1170) .............................................................21,22

*AT&T Technologies, Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)...................................................................................24

*Avalos v. Foster Poultry Farms*,
  798 F. Supp. 2d 1156 (E.D. Cal. 2011) .....................................................5

*Balcorta v. Twentieth Century Fox Film Corp.*,
  208 F. 3d 1102 (9th Cir. 2000) .....................................................5,6,7,15,16

*Bale v. Gen. Tel. Co. of California*,
  795 F.2d 775, 780 (9th Cir. 1986) ...........................................................20

*Barnes & Noble, Inc. v. LSI Corp.*,
  849 F. Supp. 2d 925 (N.D. Cal. 2012) .....................................................20

*Bock v. Hansen*,
  225 Cal. App. 4th 215 (2014) ...............................................................14,20

*Brown v. Brotman Medical Center, Inc.*,
  571 Fed. Appx. 572 (9th Cir. Apr. 25, 2014) ........................................14

*Brown v. Nat'l Football League*,
  219 F. Supp. 2d 372 (S.D.N.Y. 2002) .....................................................15

*Bunch v. New York Giants* (1997) (Creo, Arb.) .........................................25

*Burnett v. Godsall,*
    828 F. Supp. 1439 (N.D. Cal 1993) ..........................................................................14

*Burnside v. Kiewit Pacific Corp.,*
    491 F. 3d 1053 (9th Cir. 2007) ...........................................3,6,10,11,19,20,21

*Carter v. Smith Food King,*
    765 F. 2d 916, 921 (9th Cir. 1985) ....................................................................21

*Caterpillar Inc., v. Williams,*
    482 U.S. 386 (1987)...........................................................6,11,15,16,24,25

*Cramer v. Consol. Freightways, Inc.,*
    255 F.3d 683 (9th Cir. 2001) ...........................2,3,4,5,6,7,10,11,17,18,19,20,21

*Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.,*
    952 F. 2d 1073 (9th Cir. 1991) ..........................................................................25

*Duerson v. Nat'l Football League, Inc.,*
    No. 12 C 2513, 2012 WL 1658353 (N.D. Ill. May 11, 2012) .........................15,16,18

*Galdamez v. Metro Serv. S., Inc.,*
    No. CV 12-10934, 2013 WL 1247538 (C.D. Cal. Mar. 26, 2013)................................9

*Gilmore v. Union Pac. Ry. Co.,*
    No. S-09-2180, 2012 WL 3205233 (E.D. Cal. Aug. 2, 2012)...................................12

*Givens v. Tenn. Football, Inc.,*
    684 F. Supp. 2d 985 (M.D. Tenn. 2010).............................................................21

*Green v. Ariz. Cardinals Football Club LLC,*
    No. 4:14 CV 461, 2014 WL 1920468 (E.D. Mo. May 14, 2014)...............................14

*Green v. Pro Football Inc.,*
    No. PJM 13-1961, 2014 WL 3385927 (D. Md. July 8, 2014)..................................15

*Gulden v. Crown Zellerbach Corp.,*
    890 F. 2d 195 (9th Cir. 1989) ......................................................................3,5,22

*Hackbart v. Cincinnati Bengals, Inc.,*
    601 F. 2d 516 (10th Cir.  1979) .........................................................................14

*Hendy v. Losse,*
    925 F. 2d 1470, 1991 WL 17230 (9th Cir. 1991) ............................................13,14

*Holmes v. Nat'l Football League,*

    939 F. Supp. 517 (N.D. Tex. 1996) ............................................................20

*Humble v. Boeing Co.,*

    305 F. 3d 1004 (9th Cir. 2002) ............................................................3,6,7

*Ileto v. Glock, Inc.,*

    349 F. 3d 1191 (9th Cir. 2003) ............................................................14

*In re Kirsch,*

    973 F. 2d 1454 (9th Cir. 1992) ............................................................23

*Jeffers v. Carolina Panthers* (2008) (Das, Arb.) ............................................................12,25

*Jeffers v. D'Allessandro,*

    681 S. E. 2nd 405 (N.C. Ct.App. 2009) ............................................................18

*Jurevicius v. Cleveland Browns Football Co.,*

    No. 1:09 CV 1803, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010) ............................................................15

*Kline v. Security Guards, Inc.,*

    386 F. 3d 246 (3d Cir. 2004) ............................................................9,12

*Lingle v. Norge Div. Magic Chef, Inc.Lingle,*

    486 U.S. 399 (1988) ............................................................5,6,10,15,16,24

*Lividas v. Bradshaw,*

    512 U.S. 107 (1994) ............................................................3,6,15,24

*Lumper v. Boeing Corp.,*

    77 Fed. A'ppx. 946 (9th Cir. 2003) ............................................................3

*Matthews v. Nat'l Football League Mgmt. Council,*

    688 F. 3d 1107 (9th Cir. 2012) ............................................................12

*McPherson v. Tenn. Football, Inc.,*

    No. 3:07-0002, 2007 WL 5445124 (M.D. Tenn. May 31, 2007) ............................................................15

*Mendez v. SEIU Local 721,*

    No. CV 13-8558, 2013 WL 6504742 (C. D. Cal., Dec. 10, 2013) ............................................................7

*Miller v. AT&T Network Sys.,*

    850 F.2d 543 (9th Cir. 1988) ............................................................3

*Milne Employees Ass'n. v. Sun Carriers, Inc.,*

    960 F. 2d 1401 (9th Cir. 1991) ............................................................5

*Munoz v. Atlantic Express of L.A., Inc.,*
 No. CV 12-6074, 2012 WL 5349408 (C.D. Cal., Oct. 30, 2012)............................................5,24

*Nelson  v. Nat'l Hockey League,*
 No. 13 C 4846, 2014 WL 656793 (N.D. Ill. Feb. 20, 2014).................................................19

*Niehaus v. Greyhound Lines, Inc.,*
 173 F. 3d 1207 (9th Cir. 1999) .................................................................................3,23

*O'Rouke v. Carmen M. Pariso, Inc.,*
 501 F. Supp. 2d 445 (W.D.N.Y. 2007) ...........................................................................24

*Phillips v. TLC Plumbing, Inc.,*
 172 Cal. App. 4th 1133 (2009) .....................................................................................14

*Ramirez v. Fox Television Station, Inc.,*
 998 F. 2d 743 (9th Cir. 1993) ....................................................................................3,5

*Ramos v. Reliance Steel & Aluminum Co.,*
 No. CV 11-07861, 2011 WL 5593855 (C.D. Cal. Nov. 16, 2011)..........................................7,11

*Rice v. Ctr. Point, Inc.,*
 154 Cal. App. 4th 949 (2007) .....................................................................................14

*Romero v. San Pedro Forklift, Inc.,*
 266 Fed. A'ppx. 552 (9th Cir. 2008)............................................................................7,21

*Sherwin v. Indianapolis Colts, Inc.,*
 752 F. Supp. 1172 (N.D.N.Y. 1990).........................................................................16,17

*Smith v. Bates,*
 787 F. Supp. 176 (N.D. Cal. 1992)................................................................................7

