ALLEN J. RUBY (SBN 47109)
allen.ruby@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
TIMOTHY A. MILLER (SBN 154744)
timothy.miller@skadden.com
S. SHERYL LEUNG (SBN 238229)
sheryl.leung@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

DANIEL L. NASH (*pro hac vice*)
DNash@akingump.com
STACEY R. EISENSTEIN (*pro hac vice*)
SEisenstein@akingump.com
MARLA S. AXELROD (*pro hac vice*)
MAxelrod@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Ave., NW
Suite 1000
Washington, DC 20036
Telephone: 202-887-4000
Facsimile: 202-887-4288

Attorneys for Defendant
NATIONAL FOOTBALL LEAGUE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD DENT, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>Defendant. | Case No.: **3:14-CV-02324-WHA**<br><br>**REPLY MEMORANDUM OF DEFENDANT NATIONAL FOOTBALL LEAGUE IN FURTHER SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT AS TIME-BARRED AND FOR FAILURE TO STATE A CLAIM**<br>**[FED. R. CIV. PROC. 8, 9 & 12]**<br><br>Date:      October 30, 2014<br>Time:      8:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:     Honorable William Alsup |

# TABLE OF CONTENTS

                                                                           **Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................2

    I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED. ....................................................2

          A.    The Medical Malpractice Statute Of Repose Bars The Claims. ..................2

          B.    Alternatively, Plaintiffs' Claims Are Barred Under California's Two-Year Statute Of Limitations Applicable To Personal Injuries. ....................3

          C.    Plaintiffs Do Not Plead Facts Sufficient To Avoid The Time-Bar..............4

                1.    Plaintiffs Fail To Plead When and How They Discovered Their Claims...................................................................................4

                2.    Plaintiffs Argue The Wrong "Equitable Tolling" Doctrine. ............5

                3.    Plaintiffs Misstate The "Fraudulent Concealment" Doctrine. .........6

                4.    Hadnot's And Wiley's Claims Are Time-Barred.............................7

    II.    PLAINTIFFS FAIL TO SATISFY RULE 9(b). ........................................................8

          A.    Plaintiffs Fail To Plead With Particularity The Who Or What Of The Alleged Fraud..............................................................................................8

          B.    Plaintiffs Fail To Allege Facts Giving Rise To A Duty To Disclose. .......10

          C.    Plaintiffs Fail To Plead Actual Reliance....................................................11

    III.    PLAINTIFFS LACK STANDING TO ASSERT LOSS OF CONSORTIUM CLAIMS. .................................................................................................................12

    IV.    MEDICAL MONITORING IS NOT A COGNIZABLE CLAIM. ........................13

    V.    PLAINTIFFS' DECLARATORY RELIEF CLAIM FAILS. ................................13

CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alfi v. Nordstrom, Inc.*,
  No. 09cv1249 BEN (CAB), 2010 WL 5093434 (S.D. Cal. Dec. 8, 2010) .................................. 13

*Am. Motorcycle Ass'n v. Super. Ct.*,
  20 Cal. 3d 578 (1978) ............................................................................................................... 2

*April Enters., Inc. v. KTTV*,
  147 Cal. App. 3d 805 (1983) .................................................................................................... 5

*Boyd v. Alameda Cnty.*,
  No. C 02-02461 SI, 2005 WL 21718700 (N.D. Cal. Sept. 6, 2005) ......................................... 4

*Cervantes v. City of San Diego*,
  5 F.3d 1273 (9th Cir. 1993) ...................................................................................................... 5

*Chang v. McKesson HBOC, Inc.*,
  No. C07-03981 MJJ, 2007 WL 4463002 (N.D. Cal. Dec. 17, 2007) ....................................... 7

*Czajkowski v. Haskell & White, LLP*,
  208 Cal. App. 4th 166 (2012) ................................................................................................... 4

*Davenport v. Litton Loan Serv., LP*,
  725 F. Supp. 2d 862 (N.D. Cal. 2010) ...................................................................................... 8

*Dunbar v. Medtronic, Inc.*,
  No. CV 14-01529-RGK (AJWx), 2014 WL 3056026 (C.D. Cal. June 25, 2014) .............. 3, 12

*Eidson v. Medtronic, Inc.*,
  Nos. 13-CV-02049, 13-CV-01502 & 5:13-cv-02049, 2014 WL 1996024 (N.D. Cal. May 13, 2014) ................................................................................................................................... 5

*Einheber v. Regents of the Univ. of Cal.*,
  119 Fed. Appx. 861 (9th Cir. 2004) .......................................................................................... 5

*Eisen v. Porsche Cars N. Am., Inc.*,
  No. CV 11-9405 CAS (FEMx), 2012 WL 841019 (C.D. Cal. Feb. 22, 2012) ......................... 9

*Engalla v. Permanente Med. Group*,
  15 Cal. 4th 951 (1997) ............................................................................................................ 11

*Forester v. Chertoff*,
  500 F.3d 920 (9th Cir. 2007) .................................................................................................... 5

*Garabet v. Superior Court*,
  151 Cal. App. 4th 1538 (2007) ................................................................................................. 3

*Gryczman v. 4550 Pico Partners, Ltd.*,
  107 Cal. App. 4th 1 (2003) ....................................................................................................... 5

