ALLEN RUBY (SBN 47109)
allen.ruby@skadden.com
JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
PATRICK HAMMON (SBN 255047)
patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

KAREN HOFFMAN LENT (*pro hac vice* forthcoming)
karen.lent@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

DANIEL L. NASH (*pro hac vice*)
DNash@akingump.com
STACEY R. EISENSTEIN (*pro hac vice*)
SEisenstein@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

Attorneys for Defendant
NATIONAL FOOTBALL LEAGUE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RICHARD DENT, et al., | Case No.: 3:14-CV-02324-WHA |
| Plaintiffs, | **DEFENDANT NATIONAL FOOTBALL LEAGUE'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| v. | |
| NATIONAL FOOTBALL LEAGUE, | |
| Defendant. | **Date:** **March 7, 2019**<br>**Time:** **8:00 a.m.**<br>**Courtroom:** **12 (19th Floor)**<br>**Judge:** **Honorable William Alsup** |

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 7, 2019, at 8:00 a.m., or as soon thereafter as available, in the courtroom of the Honorable William Alsup, located at 450 Golden Gate Avenue, Courtroom 12, 19th Floor, San Francisco, California 94102, Defendant National Football League ("NFL") will and hereby does move for an order dismissing Plaintiffs' Third Amended Complaint ("TAC") (Dkt. No. 119).

**STATEMENT OF ISSUES**

The TAC should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for two independent reasons. *First*, it fails to plead sufficient facts to establish the essential elements of its only claim—negligence. *Second*, even if the facts alleged in the TAC are sufficient to state a claim, those allegations make clear that Plaintiffs' claims are time-barred. This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the pleadings and paper on file in this action, any other such matters upon which the Court may take judicial notice, the arguments of counsel, and any other matter that the Court may properly consider.

Dated: January 16, 2019                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                           By:  */s/ Jack P. DiCanio*
                                                Jack P. DiCanio

                                           Attorneys for Defendant
                                           NATIONAL FOOTBALL LEAGUE

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................1

BACKGROUND ..................................................................................................................2

    I.      The Court Dismissed Plaintiffs' Original Action ......................................................2

    II.    The Ninth Circuit Limited the Scope of Remand ....................................................2

    III.   Plaintiffs' Third Amended Complaint Disregards the Ninth Circuit's Instruction ................................................................................................................3

ARGUMENT ........................................................................................................................5

    I.      PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL FOR NEGLIGENCE ........................................................................................................5

          A.    Standard of Review ......................................................................................5

          B.    Plaintiffs Do Not Establish an Independent Duty of Care .........................6

          C.    The TAC Does Not Satisfy *Any* of The Elements of the Negligence *Per Se* Doctrine .........................................................................................8

                 1.    Plaintiffs cannot establish that the statutes and regulations identified in the TAC apply to the NFL. ..........................................8

                 2.    Plaintiffs cannot establish that the NFL has violated any laws. ....10

                 3.    Plaintiffs fail to establish that the NFL's alleged statutory violations were the proximate cause of their injuries. ...................12

    II.    ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED...................................13

          A.    Plaintiffs' Claims Are Barred Because They Are Based on Personal Injuries That Occurred More Than Two Years Ago..................................14

          B.    The Discovery Rule Does Not Save Plaintiffs' Claims.............................14

CONCLUSION....................................................................................................................18

# TABLE OF AUTHORITIES

Page

## CASES

*In re Actimmune Marketing Litigation*,
No. C 08-023762010 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464
F. App'x 651 (9th Cir. 2011) ........................................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................... 5

*Baidoobonso-Iam v. Bank of America (Home Loans)*,
No. VC 10-9171 CAS (MANx), 2011 WL 3103165 (C.D. Cal. July 25, 2011) ................. 10

*Baisden v. Bowers*,
No. 1:16-cv-00641-LJO-SAB, 2016 WL 2743388 (E.D. Cal. May 11, 2016)..................... 16

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................... 5, 10

*Brooks v. Gomez*,
No. C10-01873 SBA, 2013 WL 496339 (N.D. Cal. Feb. 7, 2013)................................. 10, 11

*California Service Station & Automobile Repair Ass'n v. American Home Assurance Co.*,
62 Cal. App. 4th 1166 (1998) ............................................................................................. 6

*Carson v. DePuy Spine, Inc.*,
365 F. App'x 812 (9th Cir. 2010) ........................................................................................ 8

*Corales v. Bennett*,
567 F.3d 554 (9th Cir. 2009) ............................................................................................. 6

*Darringer v. Intuitive Surgical, Inc.*,
No. 5:15-cv-00300-RMW, 2015 WL 4623935 (N.D. Cal. Aug. 3, 2015)........................... 16

*Dean v. Southern California Edison*,
No. ED 12-01435-MWF (DTBx), 2013 WL 12143173 (C.D. Cal. Sept. 17, 2013) ........... 13

*Dent v. National Football League*,
902 F.3d 1109 (9th Cir. 2018) ................................................................................. *passim*

*Deutsch v. Turner Corp.*,
324 F.3d 692 (9th Cir. 2003) ........................................................................................... 14

*Evans v. Arizona Cardinals Football Club, LLC*,
252 F. Supp. 3d 855 (N.D. Cal. 2017) ................................................................................ 1

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ............................................................................................... 14, 15

*Hendrix v. Novartis Pharmaceutical Corp.*,
975 F. Supp. 2d 1100 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 749 (9th Cir. 2016) ............... 15

ii

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) .......................................................................................... 15, 16, 17

*Kim v. InterDent, Inc.*,
    No. C 08-5565 SI, 2010 WL 3155011 (N.D. Cal. Aug. 3, 2010) ........................................ 9

*Kwan v. SanMedica International*,
    854 F.3d 1088 (9th Cir. 2017) .............................................................................................. 7

*Ledesma v. Jack Stewart Produce, Inc.*,
    816 F.2d 482 (9th Cir. 1987) .............................................................................................. 13

*Mock v. Santa Monica Hospital*,
    187 Cal. App. 2d 57 (1960) ................................................................................................ 17

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ................................................................................................ 5

*Norgart v. Upjohn Co.*,
    21 Cal. 4th 383 (1999) ........................................................................................................ 15

*Williams v. Hilb, Rogal & Hobbs Insurance Services of California, Inc.*,
    177 Cal. App. 4th 624 (2009) ............................................................................................. 12

## STATUTES AND REGULATIONS

21 C.F.R. § 1301.11(a) .............................................................................................................. 9

21 U.S.C. § 331 .......................................................................................................................... 9

21 U.S.C. § 352(f) ...................................................................................................................... 9

21 U.S.C. § 353(b)(2) ................................................................................................................. 9

Cal. Civ. Proc. Code § 335.1 ................................................................................................... 14

N.Y. C.P.L.R. § 214 .................................................................................................................. 14

**INTRODUCTION**

Plaintiffs' purported "best and final" complaint (Dkt. No. 117 at 1), asserting against the NFL a single cause of action for negligence, should be dismissed with prejudice for failure to state an actionable claim.  The Third Amended Complaint ("TAC") ignores the Ninth Circuit's mandate in *Dent v. National Football League*, 902 F.3d 1109 (9th Cir. 2018) that limits any further proceedings on remand to claims arising from the conduct of the NFL and NFL personnel only.  Instead, each named Plaintiff seeks damages for injuries allegedly caused by receiving medications provided by Club doctors and athletic trainers, allegedly without the written prescriptions and warnings allegedly required by federal and state statutes.  There is no plausible allegation that anyone employed by the NFL dispensed or distributed any medications—controlled substances or otherwise—to any player.  Nor does the TAC "establish [under a negligence per se theory] that the relevant statutes apply to the NFL, the NFL violated those statutes, and the alleged violations caused the players' injuries."  *Dent*, 902 F.3d at 1121.