*Stringer v. Nat'l Football League,*
 474 F. Supp. 2d 894 ( S.D. Ohio 2007) .................................................................11,17,18

*United Steelworkers of Am. v. Ret. Income Plan for Hourly-Rated Employees of Asarco, Inc.,*
 512 F. 3d 555 (9th Cir. 2008) ....................................................................................24

*Vess v. Ciba-Geigy Corp. USA,*
 317 F. 3d 1097 (9th Cir. 2003) ...................................................................................23

*Ward v. Circus Circus Casinos, Inc.,*
 473 F. 3d 994 (9th Cir. 2007) ...........................................................3,6,7,10,11,20,21

*Williams v. Nat'l Football League,*

    582 F. 3d 863 (8th Cir. 2009) ...............................................................12,17,18

*Wilson v. Denver Broncos* (2008) (Townley, Arb.) ...............................................12,25

*Winery, Distillery & Allied Workers Union, Local 186 v. E&J Gallo Winery, Inc.,*

857 F.2d 1353 (9th Cir. 1988) ...........................................................................24

*Wright v. Universal Maritime Serv. Corp.,*

    525 U.S. 70 (1998)..........................................................................................23,24

### OTHER AUTHORITIES

Restatement (Second) of Torts, § 324A...............................................................16

**INTRODUCTION**

The NFL's Motion to Dismiss fundamentally mischaracterizes the Plaintiffs' Second Amended Complaint ("SAC"). The Plaintiffs did not sue teams, team doctors or trainers for medical malpractice or any personal injury. The SAC alleges (such allegations are presumed true for this Motion) that the NFL deliberately engaged in systematic illegal conduct that damaged players on every team for decades. The NFL's misconduct violated the Controlled Substances Act, the Food Drug and Cosmetic Act, corresponding state statutes and multiple state common law duties. Once the SAC is properly understood, that Plaintiffs are crime victims, resolution of the preemption issue becomes clear.

Established Supreme Court and 9th Circuit precedents explicitly hold that a collective bargaining agreement ("CBA") cannot preempt claims based on illegal conduct. *See, e.g., Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985); *Cramer v. Consolidated Freightways Inc.*, 255 F.3d 683, 688 (9th Cir. 2001). This line of cases mandates the rejection of the NFL's preemption argument and the denial of the Motion to Dismiss.

The NFL also mischaracterizes Plaintiffs relationship to the NFL CBAs. These agreements, by their terms, cover only future and current players, not former ones. Retired players such as Plaintiffs cannot bring grievances under the current CBA and cannot sue the NFLPA for a breach of the duty of fair representation because they are not bargaining unit members and are not subject to the CBA. When they were active players, the Plaintiffs did not know of their injuries as a result of the NFL's fraudulent concealment and breaches of other duties. Acceptance of the NFL's Motion to Dismiss would leave all retired players with no remedy for the NFL's illegal conduct. These facts and allegations resolve any remaining preemption concerns.

The NFL concedes the inapplicability of the first alternative in the accepted preemption test – that the plaintiff's claim is based on a right created by a CBA.  The NFL relies solely on the second alternative, claiming the SAC's state law claims require interpretation of CBA provision(s).   To bolster its argument, the NFL misapplies or omits binding preemption precedent and mischaracterizes the SAC as "personal injury" claims.

Supreme Court and Ninth Circuit precedent, which the NFL fails to mention, establish that "interpretation" preemption is inappropriate here.   State law claims are not preempted simply because a provision in the CBA mentions the topic.   Checking a CBA provision to determine its relevance also does not support preemption.  *See, e.g., Lividas v. Bradshaw,* 512 U.S. 107, 122 (1994); *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1070 (9th Cir. 2007); *Ward v. Circus Circus Casinos*, 473 F.3d 994, 997 (9th Cir. 2007); *Cramer at 693-94*; *Miller v. AT&T Network Sys.*, 850 F.2d 543, 545-551 (9th Cir. 1988); *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 748-49 (9th Cir. 1993); *Gulden v. Crown Zellerbach Corp.*, 890 F.2d 195, 198-99 (9th Cir. 1989); *Lumper v. Boeing Corp.*, 77 F. App'x 948, 2003 WL 22301793, at *1 (9th Cir. 2003); *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002); *Romero v. San Pedro Forklift, Inc.*, 266 F. App'x 556, 2008 WL 313063, at *3 (9th Cir. 2008); *Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207 (9th Cir. 1999).  The SAC is not dependent on any provision of a CBA.  If the NFL CBAs never existed, Plaintiffs' complaint would be the same and could still be pleaded, defended, tried and proved.

The NFL's *Steelworkers Trilogy* "presumption of arbitrability" argument applies to grievable disputes about mandatory subjects of bargaining between parties to a current CBA.  These cases are not relevant to state law claims by Plaintiffs who are not bargaining unit members or subject to a CBA.   The CBA does not mention the NFL's duties to Plaintiffs

regarding its illegal distribution of Medications as described in the SAC nor does it contain an express, clear and unambiguous waiver of Plaintiffs' rights to bring state law claims against the NFL. The NFL's Motion to Dismiss applies to a case not brought by the Plaintiffs or alleged in the SAC.

**ARGUMENT**

### I. CLAIM BASED ON THE NFL'S ILLEGAL ACTIVITIES ARE NOT PREEMPTED.

Well-settled Supreme Court precedent holds that "section 301 does not grant the parties to a collective bargaining agreement the ability to contract for what is illegal under state law." *Allis-Chalmers*, 471 U.S. at 212. *See also Cramer*, 255 F.3d at 688 ("when an employer's surreptitious surveillance constitutes a *per se* violation of established state privacy laws, the employees affected thereby may bring an action for invasion of privacy regardless of the terms of the CBA")

The SAC alleges, with facts assumed true for this Motion *(see Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1142-43 (9th Cir. 2012)), that the NFL provided controlled substances and prescription drugs in violation of the Controlled Substance Act (*see* ECF No. 65 ¶¶ 63-87), the Food Drug and Cosmetic Act (*see* ECF No. 65 ¶¶88-100) and corresponding laws in every state (*see* ECF No. 65 ¶101). On this basis alone, the NFL's preemption-based Motion to Dismiss should be denied.

### II. THE NFL MISSTATES CORE PREEMPTION PRINCIPLES.

#### A. NFL Has Heavy Burden to Show Necessary "Interpretation" of a CBA.

The CBA provisions cited by the NFL apply to Clubs, not the League. The NFL therefore fails to carry its heavy burden of proving that CBA interpretation is required. "A state law claim is not preempted under §301 unless it ***necessarily*** requires the court to interpret an

existing provision of a [CBA] that can reasonably be said to be ***relevant to the resolution of the***

***dispute***." *Cramer*, 255 F.3d at 693 (emphasis added). *See Gulden*, 890 F.2d at 198 (reversing

preemption ruling based on district court's view that resolving plaintiff's claim required

"reference" to CBA "on several points:" "[t]he test is somewhat more restrictive;" claim is

preempted "only if it 'turn[s] on any collective bargaining interpretation'") (quoting *Lingle v.*

*Norge Div., Magic Chef, Inc.*, 486 U.S. 399, 406 n.5 (1988)); *Avalos v. Foster Poultry Farms*,

798 F. Supp. 2d 1156, 1162 (E.D. Cal. 2011) (defendant "failed to carry its heavy burden to

establish" that resolution of overtime claims "requires interpretation of the CBA"); *Munoz v.*

*Atlantic Express of L.A., Inc.*, 2012 WL 5349408, at *2 (C.D. Cal. Oct. 30, 2012) ("we take

seriously our duty to determine whether Plaintiff's claims require ***interpretation*** of the CBA and

will not lightly find that they are completely preempted").