*Guerrero v. Gates*,
  442 F.3d 697 (9th Cir. 2006) .................................................................................................. 6

*Gustafson v. BAC Home Loans Servicing, LP*,
  No. SACV 11-915-JST (ANx), 2012 U.S. Dist. LEXIS 186604 (C.D. Cal. Dec. 20, 2012) ......... 8

*Herron v. Best Buy Co.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................................................................................ 11

*Hutchins v. Bank of Am., N.A.*,
  Case No. 13-cv-03242-JCS, 2014 WL 722098 (N.D. Cal. Feb. 25, 2014) ............................... 1, 7

*In re Adobe Systems, Inc. Privacy Litigation*,
  No. 13-cv-05226-LHK, 2014 WL 4379916 (N.D. Cal. Sept. 4, 2014) ....................................... 13

*Jackson v. Fischer*,
  No. C 11-2753 PJH, 2013 WL 6732872 (N.D. Cal. Dec. 20, 2013) ........................................... 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................................................. 8, 9

*Knollenberg v. Wyeth*,
  No. 2:05-CV-2044, 2011 WL 5358698 (W.D. Ark. Nov. 7, 2011) ............................................. 4

*Labzda v. Purdue Pharma, L.P.*,
  292 F. Supp. 2d 1346 (S.D. Fla. 2003) .................................................................................... 3

*Lamumba Corp. v. City of Oakland*,
  No. C 05-2712 MHP, 2006 U.S. Dist. LEXIS 45022 (N.D. Cal. June 30, 2006) ........................ 8

*Lathrop v. Healthcare Partners Med. Grp.*,
  114 Cal. App. 4th 14124 (2004) .............................................................................................. 3

*Lewis v. Casey*,
  518 U.S. 343 (1996) ............................................................................................................ 12

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ................................................................................................. 10

*Lockheed Martin Corp. v. Superior Court*,
  29 Cal. 4th 1096 (2003) ....................................................................................................... 13

*Lovejoy v. AT&T Corp.*,
  92 Cal. App. 4th 85 (2001) ................................................................................................... 11

*Nelson v. Matrixx Initiatives, Inc.*,
  No. C 09-02904 WHA, 2012 U.S. Dist. LEXIS 69950 (N.D. Cal. May 18, 2012) ..................... 11

*Perez-Encinas v. AmerUs Life Insur. Co.*,
  468 F. Supp. 2d 1127 (N.D. Cal. 2006) ................................................................................... 5

*Rivas v. Safety-Kleen Corp.*,
  98 Cal. App. 4th 218 (2002) ................................................................................................... 4

*Sarkisov v. StoneMor Partners, L.P.*,
   No. C 13-04834 WHA, 2014 WL 1340762 (N.D. Cal. Apr. 3, 2014) ..........................................5

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ................................................................................................11

*Smith v. Kohlweiss, Inc.*,
   No. C 11-00239 SBA, 2012 WL 1156338 (N.D. Cal. Mar. 30, 2012) ..................................... 6, 7

*Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204 (9th Cir. 1995) ....................................................................................................5

*Waldrup v. Countrywide Fin. Corp.*,
   No. 2:13-cv-08833-CAS(CWx), 2014 WL 1463881 (C.D. Cal. Apr. 14, 2014) ..........................4

*Whitaker v. Health Net of California, Inc.*,
   No. CIV S-11-0910 KJM-DAD, 2012 WL 174961 (E.D. Cal. Jan. 20, 2012) ............................13

*Wolph v. Acer Am. Corp.*,
   No. C 09-01314 JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) .......................................10

*Xavier v. Philip Morris USA Inc.*,
   No. C 10-02067 WHA, 2010 WL 3956860 (N.D. Cal. Oct. 8, 2010) ........................................13

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................................................................................6

**STATUTES**

21 U.S.C. § 337(a) ...............................................................................................................................3

Cal. Civ. Proc. Code § 340.5 ...............................................................................................................3

**PRELIMINARY STATEMENT**

Plaintiffs concede that the allegations in their Second Amended Complaint amount to claims of medical malpractice by team doctors. (Opp. at 3.)[1] At the same time, in an effort to avoid the statute of repose, Plaintiffs argue that because their claims are based on the *NFL's* allegedly fraudulent conduct, those claims are *not* medical malpractice claims. (Opp. at 3-4.) But neither the SAC nor Plaintiffs' Opposition identifies the alleged *NFL* conduct on which Plaintiffs' claims are based. If this is a case about the quality of the medical care provided by *team* doctors and trainers, Plaintiffs must plead a factual basis upon which to hold the NFL liable. If it is about fraud by the NFL, Plaintiffs must plead with particularity the allegedly fraudulent NFL conduct upon which their claims rely.

Regardless, Plaintiffs fail to plead facts sufficient to avoid the time bar. Plaintiffs *argue* "discovery rule," "equitable estoppel" and "fraudulent concealment," but the SAC does not *plead* any facts, let alone the particularized showing required by the Federal Rules, supporting application of any of these doctrines. Instead, Plaintiffs simply repeat or incorporate the allegations of their claims, which are insufficient as a matter of law to satisfy their burden. *See Hutchins v. Bank of Am., N.A.*, Case No. 13-cv-03242-JCS, 2014 WL 722098, at *6 (N.D. Cal. Feb. 25, 2014) (equitable estoppel claim cannot be based on same facts alleged in underlying claims).