Indeed, the TAC is directly contrary to the Ninth Circuit's mandate in *Dent*.  The Court clearly outlined the single path forward for Plaintiffs' negligence claim—a direct theory of liability against the NFL.  The Ninth Circuit observed:

> [A]t many points in the SAC, the plaintiffs appear to conflate the NFL and the teams.  But the plaintiffs are pursuing a theory of direct liability, not vicarious liability.  And they have attempted to vindicate virtually identical claims against the clubs themselves in [*Evans*]. *Therefore, on remand, any further proceedings in this case [regarding Plaintiffs' negligence claim] should be limited to claims arising from the conduct of the NFL and NFL personnel—not the conduct of individual teams' employees.*  We leave it to the district court to determine whether the plaintiffs have pleaded facts sufficient to support their negligence claim against the NFL.

*Dent*, 902 F.3d at 1121 (emphasis added).  The TAC, however, merely rehashes almost verbatim the same inapposite allegations about the conduct of team doctors and athletic trainers that this Court already found failed to state a claim against the teams in *Evans v. Arizona Cardinals Football Club, LLC*, No. 3:16-cv-01030-WHA, 252 F. Supp. 3d 855 (N.D. Cal. May 15, 2017), ECF No. 224 ("*Evans* Dkt. No. 224").

The TAC also demonstrates that Plaintiffs' claims are barred by the statute of limitations.  Plaintiffs allege they were given medications without warnings or prescriptions during their

DEF.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT          Case No.: 3:14-cv-02324-WHA

1  playing careers in an effort to return them to play, and suffered injuries when they did.  Because

2  each of the plaintiffs ended his NFL playing career no later than 2008, each was required to bring

3  his claims no later than 2010.  None did so.  Their claims accordingly are time-barred.

4          This Court should dismiss the TAC with prejudice.

5                                    **BACKGROUND**

6  **I.      The Court Dismissed Plaintiffs' Original Action**

7          Plaintiffs are nine retired football players (TAC ¶¶ 18, 28, 37, 46, 56, 65, 75, 85, 95) who

8  were employed by various NFL Clubs between 1969 and 2008.  (*Id.* ¶ 17.)  At least six years—and,

9  in many cases, decades—after their careers ended, Plaintiffs filed this lawsuit on May 20, 2014,

10  asserting nine causes of action.  (Dkt. No. 1 ¶¶ 260-384 (amended in Dkt. No. 5, Dkt. No. 65 (the

11  "SAC"), and Dkt. No. 119)).

12          In September 2014, the NFL filed two motions to dismiss:  one seeking dismissal on

13  preemption grounds under Section 301 of the Labor Management Relations Act (LMRA), 29

14  U.S.C. § 185, and a second seeking dismissal due to the expiration of the limitations period and

15  Plaintiffs' failure to state a claim.  On December 17, 2014, this Court granted the preemption

16  motion and found that the second motion was moot.  (Dkt. No. 106 at 1.)  In ordering dismissal, the

17  Court held that "[t]he essence of plaintiffs' [negligence-based] claim for relief is that the individual

18  clubs mistreated their players and the league was negligent in failing to intervene and stop their

19  alleged mistreatment."  (Dkt. No. 106 at 6.)  Such a claim was preempted because "determining the

20  extent to which the NFL was negligent in failing to curb medication abuse by the clubs" would

21  require analysis of various CBA provisions.  (*Id.* at 12.)

22  **II.     The Ninth Circuit Limited the Scope of Remand**

23          On appeal, Plaintiffs argued that, in dismissing their claims, the Court misread their

24  complaint.  Their negligence claim was not that the NFL had failed to adequately supervise the

25  medication practices of the Clubs, but rather that the NFL *itself* had distributed and dispensed

26  controlled substances to the players in a manner that violated the law.  *See* Opening Brief for

27  Appellant at 9, *Dent v. NFL*, No. 15-15143 (9th Cir. Oct. 9, 2015), ECF No. 22 (arguing that *the*

28  *NFL* "violated duties established by detailed statutory schemes that regulate the *distribution and*

                                          2

1   *administration* of such Medications") (emphasis added).  The Ninth Circuit accepted Plaintiffs'

2   representation that they "are not merely alleging that the NFL failed to prevent medication abuse

3   by the teams, but that the NFL *itself* illegally distributed controlled substances . . . ."  *Dent*, 902

4   F.3d at 1118.  Thus, "to the extent the NFL is involved in the distribution of controlled substances,

5   it has a duty to conduct such activities with reasonable care," and "no examination of the CBAs is

6   necessary to determine that distributing controlled substances is an activity that gives rise to a duty

7   of care."  *Id.* at 1119-20.  Rather, "under the plaintiffs' negligence per se theory, whether the NFL

8   breached its duty to handle drugs with reasonable care can be determined by comparing the

9   conduct of the NFL to the requirements of the statutes at issue."  *Id.* at 1119.