### B.   NFL Ignores the Narrow Definition of "Interpret" for § 301 Preemption.

The NFL broadly argues that the required "interpretation" occurs if a CBA merely

mentions a subject tangentially related to state law claims. The 9th Circuit, in cases the NFL does

not cite, clearly rejects this position. "We have stressed that…the term 'interpret' is defined

narrowly – it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v.*

*Twentieth Century Fox*, 208 F.3d 1102, 1108 (9th Cir. 2000) (citing *Assoc. Builders &*

*Contractors, Inc. v. Local 302*, 109 F.3d 1353, 1357 (9th Cir. 1997), *Ramirez*, 998 F.2d at 748-

49, *Milne Employees Ass'n. v. Sun Carriers, Inc.*, 960 F.2d 1401, 1409-10 (9th Cir. 1991). The

NFL never recognizes the difference between preempted "interpretation" of a CBA and non-

preempted "looking to" or "consulting" a CBA. *See Ramirez*, 998 F.2d at 749; *Cramer*, 255

F.3d at 691.

Review of a CBA to determine its relevance – for example, to see that no CBA provisions concern the NFL's duty to comply with the Controlled Substances Act or to ensure that players are not receiving improper medications – is not "interpretation:"

> alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt a claim: adjudication of the claim must require interpretation of a provision of the CBA. ***A creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient***; rather, the proffered interpretation argument must reach a reasonable level of credibility. The argument does not become credible simply because the court may have to consult the CBA to evaluate it; ***'looking to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption***.

*Cramer*, 255 F.3d at 691-92 (emphasis added).  *See also Burnside*, 491 F.3d at 1072 ("Our circuit has repeatedly frowned upon defendants who have invoked tangentially related CBA provisions in a strained and transparent effort to extinguish state-law claims via preemption.") (citing *Cramer*, 255 F.3d at 691-92 and *Ward*, 473 F. 3d at 999.).

The NFL ignores the additional requirement that an "interpretation" must reflect "the totality of the policies underlying §301 – promoting the arbitration of labor contract disputes, securing the uniform interpretation of labor contracts, and protecting the states' authority to enact minimum labor standards." *Balcorta*, 208 F.3d at 1108-09. These policies are not threatened by the purely state law, non-CBA claims of retiree Plaintiffs not covered by any CBA. Preserving state law protections for workers[1] mitigates against preemption here, just as it did in *Lingle*, *Burnside*, *Cramer*, and *Ward*.

---

[1] Many cases finding no preemption deal with the interplay of state statutory protections and Section 301 and the question whether a CBA can deprive workers of state statutory minimum protections. *See, e.g., Livadis v. Bradshaw*, 512 U.S. 107, 112-123 (1994); *Balcorta* 208 F.3d at 1104-05 (California Labor Code immediate payment statute); *Humble v. Boeing Co.*, 305 F.3d 1004 (9th Cir. 2002) (Washington Law Against Discrimination); *Burnside*, 491 F.3d at 1058 (California Wage Order regulation). But established common law protections should be no more vulnerable to preemption. *See, e.g., Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394-95 (1987) (no preemption of claims based on individual employment contracts; "As the Court has stated, 'it would be inconsistent with congressional intent [under §301] to pre-empt state law

### C.   NFL Fails to Explain Why "Interpretation" of Any CBA Is Required.

The NFL's memo does not show ***how*** and ***why*** the CBA terms and provisions it provides (*see* Ex. 9 at pp. 30, 32, 35, 40, 43, 45, 48, 49, 52, 54, 58, respectively) must be interpreted to resolve Plaintiffs' claims.   *See, e.g., Balcorta,* 208 F.3d at 1109 (defendant "provides no argument to support its bare assertion" that interpretation was necessary). *See also, Humble* 305 F.3d at 1010 ("CBA provision does not trigger preemption when it is only potentially relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur"); *Mendez v. SEIU Local 721,* 2013 WL 6504742, at *3 (C.D. Cal. Dec. 10, 2013) ("Defendant points to no disputed or ambiguous terms or provisions that will require interpretation by the Court…Although reference to the terms of the CBA may be necessary, legal interpretation of those terms is unlikely to be even a marginal aspect of this case"); *Smith v. Bates,* 787 F. Supp. 176, 178 (N.D. Cal. 1992) (defamation claim not preempted even though "court must look to the [CBA] to determine if the statements are false…nothing in the plaintiffs' claims would require the court to interpret provisions of the [CBA]").

The SAC identifies no disputed CBA terms. *See Ramos v. Reliance Steel & Alum. Co.,* CV 11-07861, 2011 WL 5593855, at *2 (C.D. Cal. Nov. 16, 2011) ("in his Complaint Plaintiff does not appear to dispute the meaning of any terms with the CBA" and finding no need to interpret CBA in wrongful termination case).   The NFL identifies no disputed CBA term necessary to resolve Plaintiffs' claims.   "When the parties do not dispute the meaning of contract

---

rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" (quoting *Allis-Chalmers*, 471 U.S. at 212 (1985)); *Ward*, 473 F.3d at 997 (CBA-covered workers common law counts arising from altercation with employer's security guards not preempted); *Romero*, 266 F. App'x at 555-557 (no preemption of common law claims of wrongful discharge, fraud, promissory fraud, fraudulent inducement, promissory estoppel, emotional distress).

terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption." *Ward,* 473 F.3d at 998 (citing *Cramer,* 255 F.3d at 690-91).

## III.   THE CBAS DO NOT APPLY TO PLAINTIFFS OR THEIR CLAIMS.

### A.   Plaintiffs are Non-Bargaining Unit Retirees.

The NFL refers to the Plaintiffs as just "former football players" but never mentions their legal status as retirees not subject to any CBA. [ECF No. 65] ¶¶ 23, 24, 27, 29, 31, 35, 37, 39, 41, 44, 47. The current CBA (Ex. 11) took effect long after most of the Plaintiff class retired. The NFL concedes that the NFLPA, the players' "exclusive bargaining representative" for CBA and grievance purposes (*see, e.g.,* Exs. 5, p. 72 of 98; 6, p. 3 of 98; 7, p. 4 of 64; 7, p. 4 of 64; 8, p. 4 of 79; 9, p. 4 of 73), has always represented *only* "current and future NFL football players." Defining four categories of "current and future players" in the NFLPA's bargaining unit, the CBAs exclude retirees. *See, e.g.,* Ex. 9, p. 4 of 73; Ex. 8, p. 4 of 79; Ex. 7, p. 4 of 64. Plaintiffs today could not use the CBA grievance and arbitration process even if they so desired. Plaintiffs are also unable to file a claim against the NFLPA for breach of the duty of fair representation because they are not members of the bargaining unit.