In focusing their Opposition on Hadnot and Wiley, Plaintiffs effectively concede that the claims of the eight original Plaintiffs accrued outside the limitations period. (Opp. at 5, 8-9.) Of course, even if their claims were timely, neither Hadnot nor Wiley could resuscitate the time-barred claims of the others. *See infra* at Sec. I.C.4. But Hadnot's and Wiley's claims are also time-barred. Both assert claims based on injuries sustained in 2011 or earlier. (Opp. at 5; SAC ¶¶ 49, 258-59.) Plaintiffs concede that Hadnot was warned of potential risks of Toradol in 2011, and the SAC does not allege any facts excusing his lack of diligence – his purported failure to read or understand the

---

[1] "Opp." refers to Plaintiffs' Opposition to Defendant's Motion To Dismiss Second Amended Complaint As Time-Barred And For Failure To State A Claim, ECF No. 80.

1

NFL'S REPLY ISO MTD SAC - TIME-BAR/FAILURE TO STATE CLAIM          Case No.: 3:14-cv-02324-WHA

warnings – and tolling the statute of limitations.  (SAC ¶¶ 219-220.)

Plaintiffs also fail to plead their fraud claims with the particularity required by Rule 9(b). They fail to allege facts providing substance to their conclusory allegations that hundreds of team doctors and trainers defrauded them and their teammates in providing medications over four decades.  Nor do they allege facts providing plausibility for their assertion that the *NFL* defrauded them in private doctor-patient interactions in which the NFL did not participate.  Indeed, they fail to identify any specific statement of the NFL that they deem fraudulent, and they fail to allege reliance.  Plaintiffs concede that there is no special relationship between the NFL and Plaintiffs giving rise to a duty to disclose.  Each of these pleading failures is fatal to their complaint.

Finally, Plaintiffs put little effort into salvaging their defective tag-along claims, which also fail as a matter of law.  Accordingly, the SAC should be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Plaintiffs' claims are time-barred by the three-year statute of repose for medical malpractice claims or, alternatively, by the two-year statute of limitations for personal injury claims.  Plaintiffs do not plead facts supporting invocation of the "discovery rule," "equitable estoppel" or "fraudulent concealment."  And neither Wiley's nor Hadnot's claims are timely.

#### A. The Medical Malpractice Statute Of Repose Bars The Claims.

The medical malpractice statute of repose applies because Plaintiffs seek to hold the NFL vicariously liable for the alleged malpractice of team doctors:  Plaintiffs contend that "there can be little doubt that a doctor who provides controlled substances without a prescription commits malpractice" (Opp. at 3:11-12), and assert that the doctors were employed by, and agents of, the NFL (*id*. at 21-22).  Plaintiffs argue that their claims would lead to "joint and several" liability of the NFL and team doctors, citing *American Motorcycle Association v. Superior Court*. (Opp. at 3-4.)  But in that case the California Supreme Court distinguished "joint and several" liability from vicarious liability, describing the latter as "one individual [being] held liable for the consequences of the negligent act of another." *Am. Motorcycle Ass'n v. Super. Ct.,* 20 Cal. 3d 578, 587 (1978). Here, Plaintiffs allege that the NFL is liable for the allegedly wrongful conduct of team doctors and

2

trainers, and thus seek to impose vicarious liability on the NFL derived from that alleged conduct [2]

Plaintiffs' argument that they do not assert medical malpractice claims because team doctors and trainers acted at the NFL's "direction" (Opp. at 3:13-14) cannot be squared with the SAC, in which Plaintiffs repeatedly allege that *team doctors and trainers*, not the NFL, provided them with the medications. (SAC ¶¶ 242, 243, 258, 337.)[3] As the NFL established in its moving papers, where, as here, Plaintiffs seek to hold a defendant vicariously liable for the alleged medical malpractice of a health care provider (the doctors and trainers), all of MICRA's limitations on liability available to the health care provider apply, including the statute of repose. *See Lathrop v. Healthcare Partners Med. Grp.*, 114 Cal. App. 4th 1412, 1424 (2004) (applying damages cap to claims against non-health care provider defendant where liability derived from conduct of health care provider employees).

### B. Alternatively, Plaintiffs' Claims Are Barred Under California's Two-Year Statute Of Limitations Applicable To Personal Injuries.

Even if the medical malpractice statute of repose does not apply, Plaintiffs' claims are barred under the two-year statute of limitations applicable to claims for personal injuries. The SAC makes clear that Plaintiffs seek redress for personal injuries. Accordingly, the personal injury

---

[2] Plaintiffs argue for the first time in their opposition to the NFL's Preemption Motion that their negligence claims are not based on a breach of an independent tort duty, but rather on violations of the Controlled Substances Act ("CSA") and Food, Drug and Cosmetic Act ("FDCA") (ECF No. 79 at 2:6-9, 4:7-18). If that is so, Plaintiffs' claims fail as a matter of law; there is no private right of action for alleged violations of those federal statutes. *See Labzda v. Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1355 (S.D. Fla. 2003) ("Nothing suggests that the legislative intent behind [the CSA] creates a private remedy based on the doctrine of negligence per se."); *Dunbar v. Medtronic, Inc.*, No. CV 14-01529-RGK (AJWx), 2014 WL 3056026, at *6 (C.D. Cal. June 25, 2014) ("[A] negligence per se claim alleging violation of the FDCA is nothing more than a private right of action under the FDCA for damages. . . . [and] is not available as a result of § 337(a) . . . ."); *see also* 21 U.S.C. § 337(a) (only the United States may bring actions to enforce the FDCA).