10          In restricting its ruling to preemption, the Ninth Circuit was careful to "express no opinion

11   about the ultimate merits of the players' claims," which "may be susceptible" to a "motion to

12   dismiss for failure to state a claim under Rule 12(b)(6)."  *Id.* at 1126.  Instead, the Court explicitly

13   left "it to the district court to determine whether the plaintiffs have pleaded facts sufficient to

14   support their negligence claim against the NFL" (as opposed to the Clubs, which were already

15   facing "virtually identical claims" in *Evans*).  *Id.* at 1121.  And the Ninth Circuit further instructed

16   that "any further proceedings in this case should be limited to claims arising from the conduct of

17   the NFL and NFL personnel – not the conduct of individual teams' employees."  *Id.*

18   **III.    Plaintiffs' Third Amended Complaint Disregards the Ninth Circuit's Instruction**

19          Following remand, Plaintiffs filed the TAC asserting a single cause of action for

20   negligence.  The TAC does not assert any of the other claims from the SAC the Ninth Circuit

21   reviewed, including negligent hiring and retention of the doctors who allegedly "gave" them the

22   medications, negligent misrepresentation, and fraud.[1]  Rather, the lone count the TAC asserts is for

23   negligence – specifically, that the NFL was negligent *per se* because it violated federal and state

24   law through its "provision and administration" (TAC ¶¶ 299, 301-02) of medications without the

25   _____

26   [1]  Thus, although the Ninth Circuit accepted as true the allegation that "the doctors and trainers
     who actually *provided* medications to players" were employed by the NFL (*Dent v. National*

27   *Football League*, 902 F.3d 1109, 1118, n.5 (9th Cir. 2018)) (emphasis added), the TAC no longer
     includes any such allegation, presumably because Plaintiffs know from the *Evans* litigation that it

28   is not true.  Instead, Plaintiffs simply "conflate" the NFL and the Clubs by labeling the
     professionals who actually provided the players with medications as "NFL doctors and trainers."

3

1   written prescriptions and warnings required by statute, which Plaintiffs allege "directly and

2   proximately" caused their injuries.  (*Id.* ¶ 16.)

3           Notwithstanding the Ninth Circuit's clear holding that Plaintiffs may not "conflate" the

4   NFL and the Clubs to establish a "theory of direct liability, not vicarious liability," *Dent*, 902 F.3d

5   at 1121, the TAC makes no specific allegation that the NFL distributed or dispensed a single drug

6   to a single player on even one occasion.  Instead, the very first paragraph of the TAC asserts that

7   their "allegations . . . are supported by" documents and testimony from various *Club* doctors and

8   trainers from the *Evans* litigation.  (TAC ¶ 1.)  Plaintiffs allege that the medications they received

9   during the NFL careers "were often administered without a prescription or side effects warnings

10  and with little regard for a player's medical history, potentially-fatal interactions with other

11  medications, or the actual health and recovery from injury of the player." (*Id.* ¶ 15.)  But nowhere

12  in the introduction summarizing their claims, or anywhere else in the ninety-page TAC, do

13  Plaintiffs identify anyone from the NFL (as opposed to the Club doctors and trainers) ever

14  providing a single medication to any NFL player.  Nor could they, as Plaintiffs well know from the

15  extensive discovery in the *Evans* litigation cited in the TAC that this *never happened.*[2]

16          The individual Plaintiffs' specific allegations make this abundantly clear.  Each describes

17  the circumstances under which he allegedly received controlled substances and prescription

18  medications in violation of law.  (*See id.* ¶¶ 17-106.)  But for each such incident, Plaintiffs allege

19  that they received these medications from their Club doctors and trainers and not anyone employed

20  by the NFL.  (*Id.*)  In fact, Plaintiffs attach an exhibit claiming to identify "the names of the Club

21  doctors and trainers [who allegedly provided the medications] for each year through 2008 as

22  provided by the Defendants during discovery in the Evans case."  (*Id.* ¶ 106.)  Further, for each

23  Plaintiff, the TAC specifies only the conduct of team doctors and trainers (*see, e.g., id.* ¶¶ 21, 30,

24

25

---

26  [2]  To be sure, the TAC contains considerable misleading and inaccurate rhetoric about matters such
    as the "Opioid Use Problem" and the NFL's supposed "Business Plan" to prioritize profits over
27  player safety.  (*See* TAC ¶¶ 2-13.)  But such baseless allegations are irrelevant to the single claim
    in this lawsuit – that the NFL allegedly provided players with controlled substances in a manner
28  that violated the law.

1  39, 47, 58, 67, 77, 86, 96) in describing the injuries allegedly caused by "the NFL's negligence"

2  (*id.* § VII).

3     For example, Plaintiff Richard Dent alleges that he received medications from the "*team*

4  *doctors and trainers*" for the Chicago Bears, the San Francisco 49ers, the Indianapolis Colts and

5  the Philadelphia Eagles.  (*Id.* ¶ 21 (emphasis added).)  He further alleges that "the person providing

6  the Medication" did not identify the dosage or provide "the statutorily required warnings about side

7  effects of any of the Medications" (*id.* ¶ 22), and that this "wrongful administration of Medications

8  to him" caused the injuries for which he seeks damages in the TAC (*id.* ¶ 25).  He also alleges that

9  he "trusted and relied on the NFL's doctors and trainers and would not have taken the Medications

10  in the manner and amount in which he did had the [NFL] provided him with the information it was

11  legally obligated to provide as discussed herein."  (*Id.* ¶ 27.)[3]

12  **ARGUMENT**

13  **I.**  **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST THE NFL FOR**

14  **NEGLIGENCE**

15    **A.**  **Standard of Review**

16     To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

17  accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

18  662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19  Although well-pleaded allegations, and reasonable inferences that may be drawn from those

20  allegations, are accepted as true, "for a complaint to survive a motion to dismiss, the non-

21  conclusory factual content, and reasonable inferences from that content, must be plausibly

22  suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969

23  (9th Cir. 2009).

24     To state a claim for negligence under California law, Plaintiffs must allege that (1) the NFL

25  had a duty or an obligation to conform to a certain standard of conduct for their protection against

26  unreasonable risks; (2) the NFL breached that duty; (3) the breach proximately caused their

27  ──────────────

28  [3]  Each Plaintiff makes this identical allegation.  (*See* TAC ¶ 36 (Newberry); ¶ 45 (Green); ¶ 55 (Hill); ¶ 64 (Van Horne); ¶ 74 (Stone); ¶ 84 (Pritchard); ¶ 94 (McMahon); ¶ 105 (Wiley).)

1   injuries; and (4) damages.  *See Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009).  As in their

2   prior complaint, Plaintiffs invoke the negligence *per se* doctrine.  But the TAC fails to state a claim

3   under a negligence *per se* or any other theory.

4           **B.       Plaintiffs Do Not Establish an Independent Duty of Care**

5           "Under California law, negligence *per se* is a doctrine, not an independent cause of action."

6   *Dent*, 902 F.3d at 1117.  Thus, California courts consistently hold that satisfying the elements of

7   the negligence *per se* doctrine may create a rebuttable presumption that a particular standard of

8   care was breached – but it does not create a duty or satisfy the independent duty requirement of a

9   claim for negligence.  *E.g.*, *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.*,

10  62 Cal. App. 4th 1166, 1177 (1998) ("[T]he presumption of negligence concerns the standard of

11  care, not the duty of care.").  In other words, negligence *per se* "applies only *after* determining that

12  the defendant owes the plaintiff an independent duty of care."  *Id.* at 1180 (emphasis added).