All former CBAs have expired and do not apply to the Plaintiffs. *See, e.g.,* Ex. 8, p. 63 of 79; Ex. 7, p. 54 of 64. Plaintiffs could not have grieved and arbitrated their claims during their careers because the NFL concealed the facts underlying those claims from Plaintiffs. *See, e.g.,* ECF No. 65 ¶¶ 50-54; 331-369. Many of the Plaintiffs' injuries were latent, not manifest until the Plaintiffs had retired (*see id.* ¶¶ 283-290) and were no longer subject to any CBA. The NFL's position would reward the NFL for its own fraudulent concealment and leave the retiree Plaintiffs with no remedy.

**B.**   **Cited CBA Provisions Show Inapplicability to Plaintiffs and Their Claims.**

**1.**   **Health, Safety and Medical Care Provisions Deal with Clubs.**

The NFL claims that, since "every CBA expressly addresses player health, safety, and medical care in numerous provisions," the NFL's misconduct must be preempted. But none of the provisions the NFL cites concern, let alone purport to govern, retiree claims against the League based on criminal conduct that breached a voluntarily assumed duty of care.

The fact that the "Clubs' medical staff…have primary responsibility for the diagnosis and treatment of players," that Clubs must provide "board-certified orthopedic surgeon[s]," that Club doctors have to tell players what the doctors tell teams about players' health, that Clubs will pay for second opinions, and that pre- and post-season physicals are provided, are completely unnecessary for resolving Plaintiffs' state law claims against the League based on a duty, misconduct and Medications the CBA does not address.

Contrary to the NFL's central argument, some correspondence between CBA subjects and a state law claim is not enough for preemption. *See, e.g., Kline v. Security Guards, Inc.* 386 F.3d 246, 256 (3d Cir. 2004) (no CBA interpretation required for plaintiffs' claims arising out of employers' workplace surveillance; "the essential question is not whether Appellants' claims relate to a subject…contemplated by the CBA… [r]ather, the dispositive question…is whether Appellant's state law claims require any *interpretation* of a provision of the CBA") (emphasis in original). *See also Galdamez v. Metro Serv. S., Inc.*, 2013 WL 1247538, at *1-2 (C.D. Cal. Mar. 26, 2013) (no preemption of claim for breach of covenant of good faith and fair dealing despite CBA provision providing "'discharge or other discipline shall be for cause only;'" "The only issue is whether sexual harassment occurred, not what is permitted by the terms of the CBA").

Preemption is not dependent on some correspondence between CBA subjects and the Plaintiffs' claims, but rather the nature of the Plaintiffs' claims. Plaintiffs' common law claims, supported by the NFL's violations of federal law, are entirely free of any CBA provisions. *See, e.g., Burnside*, 491 F. 3d at 1060 ("the [Supreme] Court has instructed us to consider 'the ***legal*** character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued") (quoting *Livadas*, 512 U.S. at 123)).

Preemption is not required even if the Court assumes Plaintiffs could have brought their claims as CBA grievances at some past time. *See, e.g., Lingle*, 486 U.S. at 409-10 (no preemption "even if dispute resolution pursuant to a [CBA], on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself"); *Ward,* 473 F.3d at 999 (same).

### 2.    CBA Drug Policy Is Irrelevant to Plaintiffs' Claims.

The CBA Drug Policy provisions "specifically address[es] treatment of players who use and abuse prescription drugs and other controlled substances," aims to "deter and detect substance abuse…and to offer programs of intervention" (NFL Memo at 5). The Drug Policy therefore plainly concerns players' personal drug use, not League-provided Medications. Plaintiffs allege the NFL systematically and illegally provided the Medications to Plaintiffs. *See, e.g.,* [ECF No. 65] ¶¶ 17-22, 279. The Drug Policy is irrelevant to such allegations and no interpretation is required to resolve them. The NFL fails to show why, as opposed to simply asserting, interpretation of the policy is necessary to resolve Plaintiffs' claims. *Cramer*, 255 F.3d at 693. If anything, the Drug Policy buttresses Plaintiffs' claims of the NFL's wrongdoing. This Drug Policy argument is exactly the out-of-context tangential straining for preemption the Ninth

1   Circuit rejects. *See Burnside,* 491 F.3d at 1072; *Cramer,* 255 F.3d at 691-92; *Ward,* 473 F. 3d at

2   999.

3       A review of the Drug Policy language to determine it is not relevant to the NFL's duty in

4   this case is not "interpretation." *See, e.g., Ramos,* 2011 WL 5593855, at *2 (C.D. Cal. Nov. 16,

5   2011) ("While the Court may need to 'look to' the CBA to assist in making these factual

6   determinations [Defendant's motive in not accommodating and terminating plaintiff], it will not

7   likely require the Court to *interpret* the CBA" (citing *Ward,* 473 F.3d at 998)).

8           **3.      Committee on Player Safety Does Not Apply to Plaintiffs' Claims.**

9       The CBA's purely advisory "Joint Committee on Player Safety and Welfare" (*see, e.g.,*

10  Ex. 9 at 14) offers no preemption support. *Stringer v. Nat'l. Football League,* 474 F. Supp. 2d

11  894, 906 (S.D. Ohio 2007), on which the NFL relies (NFL Memo at 9, 10, 13) said so: "[t]he

12  NFL has no representative on the committee," and the "CBA imposes no independent duty on

13  the NFL to consider health risks arising from adverse playing conditions, or to make

14  recommendations for rules, regulations or guidelines for the clubs to follow."   No forfeiture of

15  state law tort rights can come from such a nebulous connection to a CBA. *See, e.g., Burnside,*

16  491 F.3d at 1069-70 ("state-law-conferred right…remains with the employee unless and until it

17  is expressly given away").   The Committee can only discuss the player safety and welfare

18  aspects of playing equipment, playing surfaces, stadium facilities, playing rules, player-coach

19  relationships, and any other relevant subjects. The Committee's CBA charge does not mention

20  Medications or the League's responsibility for providing them to players.  Nor can the "any other

21  relevant subjects" catch-all produce preemption.  Preemption requires specific CBA language on

22  which resolution of the claim substantially depends. *See Cramer,* 255 F.3d at 690 (discussing

23  *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 396, n.10 (1987) ("The Court made clear that the

complaints of employees covered by a CBA were not preempted if their claims were unrelated to the terms of the CBA....")).  Preemption requires not generalizations, but a close fit between a legal claim and a specific, identifiable CBA provision. *See Kline*, 386 F 3d at 256.

### 4.  **CBA Provisions Do Not Compel Preemption.**

The NFL's circular argument based on the CBA's "mandatory grievance and arbitration procedures" simply assumes the preemption conclusion.  The statement that "NFL players and their union have a longstanding history of grieving and arbitrating" health and safety disputes ignores that Plaintiffs are not in the NFLPA, the NFLPA does not represent them, and Plaintiffs were unaware of their claims when they were in the bargaining unit.  "[W]hether a claim is preempted must be determined on a case by case basis." *Gilmore v. Union Pac. Rwy. Co.*, No. S-09-2180, 2012 WL 3205233, at *5 (E.D. Cal. Aug. 2, 2012) (citing *Allis-Chalmers*, 471 U.S. at 220).  Reciting past voluntary arbitrations of different claims[2] is no substitute for required preemption analysis.