[3] Contrary to Plaintiffs' contention (Opp. at 3 n.2), the discovery rule of Section 340.5 does not apply to the statute of *repose*. By its plain terms, Section 340.5 requires a medical malpractice claim to be brought within "three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, *whichever occurs first*." Cal. Civ. Proc. Code § 340.5 (emphasis added); *see also Garabet v. Superior Court*, 151 Cal. App. 4th 1538, 1546 (2007) (under the statute of repose, "[o]nce the damaging effect of the alleged wrongful act is apparent, the statute is activated . . . even without the knowledge that negligence was the cause of the injury").

statute of limitations applies, even though Plaintiffs attempt to recover for those alleged injuries by asserting claims of fraud and concealment. (Opp. at 4.) *See Knollenberg v. Wyeth*, No. 2:05-CV-2044, 2011 WL 5358698, at *2 (W.D. Ark. Nov. 7, 2011) (personal injury statute of limitations applied to fraud claims); *Boyd v. Alameda Cnty.*, No. C 02-02461 SI, 2005 WL 2171870, at *20 (N.D. Cal. Sept. 6, 2005) (applying personal injury statute to negligence, negligent hiring and negligent retention claims).[4]

### C. Plaintiffs Do Not Plead Facts Sufficient To Avoid The Time-Bar.

#### 1. Plaintiffs Fail To Plead When and How They Discovered Their Claims.

A "plaintiff claiming delayed discovery of the facts constituting the cause of action has the burden of setting forth pleaded facts to show (1) the time and manner of discovery . . . ." *Czajkowski v. Haskell & White, LLP*, 208 Cal. App. 4th 166, 175 (2012) (internal quotation marks and citations omitted). Plaintiffs do not plead any such facts. Instead, they argue only that Hadnot's claims and Wiley's renal failure claim accrued after May 2012 (Opp. at 5), thereby effectively conceding that the original eight named Plaintiffs' claims accrued outside the limitations period. The SAC includes no allegations about when and how those Plaintiffs discovered the basis for their claims. (Hadnot is discussed *infra* at Sec. I.C.4.)[5]

*Waldrup*, relied upon by Plaintiffs (Opp. at 5), illustrates their pleading failure because the plaintiff in that case specifically alleged *when* and *how* she purportedly learned that she had been harmed by the defendant. *Waldrup v. Countrywide Fin. Corp.*, No. 2:13-cv-08833-CAS(CWx), 2014 WL 1463881, at *4 (C.D. Cal. Apr. 14, 2014) ("plaintiff allege[d] that she first became aware that her appraisals were fraudulent in May 2012, when the Lagow whistleblower complaint

---

[4] Plaintiffs' attempts to distinguish *Knollenberg* and *Boyd* (Opp. at 4:13-17) miss the mark; it does not matter whether those cases involved class actions, dismissal motions or undisputed facts. Regardless of the context, those cases hold that a court must look through the styling of the claims to determine the nature of the rights sued upon. *Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 229 (2002).

[5] Plaintiffs' Opposition goes outside the SAC in an attempt to backfill the lack of any facts regarding when Wiley allegedly discovered his claims, but no such allegation is in the SAC.

alleging misconduct at [defendant] was first unsealed").[6]

### 2. Plaintiffs Argue The Wrong "Equitable Tolling" Doctrine.

Plaintiffs' Opposition argues that "equitable tolling" is too fact intensive for disposition at the pleading stage (Opp. at 6-7), but the doctrine to which they refer has no application here. The "equitable tolling" doctrine to which they refer arises when a plaintiff had filed similar claims in another forum, and "focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (firefighter sought administrative reinstatement challenging alleged wrongful termination before filing Section 1983 claim alleging conspiracy to violate his civil rights; reversing dismissal because district court failed to conduct fact intensive inquiry into whether first claim was sufficiently similar to put defendants on notice of second claim).[7] Plaintiffs do not allege that the filing of a prior claim put the NFL on notice of the claims they assert in this action.

Moreover, if the doctrine cited by Plaintiffs did apply (and it does not), Plaintiffs could not establish the required lack of prejudice to the Defendant. (Opp. at 6:7-10.) *See Cervantes*, 5 F.3d

---

[6] Plaintiffs' other cases similarly illustrate the inadequacy of Plaintiffs' allegations because the plaintiff in each case specifically alleged *when* and *how* he discovered his claims. *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (plaintiff alleged it first learned of wrongful IRS levy when IRS informed it of levy on February 24, 1992); *Eidson v. Medtronic, Inc.*, Nos. 13-CV-02049, 13-CV-01502, 2014 WL 1996024, at *10 (N.D. Cal. May 13, 2014) (plaintiff alleged he first learned of role allegedly defective device played in his surgery in April 2012 when his mother saw a commercial regarding lawsuits involving the device); *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1131, 1135 (N.D. Cal. 2006) (plaintiffs allege they did not learn about breach of contract until November 2002, when their contractual rights were explained to them by one of the attorneys creating the annuity at issue); *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 4 (2003) (plaintiff alleged he learned of breach of contractual right to receive notice of an offer to purchase subject real property in late 2000 when "he chanced to drive by the property and noticed the store which had been there was closed"); *April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 814-15 (1983) (plaintiff alleged that it first discovered in 1976 that certain videotapes containing a syndicated television show had been destroyed in alleged breach of contract).