13          In remanding this case, the Ninth Circuit found that such a duty could arise "in the

14  distribution of medications," with the applicable standard established by statute.  *Dent*, 902 F.3d at

15  1119.  However, the Court simply accepted, for purposes of its preemption analysis, Plaintiffs'

16  allegation in the SAC that the NFL itself provided them medications in violation of law, and left to

17  this Court the determination of "whether the plaintiffs have pleaded facts sufficient to support"

18  such a claim.  *Id.* at 1121.  And in doing so, the Ninth Circuit made clear that Plaintiffs could not

19  "conflate" the conduct of the Club doctors and trainers with the NFL, but rather are "limited to

20  claims arising from the conduct of the NFL and NFL personnel." *Id.*

21          The TAC does not plead sufficient facts to establish the required duty of care because there

22  are no plausible allegations that *the NFL* distributed or dispensed any medications to Plaintiffs.  No

23  Plaintiff identifies anyone from the NFL who allegedly gave them any medications, in violation of

24  law or otherwise.  To the contrary, the literal and only plausible reading of their claims is that *Club*

25  doctors and trainers allegedly provided medications without written prescriptions, proper labeling,

26  or warnings regarding side effects and long-term risks that they claim were required by the relevant

27  statutes.  Plaintiffs' effort to obfuscate this obvious fact by labeling Club medical personnel as *NFL*

28  doctors and trainers violates the Ninth Circuit's clear prohibition against "conflat[ing]" the conduct

                                                        6

1  of the Club doctors and trainers with the NFL.  *Id.*; s*ee also Kwan v. SanMedica Int'l*, 854 F.3d

2  1088, 1096 (9th Cir. 2017) (holding that although a court must take all allegations of material fact

3  as true and construe them in favor of the nonmoving party, "[c]onclusory allegations of law and

4  unwarranted inferences . . . are insufficient to avoid dismissal").

5       Moreover, Plaintiffs cannot establish that the NFL "voluntarily" assumed a duty to comply

6  with the law by citing to various studies, publications, task forces and recommended "best

7  practices" regarding the dispensation of medications to the players.  (*See* TAC ¶¶ 159-229.)  For

8  example, the TAC contains numerous pages describing the prescription of Toradol by Club

9  physicians to NFL players, including "the Matava task force," the "Tokish Study," a memorandum

10 prepared by the KC Orthopedic Institute regarding the use of Toradol by "NFL teams," and

11 meetings of the Professional Football Athletic Trainers Society ("PFATS").  (*See id.* ¶¶ 164-80.)[4]

12 Apart from the fact that Plaintiffs do not allege that any of the professionals associated with these

13 activities are or were employed by the NFL, these allegations in no way support a claim that *the*

14 *NFL* distributed or dispensed medications to players.

15      For the same reason, Plaintiffs' allegations concerning the doctors retained to oversee the

16 NFL's collectively bargained "drug program" (Drs. Riker, Tennant, Lombardo and Brown) and the

17 league's Medical Advisor (Dr. Pellman) (*see id.* ¶¶ 159-61, 183-84) fail to support their claim that

18 the NFL assumed a duty to ensure that the prescription practices of the Club physicians complied

19 with the law.  As this Court previously recognized, "no decision in any state (including California)

20 has ever held that a professional sports league owed such a duty to intervene and stop mistreatment

21 by the league's independent clubs."  (Dkt. No. 106 at 6.)  The Ninth Circuit did not disagree with

22 this observation, but instead held only that the NFL could be responsible under a negligence theory

23 to the extent it actually dispensed or distributed medications to the players in a manner that violated

24 applicable law.  Significantly, there is no allegation, nor could there be, that any of these "NFL

25 doctors" ever distributed or dispensed any medications to the players.

26 _____

27 [4]  Despite the considerable emphasis on Toradol in the TAC, it is *not* a controlled substance governed by the Controlled Substances Act ("CSA").  Neither are the other non-steroidal anti-inflammatory drugs ("NSAIDs") described in the TAC, including Motrin, Vioxx, Celebrex,
28 Ketorolac, Indocin, or Naprosyn.

1    In short, taking all of the allegations in the TAC as true, Plaintiffs at most can say that the

2    NFL was of aware, through audits and studies, of information regarding the Clubs' practices in

3    dispensing medications to the players.  There are no allegations, however, establishing that such

4    awareness gave rise to a legal duty of care.  Plaintiffs have completely failed to show, as the Ninth

5    Circuit required, that the statutes governing the distribution of controlled substances apply to an

6    entity like the NFL, let alone that the NFL breached any of those statutes or caused Plaintiffs'

7    injuries.  And despite the Ninth Circuit's clear directive to the contrary, the TAC's claims that the

8    NFL voluntarily assumed a duty to supervise the Clubs' medical practices amounts to nothing more

9    than a claim of vicarious and not direct liability.

10    **C.     The TAC Does Not Satisfy *Any* of The Elements of the Negligence *Per Se*
          Doctrine**

11

12    Apart from the TAC's failure to sufficiently allege an independent duty of care, it wholly

13    fails to satisfy the negligence *per se* doctrine Plaintiffs invoke to support their negligence claim.

14    The negligence *per se* doctrine requires Plaintiffs to show that:  (1) the NFL violated a statute or

15    regulation; (2) the violation caused Plaintiffs' injuries; (3) the injuries resulted from the kind of

16    occurrence the statute or regulation was designed to prevent; and (4) Plaintiffs were members of

17    the class of persons the statute or regulation was intended to protect.  *See Carson v. DePuy Spine,*

18    *Inc.*, 365 F. App'x 812, 815 (9th Cir. 2010).  Applying the doctrine to Plaintiffs' claims here, the

19    Ninth Circuit held that a negligence *per se* theory would "require the players to establish that the

20    relevant statutes apply to the NFL, the NFL violated those statutes, and the alleged violations

21    caused the players' injuries."  *Dent*, 902 F.3d at 1121.  The TAC does not satisfy any of these

22    elements.

23    **1.     Plaintiffs cannot establish that the statutes and regulations identified in
          the TAC apply to the NFL.**

24

25    Despite Plaintiffs' repeated assertions that the NFL violated the "statutory regime"

26    governing the distribution of controlled substances and prescription medications, the TAC fails to

27    establish that any of the purportedly violated statutes and regulations even apply to the NFL.

28    Plaintiffs reference a list of statutes and regulations that govern the obligations of medical

8

1   professionals and "registrants" in distributing and dispensing controlled substances and

2   prescription medications.  But Plaintiffs never identify how any of those statutes or regulations

3   apply to the NFL, nor could Plaintiffs do so, because they simply do not apply.