---

[2] Plaintiffs do not allege medical malpractice against team doctors, so *Jeffers v. Carolina Panthers* (2009) (Das, Arb.) is irrelevant. *Williams v. National Football League*, 582 F.3d 863 (8th Cir. 2009), involved claims by ***current*** players for their suspensions based on a drug testing policy expressly included in the relevant CBA.  Finding the players' state common law claims were preempted, the *Williams* court upheld their state statutory claims by employing a narrower view of preemption than the NFL urges here. *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107 (9th Cir. 2012) is similarly inapt. "Pursuant to a binding arbitration clause in the NFL collective bargaining agreement," that the opinion does not say the plaintiff challenged, the parties arbitrated whether the plaintiff was entitled to pursue a workers compensation claim in California in light of Plaintiff's contract's Tennessee choice of law provision. *Matthews* said nothing about the preemption analysis our case requires. *Wilson v. Denver Broncos* (2008) (Townley, Arb.) simply reflects a single player's decision voluntarily to file a grievance (belatedly, the opinion's focus) against his former team and the League Management Council, alleging the team doctors did not inform him of and permitted him to play despite a dangerous spinal condition.  Section 301 preemption analysis appears nowhere. *NFLPA v. NFL Clubs and NFLMC* (Ex. 18) involves NFLPA arbitration with the NFL and Clubs over the League's recent mandate that players sign releases concerning Toradol, and is irrelevant to whether Plaintiffs' claims are preempted.

1    IV.   **PLAINTIFFS' NEGLIGENCE COUNTS NEED NO INTERPRETATION.**[3]

2        The NFL states, but does not show, that to resolve Plaintiffs' negligence claims (Counts

3    V, VI, VIII, and IX), "the Court would have to interpret the host of CBA provisions related to

4    player medical care." The NFL fails to provide specific CBA language that mandates such a

5    conclusion and therefore fails to meet its heavy burden of demonstrating a necessary

6    interpretative CBA issue.

7        *Hendy v. Losse*, 925 F.2d 1470, 1991 WL 17230 (9th Cir. Feb. 12, 1991) (unpub.), shows

8    the NFL could not make the required showing even if it tried.  Hendy, a former San Diego

9    Charger, sued the team and team doctor "asserting various tort claims." *Id.* at *1.  After reciting

10   negligence's familiar elements - duty, breach and proximately caused injury - the court described

11   the team's argument, which is essentially the NFL's here: that "the scope of their duty cannot be

12   ascertained without reference to Article XXXI of the collective-bargaining agreement, which

13   requires each team to hire 'a board certified orthopedic surgeon,' or Paragraph 9 of Hendy's

14   Player Contract, which sets out the conditions under which the Chargers were to provide medical

15   care." *Id.* at *2.

16       For reasons equally applicable here, the *Hendy* panel rejected that argument: "Hendy

17   does not allege the Chargers failed to hire a certified orthopedist or that he was not treated when

18   he was contractually entitled to treatment.  He asserts instead the Chargers failed to use due care

19   when they hired and retained Dr. Losse.  On its face, this claim arises solely under state law and

20   is wholly independent of the collective-bargaining agreement." *Id.* at *2.   Just as "Hendy's

21   claim does not depend in any way on his status as a member of the [NFLPA]" (*id.*), neither do

22   _____

23       [3] Plaintiffs' Declaratory Judgment, medical monitoring, and loss of consortium claims
     survive because Plaintiffs' negligence and fraud claims survive.  Plaintiffs incorporate by
     reference the arguments *infra*.

24

25

Plaintiffs' here. Plaintiffs allege the creation and breach of a duty of care outside any CBA.[4]
*See, e.g.*, [ECF No. 65] ¶¶ 143, 194, 272, 278-282, 299-306, 312, 327-328, 332-338, 349-353.

Hendy's remaining claims were for intentional and negligent withholding of medical information (*id.* at *3). The Defendants argued these claims necessitated interpretation of CBA provisions requiring team doctors to tell players what they tell teams about a player's physical condition and providing players' twice-yearly right to inspect medical records. Rejecting this argument, the *Hendy* panel found the doctor's disclosure duty was based in "state-law doctrine of informed consent" and California's "clear public policy to promote patient access to medical information." *Id.* at *3. State law provides both the origin and measure of Plaintiffs claims, too. *See also Green v. Arizona Cardinals Football Club LLC*, 2014 WL 1920468, at *5-*7 (E.D. Mo. May 14, 2014) (rejecting preemption argument, citing *Hendy,* and holding plaintiff's common law claims were neither created by nor require the interpretation of a CBA, distinguishing CBA provisions about team-provided medical care and plaintiff's claims of non-disclosure of long-term risks); *Hackbart v. Cincinnati Bengals, Inc.*, 601 F.3d 516, 521 (10th Cir. 1979) (district

---

[4] *Ileto v. Glock, Inc.* 349 F.3d 1191, 1206 (9th Cir. 2003); *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1141-45 (2009); *Bock v. Hansen*, 225 Cal. App. 4th 215, 228 (2014); and *Rice v. Ctr. Point, Inc.*, 154 Cal. App. 4th 949, 958-59 (2007) simply recite negligence elements. In *Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 2014 WL 1647382, at *2 (9th Cir. Apr. 25, 2014) (unpub.) (NFL Memo at 8-9), the panel reversed the trial court, ruling that five of six claims were *not* preempted. Only the plaintiff's claim under § 6400 of the California Labor Act was preempted. That statutory provision, however, "gives employers 'room for discretion' in their decisions about workplace safety." At the same time, "[t]he CBA gives Brotman wide latitude in making determinations about management of the workplace as it reserves Brotman's right to 'adopt rules of safety…'" *Id.* No such CBA provision gave the NFL latitude to sponsor the pharmaceutical free-for-all the SAC alleges. As *Brown* stated in finding the plaintiff's assault and battery claim was not preempted: "The LMRA does not give parties 'the ability to contract for what is illegal under state law.'" *Id.* at * 1 (quoting *Allis-Chalmers*, 471 U.S. at 212). *Burnette v. Godshall*, 828 F. Supp. 1439, 1446 (N.D. Cal. 1993) makes the same point and found no preemption of plaintiff's assault, battery, conspiracy and state statutory claims arising from an altercation with a co-worker. Only the gross negligence claim was preempted, in the absence of a state statutory origin and in light of a CBA provision governing employer's duties to "monitor[ ] and discipline[e] employees."

court erred in finding no jurisdiction over intentional tort on grounds "the injury was inflicted during a professional football game" (not specifically discussing preemption)); *McPherson v. Tenn. Football, Inc.*, 2007 WL 5445124 (M.D. Tenn. May 31, 2007) (no preemption of injury claim from mascot hitting plaintiff during halftime; no CBA provisions governed mascots or halftime field safety); *Brown v. NFL*, 219 F. Supp. 2d 372, 388 (S.D.N.Y. 2002) (no preemption of claim for injury from errantly thrown penalty flag); *Green v. Pro Football, Inc.*, 2014 WL 3385927, at * 8-11 (D. Md. July 8, 2014) (player's state law battery and civil conspiracy claims for injuries from "bounty program" not preempted; no need to interpret CBA or League rules).