[7] *See also Einheber v. Regents of Univ. of Cal.*, 119 Fed. App'x 861, 862 (9th Cir. 2004) (pro se plaintiff alleged that he exhausted administrative remedies with U.C. regarding his allegedly wrongful termination from university police force prior to filing suit); *Sarkisov v. StoneMor Partners, L.P.*, No. C 13-04834 WHA, 2014 WL 1340762, at *3 (N.D. Cal. Apr. 3, 2014) (plaintiff alleged written notice to defendants within statute of limitations in exhausting administrative remedies). *Forester v. Chertoff* is totally inapposite because it involved the *premature* filing of an age discrimination claim in violation of a statutory 30-day waiting period. *Forester v. Chertoff*, 500 F.3d 920, 930-31 (9th Cir. 2007). Plaintiffs' claims are not premature.

at 1275 (doctrine applies only if plaintiff can show "lack of prejudice to the defendants in gathering evidence for the second claim").  Plaintiffs seek to prosecute claims based on the alleged provision and administration of medications by team doctors and trainers years and decades ago.  These claims are stale, and the NFL's ability to defend them will be severely prejudiced by the passage of time.

The only "equitable tolling" potentially applicable here is nothing more than another name for the discovery rule.  *See Smith v. Kohlweiss, Inc.*, No. C 11-00239 SBA, 2012 WL 1156338, at *5 (N.D. Cal. Mar. 30, 2012).  As the NFL has demonstrated, Plaintiffs have not pled facts sufficient to support application of that rule.  *See* ECF No. 74 at 7-11; *supra* at Sec. I.C.1.

### 3. <u>Plaintiffs Misstate The "Fraudulent Concealment" Doctrine</u>.

Plaintiffs concede that the doctrine of fraudulent concealment (sometimes called "equitable estoppel") "halts the statute of limitations when there is *active conduct* by a defendant, *above and beyond the wrongdoing upon which plaintiff's claim is filed*, to prevent the plaintiff from suing in time." (Opp. at 7:2-5 (emphasis added) (quoting *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006)).)  But less than a half-page later, Plaintiffs argue without citation that "[a]pplicable authority does *not* require Plaintiffs to plead fraudulent concealment above and beyond the fraudulent concealment they alleged in the SAC." (Opp. at 7:13-15 (emphasis added).)  Plaintiffs were right the first time, and there is no such conduct alleged here.

First, Plaintiffs acknowledge that Rule 9(b) requires them to plead fraudulent concealment with particularity.  (*See* ECF No. 74 at 11-12.)  But in suggesting that they have met that burden, Plaintiffs cite only paragraphs 50-54 of the SAC, which are wholly conclusory and do not satisfy Rule 9(b).  (Opp. at 6.)  *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133-34 (C.D. Cal. 2010) (plaintiff invoking fraudulent concealment doctrine to avoid the statute of limitations must plead with particularity "the who, what, when, where, and how of the alleged fraudulent concealment").

Second, Plaintiffs acknowledge that their allegations of fraudulent concealment rely on the challenged provision and administration of medications by team doctors and trainers. (Opp. at 6:16-21.)  Such allegations are insufficient; as Plaintiffs recognize in quoting *Guerrero*, specific

6

acts of *fraud* designed to delay the filing of the complaint must be alleged. *See* ECF No. 74 at 11-12; *Hutchins*, 2014 WL 722098, at *6 ("The primary problem with plaintiff's argument is that [his] alleged basis for equitable estoppel is the same as [his] cause of action." (internal quotation marks and citations omitted)).[8]

### 4. Hadnot's And Wiley's Claims Are Time-Barred.

Plaintiffs focus their Opposition on Plaintiff Hadnot, arguing that his claims are based on injuries manifesting after his 2012 retirement, *i.e.*, less than two years prior to filing the original complaint. (Opp. at 5:7-14.) The SAC itself demonstrates that the date of Hadnot's retirement is irrelevant. He complains of injuries to his shoulder and knees suffered during his playing days, *i.e.*, well before his retirement. (*See* SAC ¶ 49 (alleging he received injections in his shoulder and knees during his playing days).) Moreover, as the SAC acknowledges, Hadnot signed a Toradol waiver in 2011 (more than two years prior to the filing of this action); and, as Plaintiffs admit, "in 2011 . . . the NFL finally began warning players [presumably including Hadnot] of some of the *risks of using Toradol*, when it implemented a league-wide policy requiring players to sign a waiver before receiving Toradol injections." (Opp. at 18:9-11 (emphasis added).) Thus, as confirmed by Plaintiffs' pleadings, Hadnot has not - and could not - plead facts sufficient to avoid the time-bar.