4        The CSA applies to persons who "manufacture, distribute, dispense, import or export any

5   controlled substances."  21 C.F.R. § 1301.11(a).  Specifically, "only persons *actually engaged in*

6   *such activities* are required to obtain a registration; *related or affiliated persons* who are not

7   engaged in such activities are not required to be registered."  *Id.* (emphasis added).  Here, the

8   specific allegations regarding the NFL, as opposed to those involving the Club doctors (who are

9   registrants), plainly do not subject the NFL to coverage.  As explained, there is no plausible

10  allegation that the NFL distributed or dispensed controlled substances to the Plaintiffs.  (Nor is

11  there any allegation that the NFL manufactures, imports, or exports any such substances.)  *See Kim*

12  *v. InterDent, Inc.*, No. C 08-5565 SI, 2010 WL 3155011, at *11 (N.D. Cal. Aug. 3, 2010)

13  (dismissing plaintiff's negligence *per se* claim, which was premised on defendant management

14  company's alleged failures to provide effective controls and procedures for the provision of

15  medications under the CSA, holding that plaintiff failed to show that defendant, which had not

16  distributed medications to end-users (the patients), was subject to the CSA).

17       Nor does the Federal Food, Drug, and Cosmetic Act ("FDCA") impose any obligations on

18  the NFL related to the conduct alleged in the TAC.  By Plaintiffs' own account, the FDCA

19  prohibits physicians from the manufacture or dispensing of drugs that have been "misbranded" and

20  from providing drugs without prescriptions or appropriate warnings.  (*See* TAC ¶ 151); *see also*,

21  *e.g.*, 21 U.S.C. § 331 (prohibiting misbranding or adulterating drugs or the manufacture,

22  introduction, or delivery of such drugs)  Yet nowhere does the TAC allege that the NFL itself

23  misbranded or adulterated a medication under the FDCA, or introduced any such medication into

24  commerce.[5]

25  _____

26  [5] Although misbranding may occur where, for example, a drug's label fails to include adequate
    directions for use, *see*, 21 U.S.C. § 352(f), this rule generally does not apply when a physician
27  provides a medication directly to a patient.  *See*, *e.g.*, 21 U.S.C. § 353(b)(2) (exempting from
    requirements of 21 U.S.C. § 352 medications prescribed by a physician under certain
28  circumstances).  But in any event, the TAC includes no allegation that the NFL distributed a drug
    without the label required by Section 352(f) or prescribed a medication without following the

                                                                                    *(cont'd)*

1    For similar reasons, Plaintiffs have not alleged that the California Pharmacy Law (or any

2  other state law) even applies to the NFL.  (*See, e.g.*, TAC ¶ 303 (generally alleging that, "[f]or

3  example, the NFL violated the California Pharmacy Law, Cal. Bus. & Prof. Code § 4000, *et seq.*,"

4  without citing a single specific provision that applies to the NFL or that the NFL violated).)[6]

5    Plaintiffs simply refer to a list of statutes and regulations that govern the obligations of

6  medical professionals and "registrants" in distributing and dispensing controlled substances and

7  prescription medications without ever explaining how any of those statutes or regulations apply to

8  the NFL.  Because they have not established and cannot establish that the statutes apply to the

9  NFL, their claims should be dismissed for that reason alone.  *See Brooks v. Gomez*, No. C10-01873

10  SBA, 2013 WL 496339, at *12 (N.D. Cal. Feb. 7, 2013) (holding that plaintiff "failed to give the

11  Defendants fair notice of what the claim is and the grounds upon which it rests" because plaintiff

12  only listed statutes and regulations without "alleg[ing] sufficient facts establishing how each

13  Defendant . . .  is alleged to have violated the provisions of each of the Acts identified").

14    **2.    Plaintiffs cannot establish that the NFL has violated any laws.**

15    The Ninth Circuit made clear that succeeding on the negligence *per se* theory would require

16  Plaintiffs to "establish that . . . the NFL violated th[e] statutes" in question.  *Dent*, 902 F.3d at

17  1121.  Plaintiffs have not sufficiently alleged that the NFL has violated any of the cited statutes.

18  Indeed, the TAC fails even to identify which statutes and regulations the NFL allegedly violated,

19  thus warranting dismissal.  *See In re Actimmune Mktg. Litig.*, No. C 08-023762010 MHP, 2010

20  WL 3463491, at *6 (N.D. Cal. Sept. 1, 2010) ("Without knowing which provisions were at issue, it

21

_____

22  *(cont'd from previous page)*
exemption requirements of Section 353(b)(2).

23  [6]  While Plaintiffs generally allege that the NFL violated all fifty states' and the District of

24  Columbia's laws "regulating controlled substances and prescription medications" (TAC ¶¶ 157-58, 302), they fail to identify which states' laws are allegedly implicated by their claims.  Indeed, Plaintiffs specifically identify only one such law from one such state. (*Id.* ¶¶ 157, 303.)

25  Accordingly, Plaintiffs fail to "give [the NFL] fair notice of . . . the grounds upon which [the claim] rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *see*

26  *Baidoobonso-Iam v. Bank of Am. (Home Loans)*, No. VC 10-9171 CAS (MANx), 2011 WL 3103165, at *4 (C.D. Cal. July 25, 2011) (dismissing under *Twombly* a claim for violation of "a

27  litany" of statutes where complaint "provide[d] little or no indication of how any of the listed statutes were violated").  Here, the deficiency in Plaintiffs' claims is even more glaring, since the

28  TAC does not even *identify* the statutes allegedly violated.

1   was impossible to determine whether the [complaint] stated a 'plausible' claim for relief."), *aff'd*,

2   464 F. App'x 651 (9th Cir. 2011).  For example, several of the referenced statutes and regulations

3   define duties owed by registrants exclusively to the DEA.  (*See, e.g.*, TAC ¶ 133.)  Many of the

4   regulations referenced are merely definitional (*see, e.g.*, *id.* ¶ 122) or discuss only the punishments

5   applicable for various violations (*see, e.g.*, *id.* ¶ 137).

6         Rather than alleging facts establishing that "the NFL violated those statutes," *Dent*, 902

7   F.3d at 1121, Plaintiffs impermissibly conflate the NFL and the Clubs and allege that the manner in

8   which the "NFL doctors and trainers" dispensed these medications violated the CSA, FDCA and

9   analogous state laws.  With regard to the CSA, Plaintiffs allege:

10         For decades, the NFL's lack of appropriate prescriptions, failure to keep proper records,
           refusal to explain side effects, lack of individual patient evaluation, proper diagnosis and
11         attention, and use of trainers to distribute Schedule II and III controlled substances to its
           players, including Plaintiffs, individually and collectively violate the foregoing criminal and
12         regulatory regime.  In doing so, the NFL not only left its former players injured, damaged
           and/or addicted, but also committed innumerable violations of the CSA.
13

14   (TAC ¶ 143.)  The TAC further alleges that the NFL violated the FDCA by dispensing medications

15   without a prescription, warnings about side effects, and the proper FDA-approved label.  (*Id.* ¶¶

16   151-52, 156.)  Finally, the TAC alleges that these same medical practices violated analogous state

17   laws "regulating controlled substances and prescription medications."  (*Id.* ¶¶ 157-58.)