The *Maxwell* Order cited by the NFL is not persuasive in this case. *Maxwell* does not even mention *Caterpillar, Lingle, or Livadas,* or their required preemption analysis. The two-page Order simply followed the non-precedential *Stringer* 474 F. Supp. 2d at 910. *Maxwell* never discusses why and to what extent "[t]he physician provisions of the CBA must be taken into account in determining the degree of care owed by the NFL and how it relates to the NFL's alleged failure to establish guidelines or policies to protect the mental health and safety of its players." *Maxwell* Order at 2. The court erroneously conflated "taking a provision into account" with "interpretation." *Cf. Balcorta*, 208 F.3d at 1109–10 (CBA provisions with "fairly complicated procedures" and "hefty dose of industry jargon," could be "read and appl[ied]" without being "interpreted" where "their meaning [was] neither uncertain nor ambiguous").

*Duerson v. NFL, Inc.*, 2012 WL 1658353 (N.D. Ill. May 11, 2012) is equally non-precedential and inapposite. *Duerson* disagreed with the Ninth Circuit ruling in *Hendy* (*id.* at *5), and distinguished *Jurevicius v. Cleveland Browns Football Co.*, 2010 WL 8461220 (N.D. Ohio Mar. 31, 2010). The *Duerson* court said *Jurevicius's* claims were not preempted because they involved a duty to warn about the condition of training facilities rather than claims about a

player's physical condition.  Plaintiffs here also fundamentally allege the NFL's failure to warn

about a condition, the provision of illicit Medications.  *See* [ECF No. 65] ¶¶ 308-324.  *Duerson*

exceeds the scope of "interpret" for §301 preemption (e.g. *Balcorta*, 208 F.3d at 1108-09) and

ignores the rule that preemption is unwarranted simply because the same facts that supported

Duerson's state law claims might also support a labor grievance.  *Caterpillar, Inc.,* 482 U.S. at

395; *Lingle*, 486 U.S. at 409-10.

   The NFL relies on *Duerson's* speculations (*Duerson*, 2012 WL 1658353, at *4) that

interpretation is necessary because clubs' duties under the CBA might permit the NFL to

"exercise a lower standard of care." *Duerson* cited no authority for that conjecture, which ignores

the scope of the duty Plaintiffs allege. *See, e.g.*, Restatement (Second) of Torts, § 324A.

*Duerson*'s statement – that "[d]etermining the meaning" of CBA provisions concerning Clubs'

provision of doctors, trainers, and physicals was necessary – ignores those provisions' plain

language and contradicts Ninth Circuit law on "interpretation." *Cf. Balcorta*, 208 F.3d. at 1108.

   *Stringer* arose from a current player's training camp hot weather death and the NFL's

provision of "Hot Weather Guidelines." 474 F. Supp. 2d at 905.  The court found necessary an

analysis of "the relationship of those Guidelines to CBA-specified duties of trainers and team

physicians." *Id.* at 909-10.  Distinguishable because Stringer died while a current player and our

case involves no analogous NFL-published "Manual for Provision of Illegal Medications,"

*Stringer*'s erroneously broad view of "interpretation" contradicts Supreme Court and Ninth

Circuit precedent. *Stringer* also held that additional claims by the Plaintiff based on other NFL

common law duties were not preempted. *Id.* at 912-915.

   *Sherwin v. Indianapolis Colts, Inc.*, 752 F. Supp. 1172 (N.D.N.Y. 1990) involved a

former player's claims that his team and team doctors failed to disclose important medical

information to him and wrongly let him play. 752 F. Supp. at 1174. Finding that these claims "arise out of" the CBA and standard player agreement, the court found these claims were "substantially dependent" on the CBA (*id.* at 1178, 1179) because without the CBA the team would have had no duty to provide medical care to plaintiff.

Plaintiffs here do not allege claims against the Clubs or a duty arising out of the CBA or standard player agreement.[5] No CBA provision addresses the NFL's responsibilities *vis-à-vis* the illicit provision of the Medications. Not one of the hundreds of NFL-selected pages of CBAs going back to 1968 mention the Medications or protocols for their provision. *See Cramer,* 255 F.3d at 695 ("We need not 'interpret' the CBA to see that it does not contemplate the surreptitious videotaping plaintiffs challenge in their state law claim. Consulting the CBA reveals the absence of such a provision.").

*Williams v. Nat'l Football League* illustrates why the instant case is **_not_** preempted. Suspended for failing drug tests, *Williams's* plaintiffs, unlike Plaintiffs here, were active players subject to a CBA. Unlike retiree Plaintiffs here who were unaware of their injuries while active and cannot file a grievance as retirees, the *Williams* plaintiffs attended a hearing after which the League official/Hearing Officer upheld the suspensions based on the language of a "Policy on Anabolic Steroids and Related Substances" incorporated expressly in CBA and confirmed as such by NFLMC and NFLPA memoranda. This case involves no such policy, nor any CBA provision, concerning the NFL's duty to players concerning the Medications.[6]

---

[5] *Stringer,* 474 F. Supp. 2d at 911, n. 9, said *Sherwin* did not support preemption because, "factually distinguishable," it was "brought directly against the NFL clubs who were bound by the CBA" and "the rights asserted, and duties allegedly breached, were expressly created by the terms of the CBA."

[6] Again here the NFL conclusorily lists CBA provisions about **_Clubs'_** and **_Club doctors'_** and **_trainers'_** duties, saying their interpretation is necessary. But a club's duty to provide a trainer, an orthopedic surgeon and physicals says nothing about the League's duty not to hurt

The *Williams* panel found the plaintiffs' common law claims preempted but nonetheless found the NFL had failed to carry its "burden to establish preemption of the Players' [statutory] claim." *Williams*, 582 F. 3d at 880. Just as *Williams* found nothing in the appropriate CBA "relevant to the terms 'off the premises of the employer' or 'nonworking hours'" concerning the "training camp" period the NFL asserted was at issue (*id.*), nothing in the NFL CBAs deal with the procurement and provision of, and the NFL's duty to Plaintiffs concerning, the Medications. *Id.*

Just as the *Williams* CBA and player contract provisions concerning the identity of the plaintiffs' employer needed no "interpretation" (*id.* at 878), the Medical Care and Treatment and other CBA provisions do not require preemption-triggering "interpretation." In *Cramer*, CBA-covered employees discovered secret surveillance cameras and listening devices in employee bathrooms aimed at driver drug use. 255 F.3d at 688. "Section 2 of the agreement" prohibited "camera surveillance for disciplinary reasons" and specified a procedure "for the use of videotapes in the context of theft or dishonesty allegations." *Id.* at 693. Another CBA provision dealt with "alcohol and drug use" and related testing procedures. *Id.*