Plaintiff Wiley's allegations are similarly insufficient. His purported "revelation" (Opp. at 8) cannot resuscitate his time-barred claims. Wiley contends that his alleged renal failure manifested for the first time in April 2014. The Opposition argues that Wiley first realized the alleged cause of his kidney problems when he heard Plaintiffs Dent and Newberry discussing their claims on ESPN. (Opp. at 8-9.) This argument fails for two reasons: (i) Wiley's claims allege

---

[8] Plaintiffs are wrong in asserting that the cases cited by the NFL did not include claims of fraudulent concealment. (Opp. at 7:9-10); *Hutchins*, 2014 WL 722098, at *1 (plaintiff alleged fraudulent inducement in home mortgage application); *Smith*, 2012 WL 1156338, at *2 (plaintiff alleged defendants "conspired to defraud" them by providing false information to the County of San Mateo regarding a judgment credit); *Chang v. McKesson HBOC, Inc.*, No. C07-03981 MJJ, 2007 WL 4463002, at *2, 3 (N.D. Cal. Dec. 17, 2007) (plaintiff alleged fraudulent coercion to sign a release upon termination of employment). Importantly, each case affirms the principle that claims of equitable estoppel cannot rest on the same alleged fraudulent conduct forming the basis of the underlying claims.

1  physical injuries beyond his alleged renal failure, all of which he concedes manifested long before
2  the limitations period; and (ii) Wiley does not allege his "revelation" in the SAC, which this Court
3  admonished should be Plaintiffs' "best" pleading.  (ECF No. 51 at 12:4-7.)  Accordingly, Wiley's
4  claims should also be dismissed with prejudice.

5        In any event, even if one Plaintiff can survive the statute of limitations with respect to any
6  specific claim, the stale claims of the other named Plaintiffs should be dismissed.  *See, e.g.,*
7  *Lamumba Corp. v. City of Oakland*, No. C 05-2712 MHP, 2006 U.S. Dist. LEXIS 45022, at *24,
8  *46 (N.D. Cal. June 30, 2006) (dismissing time-barred claims of one plaintiff in a putative class
9  action); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST (ANx), 2012 U.S.
10 Dist. LEXIS 186604, at *24-25, 33 (C.D. Cal. Dec. 20, 2012) (dismissing time-barred claims of
11 one of four plaintiffs in a putative class action).

12 **II.**    **PLAINTIFFS FAIL TO SATISFY RULE 9(b).**

13       The SAC also fails to plead Plaintiffs' fraud-based claims with the specificity required by
14 Rule 9(b).  Plaintiffs concede that their negligence per se and negligent misrepresentation claims
15 are based on the same alleged "uniform fraudulent scheme" as their other fraud claims (Opp. at 14,
16 n.11).  Yet they ignore the Ninth Circuit law cited in the NFL's moving papers (ECF No. 74 at 13)
17 holding that all claims based on the same allegedly fraudulent scheme must satisfy Rule 9(b).  *See*
18 *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124, 1127 (9th Cir. 2009).

19       Plaintiffs do not allege with the particularity required by Rule 9(b) any specific conduct *by*
20 *the NFL*, let alone the who or what of the alleged fraud, the basis for any alleged duty, or
21 reasonable reliance.  Accordingly, Counts III-VI fail.

22     **A.**    **Plaintiffs Fail To Plead With Particularity The Who Or What Of The Alleged Fraud.**
23

24       Plaintiffs argue that the "who" is "the NFL and its employees and agents, including the
25 [team] doctors and trainers."  (Opp. at 14:2-3.)  Which is it?  Plaintiffs have not alleged any
26 fraudulent statements or omissions by the NFL.  Nor have they alleged facts sufficient to establish
27 how and why the NFL would be responsible for the alleged fraud or malpractice of doctors and
28 trainers hired by the teams.  Their failure to do so is fatal to their claims.  *See Davenport v. Litton*

*Loan Servicing, LP*, 725 F. Supp. 2d 862, 882-83 (N.D. Cal. 2010) (dismissing agency and negligent supervision claims alleging that certain defendants employed another defendant who fraudulently induced plaintiff to accept a home loan because plaintiff failed to plead facts that would support "a finding of the right to control employment . . . a comprehensive and immediate level of 'day-to-day' authority over employment decisions" made by the alleged agent (citation omitted)); *Jackson v. Fischer*, No. C 11-2753 PJH, 2013 WL 6732872, at *17-18 (N.D. Cal. Dec. 20, 2013) (applying Rule 9(b), dismissing common law misrepresentation and negligent misrepresentation claims against directors and officers of various companies in which plaintiff invested based on alleged fraud of investment manager because complaint did not allege sufficient facts showing the existence of an agency relationship between investment manager and defendants).[9]

Plaintiffs also do not specify the "what" of the alleged fraud. Plaintiffs refer generally to the "negative effects" of the various categories of pain medications identified in the SAC. (Opp. at 14.) But the SAC fails to specify the specific circumstances of the alleged fraud, including the particular injuries at issue, the Plaintiffs' medical histories, the medical knowledge at the time the medication was administered, and so on.