18         These allegations point to purported actions or omissions by the individual *Clubs* (and the

19   doctors and trainers employed by them), as the phrase "use of trainers" confirms.  (*See, e.g.*, *id.* ¶¶

20   143, 156.)  There are no allegations that adequately plead that a single NFL employee violated any

21   of the referenced statutes.  Plaintiffs' continual conflation of the NFL, on the one hand, and the

22   Clubs, on the other, cannot sustain a wholly conclusory negligence claim devoid of facts.  *See*

23   *Brooks,* 2013 WL 496339, at *12 (holding that plaintiff "failed to give the Defendants fair notice of

24   what the claim is and the grounds upon which it rests" when plaintiff only listed statutes and

25   regulations without "alleg[ing] sufficient facts establishing how each Defendant . . . is alleged to

26   have violated the provisions of each of the Acts identified").  It also violates the Ninth Circuit's

27   clear directive on remand.

28

DEF.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT          Case No.: 3:14-cv-02324-WHA

1       **3.**    <u>**Plaintiffs fail to establish that the NFL's alleged statutory violations**</u>

2                       <u>**were the proximate cause of their injuries.**</u>

3       Even if the TAC had alleged facts demonstrating that the NFL was subject to the CSA

4 and FDCA and had violated their terms, it does not plead sufficient facts demonstrating that Plaintiffs'

5 injuries were caused by any conduct specifically attributed to the NFL, a requirement of Plaintiffs'

6 negligence claim.  Thus, even if the statutes applied to the NFL, and the NFL somehow could be

7 viewed as responsible for any violations, Plaintiffs cannot possibly demonstrate any discernable

8 connection between the NFL's alleged conduct and their injuries.  To the contrary, Plaintiffs

9 themselves allege that their injuries were caused by the specific conduct of *Club* doctors and

10 trainers.[7]  (TAC ¶¶ 17-106.)

11       Moreover, Plaintiffs fail to sufficiently allege a causal connection between the NFL's

12 supposed violations of federal and state laws, on the one hand, and Plaintiffs' injuries on the other.

13 While Plaintiffs assert cursory allegations regarding the "NFL's" purported violations of

14 "recordkeeping" requirements and the supposed "ban on traveling with controlled substances" (*see,*

15 *e.g.*, TAC ¶¶ 220, 299), the TAC includes no factual allegations that any purported violations of

16 these technical restrictions *caused* Plaintiffs' injuries.  *See Williams v. Hilb, Rogal & Hobbs Ins.*

17 *Servs. of Cal., Inc.*, 177 Cal. App. 4th 624, 643 (2009) (finding that Evid. Code. § 669 (i.e., the

18 negligence per se presumption) was not applicable where party's violation of a labor code (i.e.,

19 failure to obtain workers' compensation insurance) was not causally connected to injury).  Even if

20 

21 [7]  But even these allegations fall far short of adequately pleading the causation element of
22 Plaintiffs' negligence claim.  With regard to their purported musculoskeletal injuries, Plaintiffs
merely provided a list of injuries, followed by conclusory allegations that each Plaintiff "believes
that [such injuries identified in the foregoing documents] were aggravated, extended, worsened,
23 prolonged, exacerbated, intensified, perpetuated, protracted, or made permanent by the wrongful
administration of Medications to [them]."  (TAC ¶¶ 25, 34, 43, 53, 62, 72, 82, 91, 103.)  These
24 allegations are mere speculation and do not satisfy Plaintiffs' burden of pleading that such injuries
were suffered "*as a result of* the anti-inflammatory injection[s] [or other medications they
25 received]."  (*Evans* Dkt. No. 224 at 6.)  Similarly, Plaintiffs' allegations concerning internal organ
injuries are supported by nothing more than the same type of speculative assertions that were
26 discredited in the *Evans* litigation.  As in *Evans*, Plaintiffs have attempted to "plead the causation
element of their [negligence] claim simply by pointing to some recent internal organ-related
27 problem," "baldly asserting their belief that it directly resulted from their use of medication," but
not alleging any facts "whatsoever concerning etiology." (*Id.* at 7.)  The TAC, like the complaint
28 in *Evans*, "just arbitrarily blame[s] . . . drugs" for Plaintiffs' injuries, something that this Court has
already found insufficient with respect to the causation requirement.  (*Id.*)

1    Plaintiffs could establish that a *Club* (as opposed to the NFL) violated one of these restrictions,

2    such as improperly travelling with medications, this is far from sufficient to satisfy Plaintiffs'

3    obligation to plead that such a violation proximately caused their injuries.

4           For example, Plaintiff Dent alleges that he was provided medications without warnings or

5    labels that allowed him to return to play earlier than he claims he should.  (*See* TAC ¶¶ 22-23.)  But

6    nowhere does he allege that any of these injuries were caused, for example, because the

7    medications were improperly stored under the CSA or given to him by a registrant in a state other

8    than which he was registered.  Nor does he allege that the actions allegedly taken by the NFL with

9    respect to medications—conducting studies or auditing Clubs' practices—caused his injuries in any

10   way.  Nor could he.  It would be illogical for Dent to claim injuries from the use of medications in

11   the 1980s and early 1990s were "caused" by NFL actions that took place a decade later.  (*See, e.g.*,

12   TAC ¶¶ 163-77 (alleging that NFL undertook studies and audited Clubs following Dent's career).)[8]

13   And even if he could, the TAC makes clear that such actions were not the "proximate" cause of his

14   injuries.

15          A plaintiff must provide more than a "mere recitation of the causation element."  *Dean v. S.*

16   *Cal. Edison*, No. ED 12-01435-MWF (DTBx), 2013 WL 12143173, at *2 (C.D. Cal. Sept. 17,

17   2013).  Because Plaintiffs have not sufficiently alleged that their injuries are traceable to *any*

18   purported negligent act or omission by the NFL, Plaintiffs' negligence claim should be dismissed.

19   *See id.* (dismissing claim that "lacks specific factual allegations, particularly with regard to the

20   element of causation").

21   **II.     ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED**

22          California's two-year statute of limitations governs Plaintiffs' claims here.  "It is well-

23   settled that in diversity cases federal courts must apply the choice-of-law rules of the forum state."

24   *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987).  Under California's

25   "governmental interest" test for choice-of-law issues, "[w]here the conflict concerns a statute of

26   limitations, the governmental interest approach generally leads California courts to apply

27   _____

28   [8]  The specific allegations of the other Plaintiffs are similarly deficient.

1  California law," especially where California's statute would bar a claim.  *Deutsch v. Turner Corp.*,

2  324 F.3d 692, 716-17 (9th Cir. 2003).[9]  Thus, not only does California's two-year statute of

3  limitations for claims based on personal injury govern Plaintiffs' claims, it also bars them.  *See* Cal.