Despite those provisions, the *en banc* Ninth Circuit held that the plaintiffs' claims were not preempted. "[B]ased on California's constitutional and statutory rights of privacy guaranteed to all persons, whether or not they may happen to work subject to a CBA[;]" (*id.* at 694), those claims needed no CBA "interpretation:"

> Neither of these [CBA] provisions purports to have any bearing on secret spying on Consolidated's employees in company restrooms.... Consolidated cannot create a dispute as to the meaning of the terms of the CBA by picking out terms that refer to videotapes and drug use, particularly when a cursory examination of

Plaintiffs by violating federal drug laws. Trying to force that connection the NFL offers nothing but inapposite cases such as *Duerson* and *Stringer* and the also inapposite *Jeffers v. D'Allessandro*, 681 S.E. 2d 405, 412-13 (N.C. Ct. App. 2009). Preemption in *Jeffers* was rooted in the claim's CBA-based origin, unlike the Plaintiffs' state law claims in this case.

those provisions makes clear they apply to a completely different context and set of circumstances.

*Id.*

*Cramer* shows that the absence of any NFL-cited CBA addressing the NFL's criminal violation of providing federal controlled substances to players without proper diagnosis, prescription, informed consent and follow-up means no interpretation is necessary. A CBA preemption claim may not be based on illegal conduct. *See, e.g., Allis-Chalmers*, 471 U.S. at 212; *Cramer*, 255 F.3d at 688.

In *Nelson v. National Hockey League,* 2014 WL 656793 (N.D. Ill. Feb. 20, 2014), the plaintiffs' claims, unlike those here, implicated the League's Substance Abuse Program, incorporated in the 2005 CBA while the plaintiff's decedent was playing and aware of his addiction. Finding the alleged duty based in the CBA, the Court found the claims preempted because "the extent of [the] defendant's voluntary undertaking is set forth in a collective bargaining agreement[.]" *Id.* at * 4.

The NFL argues from these inapposite cases that the NFL would have to "interpret" CBA provisions concerning clubs and club doctors, player reporting of injuries, club doctors' obligations to treat players and the like to determine the existence, scope and any breach of the NFL's duty. But none of those provisions deal with the NFL's obligation to comply with the federal Controlled Substances Act. None says what the NFL – as distinct from the Clubs – must do to protect the players from wrongfully administered Medications.

*Burnside* demonstrates the much closer fit that "interpretation"-based-preemption requires between CBA provisions and a state law claim. *Burnside* involved employee claims for travel time from meeting sites to job locations. Three of *Burnside's* CBAs contained provisions addressing "compensation for travel time between a 'reporting point' and 'jobsite,' and

distinguish[ing] between employer-mandated travel and voluntary travel." 491 F.3d 1053, 1071 (9th Cir. 2007). Yet no "interpretation" was necessary: "[e]xamining any one of them would only confirm that none contain an express waiver" of the statutory right to payment for compulsory travel time. *Id.* Such examination here confirms that none of the CBAs deal with the NFL's responsibilities to Plaintiffs concerning the provision of Medications in compliance with the federal drug laws. *Cf. Holmes v. National Football League*, 939 F. Supp. 517 (N.D. Tex. 1996) (state law tort claims based on CBA Drug Program preempted where plaintiff NFLPA member grieved drug suspension under CBA Drug Program and argued CBA issues in appeal to Commissioner).

## V. PLAINTIFFS' FRAUD COUNTS NEED NO CBA INTERPRETATION.

Relying on the same erroneously overbroad view of §301 "interpretation" in arguing for preemption of Plaintiffs' fraud counts (III – V), the NFL again ignores the Ninth Circuit rulings in *Cramer*, *Ward*, and *Burnside* that a CBA's mention of certain subjects in another context – *e.g.*, "season length, roster sizes, conduct of practices, and use [by players] of controlled substances" (NFL Memo at 14) – does not trigger preemption.

No reason exists, and the NFL supplies none, for its conclusory assertion that "this Court would have to interpret the CBAs to resolve whether the NFL had a duty to disclose 'the dangers' of the medications." *Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 936 (N.D. Cal. 2012) and *Bock v. Hansen,* 225 Cal. App. 4th 215 (2014) simply state that a concealment fraud plaintiff must establish a defendant's duty to disclose. That demonstration here comes from the SAC. *See, e.g.*, ¶¶ 197, 279, 305-313. Entirely distinguishable, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000), involved claims of laid-off replacement workers who "were part of the bargaining unit whose positions were covered by the

1995 CBA" and "acknowledge that they had expressly acceded to the CBA, which governed their job terms and layoff guidelines." No analogous CBA provisions govern the League's responsibility to the Plaintiffs concerning the Medications. Similarly off-point and also implicating the labor law concerns animating § 301 preemption not present here, *Bale v. Gen. Tel. Co. of Cal.*, 795 F.2d 775 (9th Cir. 1986), involved claims by temporary employees that they had been misled about their status. Unlike here, the *Bale* plaintiffs' tort claims were preempted because "they 'arose out of the same acts and conduct'" (*id.* at 780) (quoting *Carter v. Smith Food King*, 765 F. 2d 916, 921 (9th Cir. 1985)), as their admittedly preempted "contract claims." *Id.* at 779.

The NFL's reliance on *Givens v. Tenn. Football, Inc.*, 684 F. Supp. 2d 985 (M.D. Tenn. 2010) is wide of the mark. There the retired player's claims against his club were "either created by the CBA" – in particular the provisions concerning Club medical exams and Club doctor disclosure duties – or, in a conclusory finding contradicting *Cramer*, *Burnside*, and *Ward* – "inextricably intertwined with the CBA." *Id.* at 991. The NFL does not contend the claims here were CBA-created, and no interpretation of any CBA provision is required. *Cf. Romero*, 266 F. App'x at 556, 2008 WL 313063, at *2-*3 (No preemption of fraud, promissory fraud, and fraudulent inducement claims; rejecting the argument that the fraud claims "touch and concern" CBA because the CBA said no pension plan was provided, Court said: "This is not the appropriate focus, however. Section 301 preempts Romero's fraud claims only if a court must interpret the CBA to resolve them." (citing *Cramer*, 255 F.3d at 691)).

*Atwater v. NFLPA*, 626 F. 3d 1170, 1183 (11th Cir. 1970) is also no help to the NFL. *Atwater* involved former players' claims against their union and the League for failing properly to investigate Ponzi-scheming financial advisors. *Id.* at 1174. The miscreant advisors were

listed "with the NFLPA's Financial Advisor Program." *Id.*  Section 12 of the CBA, "Career

Planning Program," stated: "The program will also provide information to players on handling

their personal finances, it being understood that players shall be solely responsible for their

finances." *Id.* at 1174-75.  No CBA provision deals with the NFL's obligations concerning

procurement and provision of the Medications. Neither the SAC nor any of the NFL's

voluminous Exhibits reflect any NFLPA or League undertaking to tell players what Medications

were safe.  Nor does the NFL point to any statement to the players that "whatever Medications

you take are your own responsibility."