In short, it is not enough for Plaintiffs to allege that every doctor and trainer who treated them over the course of four decades committed malpractice and fraud every time he or she provided a Plaintiff with any pain medication. Such generalized allegations do not satisfy Rule 9(b). *See Kearns*, 567 F.3d at 1124-25 (plaintiff must plead the "who, what, when, where, and how" of the allegedly fraudulent conduct); *Eisen v. Porsche Cars N. Am., Inc.*, No. CV 11-9405 CAS (FEMx), 2012 WL 841019, at *3 (C.D. Cal. Feb. 22, 2012) ("[I]n order to plead the circumstances of omission with specificity, [a] plaintiff must describe the content of the omission and where the omitted information should or could have been revealed" and identify "representations that plaintiff relied on . . . that failed to include the allegedly omitted information."

---

[9] Similarly, Plaintiffs' recitation of the elements of its negligent hiring and retention claims (Opp. at 20-21) fails as a matter of law because Plaintiffs have not alleged in the SAC that the NFL hired or retained the team doctors or trainers.

(internal quotation marks omitted)) .

B. **Plaintiffs Fail To Allege Facts Giving Rise To A Duty To Disclose.**

Plaintiffs concede that there is no special or fiduciary relationship sufficient to give rise to an NFL duty to disclose under California law. (Opp. at 15, n.14.) Instead, Plaintiffs focus their argument on the NFL's allegedly "superior" and "exclusive" knowledge, pointing to the 2002 Tokish Study and 2012 NFL Physicians Society Task Force Recommendations. (Opp. at 16-17.) But, as the authority cited by Plaintiffs holds, "[e]ach of the other three circumstances in which nondisclosure may be actionable [including exclusive knowledge] presupposes the existence of *some other relationship* between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997) (emphasis added). Plaintiffs fail to allege any relationship between the players and the NFL that would give rise to a duty to disclose.

Moreover, as the NFL established in its moving papers, the studies relied upon by Plaintiffs were *published* and thus by definition were not within the *exclusive* possession of the NFL. (ECF No. 74 at 17.) Plaintiffs' argument that they had no reason to read these studies in medical journals (Opp. at 16-17) misses the point. The issue is whether the NFL was in *exclusive* possession of the studies; the SAC itself confirms that it was not. *Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009) ("Plaintiffs have not alleged any information known by [defendant] that was unavailable to the public.").[10]

Plaintiffs refer repeatedly in the SAC to the "silence" of the NFL (*see, e.g.*, SAC ¶¶ 319, 365, 390), but now claim that a duty to disclose *by the NFL* can be *implied* from partial representations made *by team doctors*. (Opp. at 19:1-13.) Plaintiffs fail to cite a single case for the proposition that an implied partial representation can give rise to a duty to disclose. In any event, Plaintiffs have not identified or alleged a partial representation made by *the NFL* that could give

---

[10] Plaintiffs further fail to explain how the 2002 Tokish Study or the 2012 NFL Physicians Society Task Force Recommendations regarding the administration of Toradol could have given rise to a duty to disclose information to Plaintiffs who played from 1968 through 2002, or how they would apply to other medications raised by Plaintiffs (such as opioids, narcotics and local anesthetics). All Plaintiffs (other than Hadnot) had retired by 2008, four years before the 2012 Task Force published its Recommendations; six of the Plaintiffs had retired before the 2002 Tokish Study.

rise to liability. *See Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) (dismissing fraud-based UCL and CLRA claims based on partial representation by Toshiba, which had conveyed allegedly misleading battery life information to Best Buy, which allegedly conveyed it to Plaintiff, but plaintiff "d[id] not allege any representations by Toshiba to [p]laintiff").

Nor have Plaintiffs alleged the elements of active concealment. (Opp. at 18:14-22.) As set forth in the NFL's moving papers (ECF No. 74 at 17:21-28), "[m]ere nondisclosure does not constitute active concealment." *Herron*, 924 F. Supp. at 1176 ("to state a claim for active concealment, Plaintiff must allege specific 'affirmative acts on the part of the [D]efendants in hiding, concealing or covering up the matters complained of'" (citation omitted)). Plaintiffs do not allege any affirmative acts of concealment.

### C. Plaintiffs Fail To Plead Actual Reliance.

Plaintiffs argue that they "relied on the NFL's silence." (Opp. at 19:15-21.) This rote, conclusory recitation of the reliance requirement is not sufficient. Each Plaintiff must "allege that, if [the NFL] had included the omitted information . . . , he would have acted differently." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010). Plaintiffs do not do so. Instead, they ask the Court to presume that they would have acted differently. (Opp. at 20:8-12.)

Plaintiffs' authorities do not support such attempts to sidestep the reliance requirement; in each cited case, the plaintiff specifically alleged, or it was obvious, how the plaintiff would have acted differently if the allegedly material information had been disclosed. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (2001) (where AT&T allegedly fraudulently switched plaintiff's 800 number service and hid the charges in plaintiff's long distance bill, plaintiff would have taken steps to preserve his 800 service when terminating his AT&T long distance service); *Nelson v. Matrixx Initiatives, Inc.*, No. C 09-02904 WHA, 2012 U.S. Dist. LEXIS 69950, at *14 (N.D. Cal. May 18, 2012) (where manufacturer of nasal spray allegedly concealed studies showing risk of loss of ability to smell and lack of efficacy, plaintiff specifically alleged that "he would have refrained from using the Nasal Gel products"); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 978-79 (1997) (where Kaiser health plan allegedly misrepresented the expeditiousness of its arbitration procedure, court could presume plaintiff's employer would have selected from among other

11

comparable health plans if the delays inherent in Kaiser's system had been revealed).