4  Civ. Proc. Code § 335.1; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 809 n.3 (2005).

5  **A.    Plaintiffs' Claims Are Barred Because They Are Based on Personal Injuries**
6  **That Occurred More Than Two Years Ago**

7  Plaintiffs filed this action on May 20, 2014, and therefore claims that accrued earlier than

8  May 20, 2012 are time-barred under California's statute of limitations.  "[S]tatutes of limitation do

9  not begin to run until a cause of action accrues. . . .  Generally speaking, a cause of action accrues

10  at 'the time when the cause of action is complete with all of its elements.'"  *Fox*, 35 Cal. 4th at 806

11  (citation omitted).  "[T]he last element to occur is generally, as a practical matter, the injury to the

12  future plaintiff."  *Id.* at 809.  Here, Plaintiffs' injuries are all allegedly based on pain medications

13  provided to them during their playing careers with the NFL.  (*See, e.g.*, TAC ¶¶ 21, 289.)  Every

14  Plaintiff retired from the NFL in 2008 or earlier.  (*Id.* ¶¶ 18, 28, 37, 46, 56, 65, 75, 85, 95.)[10]  Thus,

15  the latest date Plaintiffs could have suffered a related injury was in 2008.  It follows that Plaintiffs'

16  causes of action accrued no later than 2008.  Absent any tolling, the two-year limitations period ran

17  in 2010.  *See Fox*, 35 Cal. 4th at 806, 809.  Because Plaintiffs waited until May 20, 2014 to file this

18  action—at least *six years* after sustaining injuries—their claims are time-barred.

19  **B.    The Discovery Rule Does Not Save Plaintiffs' Claims**

20  The discovery rule is inapplicable because Plaintiffs cannot sufficiently allege that they had

21  no actual or inquiry notice of their causes of action before May 20, 2012.  To the contrary,

22

---

23  [9]  Plaintiffs have not asserted that a different state's statute of limitations should apply.  Indeed, in
24  the parties' previous motion to dismiss briefing, Plaintiffs stated that they "do not challenge the
    NFL's reliance on California law" for the purpose of its statute of limitations defense.  (Opp. at 3
25  n.1, ECF No. 80.)  Though Plaintiffs alluded to the possibility that New York law may apply (*id.*),
    New York's statute of limitations for claims based on personal injury is three years,  *See* N.Y.
26  C.P.L.R. § 214.  Application of that limitations period would also bar Plaintiffs' claims.

27  [10]  Plaintiff Dent retired in 1997, Plaintiff Newberry retired in 2008, Plaintiff Green retired in 1992,
    Plaintiff Hill retired in 1979, Plaintiff Van Horne retired in 1993, Plaintiff Stone retired in 2005,
28  Plaintiff Pritchard retired in 1977, Plaintiff McMahon retired in 1996, and Plaintiff Wiley retired in
    2006.  (TAC ¶¶ 18, 28, 37, 46, 56, 65, 75, 85, 95.)

14

1   Plaintiffs allege that they had reason to—and did—suspect that they had been injured by some

2   wrongdoing well before then.

3        The "discovery rule" is an exception to the statute of limitations that "postpones accrual of

4   a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*,

5   35 Cal. 4th at 807.  Under the rule, the statute of limitations begins to run when "the plaintiffs have

6   reason to at least suspect that *a type of wrongdoing* has injured them." *Id.* (emphasis added).  A

7   plaintiff's suspicion need only be about "the 'generic' elements of wrongdoing, causation, and

8   harm." *Id.*  "[T]he plaintiff[s] may discover, or have reason to discover, the cause of action even if

9   [they] do[] not suspect, or have reason to suspect, the identity of the defendant.  That is because the

10  identity of the defendant is not an element of any cause of action."  *See Norgart v. Upjohn Co.*, 21

11  Cal. 4th 383, 399 (1999) (citation omitted).

12       Moreover, "plaintiffs are charged with presumptive knowledge of an injury if they have

13  'information of circumstances to put [them] on inquiry' or if they have 'the opportunity to obtain

14  knowledge from sources open to [their] investigation.'"  *Fox*, 35 Cal. 4th at 807-08 (alterations in

15  original) (citation omitted).  "A plaintiff need not be aware of the specific 'facts' necessary to

16  establish the claim; that is a process contemplated by pretrial discovery." *Jolly v. Eli Lilly & Co.*,

17  44 Cal. 3d 1103, 1111 (1988).  Nor need he or she be aware of the particular legal theory that will

18  support it.  *See Norgart*, 21 Cal. 4th at 397.  "California law does not require a plaintiff to be

19  certain of the cause of his injury before his cause of action accrues; it merely requires facts

20  sufficient to put a reasonable plaintiff in suspicion that he has been wronged." *Hendrix v. Novartis*

21  *Pharm. Corp.*, 975 F. Supp. 2d 1100, 1108-09 (C.D. Cal. 2013), *aff'd*, 647 F. App'x 749 (9th Cir.

22  2016).  "So long as a suspicion [of wrongdoing] exists, it is clear that the plaintiff must go find the

23  facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111.

24       Accordingly, for the "discovery rule" to delay accrual of an otherwise time-barred claim,

25  the plaintiff must adequately allege "(1) the time and manner of discovery and (2) the inability to

26  have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (citation

27  omitted).  To allege diligence, a plaintiff must establish that he "conduct[ed] a reasonable

28  investigation of all potential causes of that injury."  *Id.*  "'The burden is on the plaintiff to show

15

1    diligence, and conclusory allegations will not withstand' a motion to dismiss." *Darringer v.*

2    *Intuitive Surgical, Inc.*, No. 5:15-cv-00300-RMW, 2015 WL 4623935, at *4 (N.D. Cal. Aug. 3,

3    2015) (citation omitted).

4         The face of the TAC reveals that Plaintiffs had actual or inquiry notice of their claims

5    before May 20, 2012.  First, all Plaintiffs *concede* knowledge of the injuries "*at the time of their*

6    *occurrence*," again, during or before 2008, the most recent year any named Plaintiff retired from

7    the NFL.  (TAC ¶¶ 25, 34, 43, 53, 62, 72, 82, 92, 103 (emphasis added).)  The allegation that

8    Plaintiffs' "injuries . . . were known only *generally*" but that Plaintiffs lacked knowledge of "the

9    specific nature or details of the injuries" (*see id.* (emphasis added)) is of no legal consequence.  *See*

10   *Jolly*, 44 Cal. 3d at 1111 ("A plaintiff need not be aware of the specific 'facts' necessary to

11   establish the claim; that is a process contemplated by pretrial discovery.").  "Once a plaintiff is

12   aware that he has been injured the statute of limitations begins to run." *Baisden v. Bowers*, No.

13   1:16-cv-00641-LJO-SAB, 2016 WL 2743388, at *2 (E.D. Cal. May 11, 2016).