A Ninth Circuit panel in *Gulden*, 890 F.2d at 198-99, held that a workers' fraud claim

based on his employer's failure to disclose hazards of his clean-up work required no CBA

interpretation.  Finding the claim "does not 'turn on' the job assignment provisions in the

[CBA]," the Court said:

> All Steele need prove to succeed on his fraud claim is that Oregon law conveyed
> an independent right to be warned; that [defendant's] failure to warn Steele of
> these risks constituted a fraudulent omission upon which Steele relied to his
> detriment by agreeing to perform the work for less than its true value; and that
> Steele sustained damage...None of these elements depends upon an interpretation
> of the job assignment provisions in defendant's collective-bargaining agreement."

*Gulden* shows no "interpretation" is needed of CBA provisions concerning Club doctors'

duty to tell players what they tell the Clubs about player conditions, or the purely advisory Joint

Player Safety and Welfare Committee, or the NFLPA's investigatory rights.  Plaintiffs plead an

independent common law right to be protected, the NFL assumed and breached that duty, and

that Plaintiffs detrimentally relied on the NFL to fulfill its assumed duty.

The NFL's repeated references to straightforward CBA provisions concerning Club and

Club personnel duties confirm that Plaintiffs' claims against the League have different origins

and require no CBA interpretation.  Nothing in the "numerous provisions imposing notification

requirements on Club's medical staff," the "Joint Player Safety and Welfare Committee," and the NFLPA's "right to initiate an investigation" if it believes a team's medical care with respect to *current players* is "not adequately taking care of player safety" require more than mere "looking to" to conclude that none deal with the NFL's assumption and breach of the tort based duty the SCA alleges. What Clubs must do under the CBA is one thing. What the League undertook to do outside of the CBA is another.

No CBA interpretation is needed to plead, or prove, "justifiable reliance." In *Niehaus*, 173 F.3d at 1212, for example, the court found the plaintiff's fraud and misrepresentation claims against his union were not preempted "because neither claim required an interpretation of that agreement." Like the NFL here, the *Niehaus* defendant argued the plaintiff "needed to show that his reliance on the union's statements was justified in light of the CBA – thus the agreement needed to be interpreted." *Id.* But the Ninth Circuit found that neither party contested any of the CBA's "relevant provisions" and "the resolution of [plaintiff's] tort claims requires [only] a determination of whether [plaintiff] knew about the provisions of the collective bargaining agreement, not an interpretation of the agreement." *Id.*

Neither *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003), a pharmaceutical overpromotion case, nor *In re Kirsh*, 973 F.2d 1454, 1458 (9th Cir. 1992), a bankruptcy case, deal with fraud claims for breaches of voluntarily assumed duties or the necessity of CBA "interpretation."

## VI.   THE PRESUMPTION OF ARBITRATION IS INAPPLICABLE.

The NFL's "presumption of arbitrability" argument ignores that waivers of the right to a judicial forum must be "clear and unmistakable." *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80-81 (1998) (ADA claim). No such waiver exists here.

The NFL's presumption of arbitrability cases all turn on grievable disputes between parties to a currently applicable CBA, involving no *Allis-Chalmers, Caterpillar, Lingle* and *Livadas* preemption analysis. Misplaced here, the presumption of arbitrability "does not extend beyond the reach of [its] principal rationale... 'settlement of grievance disputes arising ***over the application or interpretation of an existing collective-bargaining agreement*.'" *Wright*, 525 U.S. at 78 (quoting 29 U.S.C. § 173(d). Plaintiffs' claims do not depend on any CBAs, player contracts, League Constitution or By-Laws concerning the terms and conditions of their past NFL team employment. Therefore, the NFL's *Steelworkers Trilogy*-based argument fails. *See, e.g., Munoz*, 2012 WL 5349408, at *5 ("because the CBA expressly limits the application of the grievance procedure to grievances relating to the CBA, it does not, by its terms subject Plaintiff's claims under state law to said procedure").

*United Steelworkers of America v. Retirement Income Plan for Hourly-Rated Employees of Asarco, Inc.*, 512 F.3d 555 (9th Cir. 2008) involved a Union grievance and suit to compel arbitration of a benefit plan's failure to pay CBA-specified pension benefits. *Asarco* stated the reason the NFL's argument fails: the "presumption in favor of arbitration" applies "to disputes arising from collective bargaining agreements." *Id.* at 559. Plaintiffs' case does not. *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 646 (1986) (union suit to compel arbitration of lay-off grievance); *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 450-51 (W.D.N.Y. 2009) (union grieved two of suit's back pay claims, showing CBA governed); and *Winery, Distillery & Allied Workers Union, Local 186 v. E & J Gallo Winery, Inc.*, 857 F. 2d 1353 (9th Cir. 1988) (CBA application to strike conduct) are all irrelevant.

Finally, arguing that even if Plaintiffs' claims require no CBA "interpretation" of the CBA they "***at a minimum involve the application of or compliance with***" CBA provisions," the

NFL would erase the mandatory two-part preemption test.  *See Caterpillar*, 482 U.S. at 394. Under the NFL's "application" argument, a string of subject captions, such as "Medical Care" and "Injury Grievance" would "apply" and compel preemption.  Arguing that its failure to ensure competent, objective and trained professionals provided Plaintiffs with proper treatment "necessarily involves compliance with the CBA provisions" concerning Club doctors and certified trainers elides the point that the claim is against the NFL, not the Clubs, and is based on a non-CBA created duty the breach of which requires no interpretation of any CBA terms. Plaintiffs do not allege anywhere that the NFL should have complied with CBA requirements. [7]

## CONCLUSION

Plaintiffs respectfully request that the Court deny the NFL's Motion.

Dated: October 10, 2014                Respectfully Submitted,

                                       /s/
                                       _____
                                       William N. Sinclair (SBN 222502)
                                       (bsinclair@mdattorney.com)
                                       **SILVERMAN|THOMPSON|SLUTKIN|WHITE|LLC**
                                       201 N. Charles St., Suite 2600
                                       Baltimore, MD 21201
                                       Telephone: (410) 385-2225
                                       Facsimile: (410) 547-2432

---

[7] *Jeffers v. Carolina Panthers, Wilson v. Denver Broncos,* and *Bunch v. N.Y. Giants* were all arbitrations in which players contended their clubs retained incompetent doctors.  Such cases are not relevant to the Plaintiffs' claims that the NFL, not the Teams, breached its common law duties to retired players not subject to a CBA.  Similarly, *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. Gen. Bldg. Contractor, Inc.,* 952 F. 2d 1073 (9th Cir. 1991) involved an employer who proceeded with a grievance procedure and conceded the arbitration clause was "very broad" (*id.* at 1077), disputing the interplay of two labor agreements to which he was subject that disrupted his plans for hiring non-union workers.  The analysis in *Jeffers* about the CBA's "application" of the CBA contradicts the *Caterpillar*-based rule that, even if a CBA provision might give a plaintiff an arbitrable grievance, the plaintiff can bring a case in court as long as the right on which he sues is not CBA – created and requires no CBA interpretation – even if one might "apply."