In contrast, these Plaintiffs do not allege, and it is far from obvious, how they would have behaved differently had the allegedly omitted risks of the medications been disclosed. They concede that collisions are inherent in NFL football and that injuries and playing in pain come with the territory. (*See*, *e.g.*, SAC ¶¶ 189-190.) They do not contend that the use of pain medications *always* results in addiction, renal failure or other personal injuries. Instead, they claim that the team doctors or trainers should have disclosed the alleged *risks* of these *possible* outcomes, and seek to hold the NFL liable for this alleged failure to warn.

The SAC does not allege that Plaintiffs would have chosen not to play, or chosen to play in pain without the aid of pain medications, if such risks had been disclosed. Indeed, Hadnot acknowledges that he chose to sign waivers in 2011 and 2012 in order to receive Toradol (SAC ¶¶ 219-220), that Wiley elected to receive "more injections and medications to continue playing" despite persistent pain following surgery for a tear in his abdominal wall (*id*. at ¶ 259), and Plaintiffs quote the observation of the 2012 NFL Physicians Society Task Force that use of pain medications in the NFL is driven, in part, by "the *players' desire* to play at all costs, irrespective of the medical consequences." (Opp. at 23:15-16 (emphasis added).) It is equally, if not more, plausible that if Plaintiffs were warned of the allegedly undisclosed risks, they would have nevertheless taken the medications so that they could return to the field of play. Because Plaintiffs fail to plead the essential element of actual reliance, the SAC must be dismissed.

### III.     PLAINTIFFS LACK STANDING TO ASSERT LOSS OF CONSORTIUM CLAIMS.

Plaintiffs attempt to avoid the standing requirement by reciting the elements of a loss of consortium claim. (Opp. at 24:20-25:4.) The issue is not whether Plaintiffs' spouses may be able to state a claim; the issue is whether Plaintiffs have standing to assert such a claim on behalf of their spouses. They cite no case permitting an injured plaintiff to maintain such a claim on behalf of his spouse. *See*, *e.g.*, *Dunbar*, 2014 WL 3056026, at *8 (dismissing loss of consortium claims where none of the tens of plaintiffs alleged to be the spouse of a person allegedly harmed by the allegedly defective medical device).

Plaintiffs attempt to distinguish *Lewis v. Casey*, 518 U.S. 343 (1996), on the ground that it

12

did not involve a motion to dismiss. (Opp. at 24, n.19.) But dismissal of a putative class action is proper under Rule 12(b)(1) when a named plaintiff fails to establish standing in his own right to assert the purported class claims. *See Alfi v. Nordstrom, Inc.*, No. 09cv1249 BEN (CAB), 2010 WL 5093434, at *5 (S.D. Cal. Dec. 8, 2010) ("Although a lead plaintiff can assert claims on behalf of a class of plaintiffs similarly situated, he first must establish standing in his own right."); *Whitaker v. Health Net of California, Inc.*, No. CIV S-11-0910 KJM-DAD, 2012 WL 174961, at *3 (E.D. Cal. Jan. 20, 2012) (citing *Lewis*, court dismissed putative breach of privacy class action claims based on exposure of daughter's social security number for lack of standing where daughter was not a named plaintiff). Plaintiffs fail to do so as to their spouses' loss of consortium claims, which must be dismissed.

## IV.  MEDICAL MONITORING IS NOT A COGNIZABLE CLAIM.

Plaintiffs are wrong when they argue that *Lockheed Martin Corp. v. Superior Court*, 29 Cal. 4th 1096 (2003), "opened the door for potential equitable claims for medical monitoring in class actions." (Opp. at 25.) In fact, the court in *Lockheed* confirmed that medical monitoring was not a separate tort in California. *Lockheed*, 29 Cal. 4th at 1105. Plaintiffs' other case specifically dismissed an equitable medical monitoring claim without leave to amend. *Xavier v. Philip Morris USA Inc.*, No. C 10-02067 WHA, 2010 WL 3956860, at *3 (N.D. Cal. Oct. 8, 2010).

## V.  PLAINTIFFS' DECLARATORY RELIEF CLAIM FAILS.

Plaintiffs argue that their declaratory relief count concerns the NFL's "ongoing obligations to the Plaintiffs" (Opp. at 26), citing *In re Adobe Systems, Inc. Privacy Litigation*, No. 13-cv-05226-LHK, 2014 WL 4379916, at *50 (N.D. Cal. Sept. 4, 2014). *Adobe* is inapposite because the plaintiffs in that case sought a declaration that Adobe's *current* security measures did not comply with its contract. *Id*. at *14. The *Adobe* court specifically noted the claim would *not* be permitted if directed to Adobe's *prior* security practices. *Id*. The SAC seeks declaratory relief regarding the NFL's *prior* practices vis-a-vis Plaintiffs, all of whom retired by 2012.

## CONCLUSION

Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

Date:  October 17, 2014         SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: */s/ Allen J. Ruby*
   Allen J. Ruby
   Attorneys for Defendant
   NATIONAL FOOTBALL LEAGUE