14        Plaintiffs also concede that "doctors they saw after their careers concluded did tell them that

15   *some of their ailments might be the result of the amount of Medications they took during their NFL*

16   *careers*." (TAC ¶ 108 (emphasis added).)  Though Plaintiffs do not identify the date of these doctor

17   visits, it is implausible that all visits occurred after May 20, 2012—anywhere from four to 35 years

18   after Plaintiffs' careers ended.  (*See id. ¶¶* 18, 28, 37, 46, 56, 65, 75, 85, 95.)[11]

19        Finally, the TAC is rife with allegations that confirm that all Plaintiffs had notice that some

20   wrongdoing had caused their injuries during their careers:

21   •   Plaintiff Dent alleges that *in 1983*, he experienced an injury in practice that caused pain "so
         bad it was difficult for Mr. Dent to sit on the toilet or even walk.  Despite being put on
22       several anti-inflammatory drugs and pain killers, *he questioned being put back on the field*.
         He ended up playing in the last preseason game, *doped up to the point that he could hardly*
23       *remember playing*." (*Id.* ¶ 23 (emphasis added).)

24   •   Plaintiff Newberry alleges that "in the 2004 season he hurt his left ankle and the team
         doctors told him it was a sprain.  He played most of the season anyway, with the doctors

25

---

26   [11]  Indeed, Plaintiffs all but confirm that these visits were earlier than May 20, 2012.  They dispute
     that these visits constitute notice only because the doctors allegedly did not expressly identify the
27   NFL's purported involvement in their medication—not because the visits were within the
     limitations period.  (*See id.* ¶ 108 ("[N]o doctor ever told them of the League's involvement in the
28   recordkeeping, handling, and distribution of the Medications . . . .").)

giving him a significant amount of painkillers.  After the season [*i.e. in 2005*], he was told that he had completely torn the ligament in the ankle and he required surgery."  (*Id.* ¶ 32.)  Plaintiff Newberry further alleges that as early as 2005 and 2006, "*his legs would stop working and he would fall over as if he had been shot.*"  (*Id.* ¶ 33 (emphasis added).)

- Plaintiff Green alleges that during his career, "the pain got so bad that he demanded to have surgery" and was told "it was his decision."  (*Id.* ¶ 41.)

- Plaintiff Van Horne alleges that "during a playoff game . . . on January 13, 1991, *he could not lift his arm.*"  He was given "two Percodan for the first half and two Percodan for the second half to allow him to play."  (*Id.* ¶ 60 (emphasis added).)

- Plaintiff Stone alleges that he "tore his thumb while playing with the Giants" (sometime between 1996 to 2001) and "was told that, if he were a baseball player he would have been out for the season but *because he was a football player, it could wait until the off-season.*"  (*Id.* ¶ 69 (emphasis added).)

- Plaintiff Pritchard alleges that when he was traded to the Raiders, "the team's head doctor told him his knees were so bad that *he could not keep playing*.  Nonetheless, the doctor told the team that Pritchard could play *as long as he could cope with the pain*."  (*Id.* ¶ 79 (emphasis added).)

- Plaintiff McMahon alleges that during his career, which spanned from 1982 through 1996, "he *became dependent on painkillers*" and "was taking as many as 100 Percocets per month, even in the off-season."  (*Id.* ¶ 88 (emphasis added).)

- Plaintiff Wiley alleges that he challenged a diagnosis of a groin sprain, given while he was with the Chargers from 2001 to 2003, and "told the team doctor that *the pain seemed more widespread* than a simple groin sprain."  After playing through it, he "*decided to seek a second opinion*" and learned that the sprain "was in fact a severe tear of his abdominal wall."  (*Id.* ¶ 100-01 (all emphasis added).)

- Plaintiff Hill developed a painkiller addiction, and, as early as 2005 had sought care at drug treatment centers.  (*See id.* ¶¶ 276-77.)

These allegations confirm that the Plaintiffs all had sufficient notice of a wrongful cause of their injuries well before May 20, 2012.  *See Jolly*, 44 Cal. 3d at 1111 ("So long as a suspicion exists, it is clear that the plaintiff must go find the facts . . . ."); *Mock v. Santa Monica Hosp.*, 187 Cal. App. 2d 57, 66 (1960) ("Certainly, a prudent person would believe that if, in the course of an operation at one point on the body, a serious and painful injury occurred to another part of the body, there was cause for an investigation . . . .").

Because Plaintiffs had suspicion of *some* alleged wrongdoing years before 2014, they were obligated to plead that they could not have made an earlier discovery of the cause of their purported injuries, despite reasonable diligence, in order to save their clearly stale claims.  But Plaintiffs have not carried this burden.  Not only have Plaintiffs failed to allege that they were

17

1  unable to make such an earlier discovery, but they also have failed to adequately plead that they

2  conducted reasonable diligence in the first place.  Instead, Plaintiffs merely assert conclusory

3  allegations that they "exercised reasonable diligence to try to discover the facts at issue," without

4  setting forth any *facts* establishing that diligence.  While Plaintiffs *have* alleged that, during annual

5  conversations with Club medical staffs, team doctors and trainers did not tell them "about the side

6  effects of the Medications they were being given, the dangers of 'cocktailing' . . . , or of the

7  League's involvement in the recordkeeping, handling, and distribution of the Medications" (TAC ¶

8  108), Plaintiffs do not allege what, if any, questions they asked their doctors, whether they inquired

9  into the potential cause of their alleged injuries, and what those doctors told them—other than that

10  several doctors *did* attribute their injuries to "*the amount of Medications they took during their*

11  *NFL careers.*"  (*Id.* ¶ 108 (emphasis added).)  In short, Plaintiffs provide no details about their

12  diligence and claimed inability to discover their injuries before May 20, 2014, and, as such, they

13  cannot rely on the discovery rule to toll the statute of limitations.  Accordingly, Plaintiffs' time-

14  barred claims cannot be saved.

15  **<u>CONCLUSION</u>**

16       For the reasons stated above, Plaintiffs' Third Amended Complaint should be dismissed

17  with prejudice.

18

19  Dated:  January 16, 2019              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

20

21                            By:  */s/ Jack P. DiCanio*
                                 Jack P. DiCanio

22                                 Attorneys for Defendant
                                 NATIONAL FOOTBALL LEAGUE

23

24

25

26

27

28

18

1

## <u>CERTIFICATE OF SERVICE</u>

2

3    I hereby certify that on January 16, 2019, I electronically filed the foregoing document with

4    the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to

5    counsel of record for Plaintiffs and which constitutes service under L.R. 5-1(h)(1).

6

7    Dated:  January 16, 2019              _/s/ Jack P. DiCanio_____
                                           Jack P. DiCanio

8
                                           Attorneys for Defendant
9                                          NATIONAL FOOTBALL LEAGUE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28